**SHANTI LEWALLEN, OSB No. 143740**
shantilewallen@gmail.com
LEWALLEN LAW, LLC
65 SW Yamhill, Suite 300
Portland, OR 97204
Telephone: (503) 997-5447

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RON TSUR**, | Case No.:  3:21-CV-655 |
| Plaintiff, | |
| vs. | **COMPLAINT FOR UNLAWFUL EMPLOYMENT PRACTICES** |
| **INTEL CORPORATION,** | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

## I.    INTRODUCTION

1.    Pursuant to ORS 659A.030, ORS 659A.199, 29 USC § 623 and 42 USC § 2000e-2, Plaintiff, Ron Tsur ("Mr. Tsur), alleges the deprivation of his rights as protected by Oregon and Federal anti-discrimination statutes. He seeks damages, equitable remedies, declaratory relief, attorney fees, litigation costs, expert witness fees and expenses.

Page 1    COMPLAINT

## II.    JURISDICTION AND VENUE

2.    This court has jurisdiction of Mr. Tsur's claims for violation of the Age Discrimination in Employment Act under 29 USC § 623 and for violation of Title VII of the Civil Rights Act under 42 USC § 2000e-2.

3.    Jurisdiction is proper over each of Mr. Tsur's claims arising under the laws of the United States under 28 USC § 1331 and 28 USC § 1343.

4.    This court has supplemental jurisdiction over Mr. Tsur's state law claims under 28 USC § 1367. The federal and state law claims alleged herein arose from a common nucleus of operative facts, and the state claims are so related to the federal claims that they form part of the same case or controversy such that the actions would ordinarily be expected to be tried in one judicial proceeding.

5.    A substantial part of the actions, events and omissions upon which Mr. Tsur's claims are based occurred within Washington County, Oregon. The District of Oregon, Portland Division is the proper venue to hear these claims.

## III.    PARTIES

6.    Plaintiff, Ron Tsur, is 68 years old. At all times relevant herein, Mr. Tsur resided in Washington County, Oregon and worked for Defendant, Intel Corporation ("Intel") out of its offices in Hillsboro, Oregon in Washington County.

7.    Intel is a corporation, headquartered in the State of California, which does regular business in the state of Oregon. Under Oregon and Federal law, Intel is responsible for the unlawful employment practices of its agents and employees. In 2015, at the time it laid off 1,155 United States-based employees, Intel's domestic workforce exceeded 49,000 employees.

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

## IV.    FACTS

8.      Starting in or around 1984, Intel regularly employed Mr. Tsur as an independent consultant in developing its microchip manufacturing processes.

9.      On or about January 31, 2011, after nearly three decades of exemplary performance by Mr. Tsur as an independent contractor, Intel hired Mr. Tsur, then 58 years old, directly, as an Embedded Systems Integration Technical Lead in Intel's Wireless Platform Research and Development ("WPRD") department.

10.     Mr. Tsur's employment with Intel proceeded smoothly until in or around May 2011, when Mr. Tsur was assigned to work with one of Intel's management-level employees, Bruce Jones ("Mr. Jones"). Starting with their first meeting on or about June 15, 2011, and continuing throughout the time Mr. Tsur worked with him, Mr. Jones regularly made ageist and xenophobic comments to Mr. Tsur (who immigrated to the United States from Israel in 1981), for example, using words to the effect of:

    a.      "If you think age is an advantage in this job, you are mistaken;"

    b.      "At your age, you should be retired;"

    c.      "You don't seem to be a good match for this team;"

    d.      "You must realize that at your age your mind cannot be as sharp as when you were 20 or 30 years old. You need to make adjustments."

    e.      "You Israelis have too narrow a view of the world. This is a different culture around here. Forget about thinking that every problem that we see in our work can be solved."

    f.      "Jews created a lot of problems in this world, look at Socialism."

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

g.    "Coming from a small country like Israel, do not expect too much cooperation from other departments at Intel."

h.    "You Israelis speak too directly with coworkers. This is not a good way to conduct business at Intel."

i.    "You need to work at improving your accent when you speak to people like Kevin Hakala [a senior test technician for Intel] and other people who work here."

j.    "I find the same communication problem that I have with you, with people who come from China or India. I am telling you this for your own good."

11.    On or about July 8, 2011, Mr. Jones removed Mr. Tsur as technical lead of a new strategic project, unfairly criticizing Mr. Tsur's work, and replacing Mr. Tsur with a younger, less-experienced, and otherwise less-qualified coworker. Soon after, younger coworkers within Mr. Jones' department who became aware of Mr. Jones' critique of Mr. Tsur began calling Mr. Tsur derogatory names, such as "old man," and "old fart," as well as demeaning Mr. Tsur's Israeli origin in Mr. Tsur's presence. Prior to Mr. Jones' removing Mr. Tsur as lead for the project, Mr. Tsur had not experienced this level of unrestrained and open bigotry among Intel's employees.

12.    In spite of Mr. Jones' open hostility toward Mr. Tsur, Mr. Tsur earned a "Satisfactory" rating in Mr. Tsur's 2012 performance review of his work during the year of 2011. Indeed Mr. Tsur's performance had been better than satisfactory: according to the same performance review, Yaron Peleg, Program Manager for Intel's Digital Home Group described Mr. Tsur's 2011 performance as "key to our success to deliver all our deliverables and meet our milestones," and "[t]hanks to [Mr. Tsur's] very hard work and dedication, we were able to achieve the almost impossible in terms of timelines," on a project involving teams around the globe.

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

However, Mr. Jones added his own unwarranted criticisms to the performance review, consistent with the severe and pervasive hostile work environment Mr. Jones cultivated by continually targeting Mr. Tsur with misplaced condescension, disparaging remarks, unfair criticism and other interference with Mr. Tsur's work.

13.    On or about April 12, 2012 – after Mr. Tsur unsuccessfully requested from management a change in leadership or a transfer away from Mr. Jones – Mr. Tsur sent a letter to Aicha Evans ("Ms. Evans"), Intel's Vice President, Wireless Platform Research and Development, reporting Mr. Jones' ageist hostility, and opposing Intel's assigning Mr. Tsur to work with Mr. Jones any longer. In approaching Ms. Evans, Mr. Tsur hoped Ms. Evans, who urged Mr. Tsur to work for Intel directly in the first place, would use the powers inherent in her position to separate Mr. Tsur from Mr. Jones.

14.    Although Mr. Tsur requested that the substance of his April 11, 2012 letter to Ms. Evans be kept confidential to avoid inflaming Mr. Jones' hostility, Ms. Evans initiated an investigation which, on knowledge and belief, made Mr. Jones aware that Mr. Tsur had complained about Mr. Jones' discriminatory activity.

15.    In May 2012, Mr. Jones' interference in Mr. Tsur's work escalated, as Mr. Jones attempted, unsuccessfully, to block Mr. Tsur from taking part in a business trip to Germany to assist with Intel's Automotive Systems Division ("ASD"), after Kevin Murphy, Intel's ASD General Manager, recruited Mr. Tsur for the job.

16.    In or around June 2012, Mr. Tsur received a telephone call from Deanna Thronson ("Ms. Thronson"), of Intel's Human Resources Legal Department, who was investigating Mr. Tsur's complaint. Ms. Thronson characterized Mr. Jones' demeaning language from Mr. Tsur's 2012 performance review as normal, and assured Mr. Tsur that she had reviewed department

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

statistics and had not found age discrimination. In subsequent communications, Ms. Thronson

continued to dismiss Mr. Tsur's concerns about Mr. Jones' having created a hostile work

environment. Ms. Thronson subjected Mr. Tsur to increased scrutiny with regard to his

performance record, citing unspecified emails in which she found Mr. Tsur's "tone" objectionable.

However, Ms. Thronson refused Mr. Tsur's request to identify such emails, denying Mr. Tsur the

opportunity to understand the basis for her determination. Ms. Thronson closed the investigation

before Mr. Tsur had an adequate chance to demonstrate how Mr. Jones' discriminatory animus

tainted Mr. Jones' performance review.

17.    In or around September 2012, Mr. Jones issued Mr. Tsur an unwarranted "Below

Expectations" review; followed by an unwarranted "Improvement Required" note, in or around

December 2012.

18.    On or about December 6, 2012, relying on Mr. Jones' September and December

2012 reviews of Mr. Tsur, Rachel Lawson, an HR representative for Intel presented Mr. Tsur with

the choice of "voluntary separation" from Intel or a "Corrective Action Plan" ("CAP").

19.    On or about December 13, 2012, Mr. Jones gave Mr. Tsur a "pre-firing notice" and

advised Mr. Tsur to resign voluntarily as an alternative to being fired. Mr. Tsur refused to resign.

20.    On or about January 3, 2013, to avoid immediate termination, Mr. Tsur agreed to

undergo a CAP, yet to be defined by Mr. Jones.

21.    On or about January 14, 2013, Mr. Tsur accepted an internal job offer to serve as a

Software Architect in Intel's Electrical Validation ("EV") Department. Mr. Jones made efforts to

prevent Mr. Tsur's transfer to EV, seeking to keep Mr. Tsur under his control to complete Mr.

Tsur's CAP, even as Intel was in the process of disbanding the group of employees Mr. Jones was

supervising. However, based on Intel's knowledge that Mr. Tsur's past performance had been

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

satisfactory; and other managers employed by Intel insisting that Mr. Tsur's future performance was necessary to Intel's success, Mr. Tsur's transfer was approved. Mr. Tsur's transfer contravened Intel's policy of generally requiring an employee under a CAP to complete the terms of the CAP before transferring to a new supervisor, further affirming Intel's understanding that Mr. Tsur's exceptional value to the company belied Mr. Jones' pretextual evaluations of Mr. Tsur's work.

22.      On or about January 27, 2013, Mr. Tsur sent a letter to Ms. Thronson, requesting that she complete her investigation of Mr. Tsur's concerns about Mr. Jones' discriminatory practices. In the letter, Mr. Tsur expressed his concern that Mr. Jones subjected Mr. Tsur to greater scrutiny than younger coworkers. Mr. Tsur explained how he felt that Mr. Jones' disparagement of Mr. Tsur's performance, Mr. Jones' interference with Mr. Tsur's work, and Mr. Jones' efforts to terminate Mr. Tsur's employment, were in retaliation for Mr. Tsur having reported Mr. Jones' ageist and xenophobic hostility and discriminatory conduct. Mr. Tsur's letter included a rebuttal to Mr. Jones' defamatory evaluation of Mr. Tsur's work, supported with specific examples of Mr. Jones' misrepresentation of the realities of the job, along with the names of several witnesses who could corroborate Mr. Tsur's account.

23.      On knowledge and belief, Intel never followed up regarding Mr. Tsur's concerns with the witnesses Mr. Tsur identified in Mr. Tsur's January 27, 2013 letter. Nor did Intel make other efforts adequate to rule out discriminatory or retaliatory assessments of Mr. Tsur on the part of Mr. Jones, beyond Intel's initial performative and perfunctory investigation.

24.      Mr. Tsur's new managers reported to Mr. Tsur that during the months of January through April 2013, Mr. Jones attempted to reverse Mr. Tsur's transfer to Electrical Validation, submitting unfair criticism of Mr. Tsur to Intel's Human Resources ("HR") Department.

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

25.    On or about April 1, 2013, Mr. Jones issued Mr. Tsur's performance review for Mr. Tsur's performance during 2012, again targeting Mr. Tsur with unwarranted criticism, based on Mr. Jones' subjective evaluation, and again assigning Mr. Tsur an overall rating of "Improvement Required." Mr. Jones then encrypted the file containing Mr. Tsur's 2013 performance review, such that neither Mr. Tsur nor his managers could view Mr. Jones' rationale for the "Improvement Required" rating. Mr. Jones' conduct was motivated by his animus toward Mr. Tsur based on Mr. Tsur's age, because of Mr. Tsur's national origin and/or in retaliation for Mr. Tsur opposing and reporting Intel's age and national origin-related discrimination.

26.    On knowledge and belief, substantially younger colleagues of Mr. Tsur, of United States origin, who did not oppose or report unlawful activity on the part of Intel, were not subjected to similar scrutiny by Mr. Jones or by Intel.

27.    In or around April of 2014, Mr. Tsur's new manager, Steven Nahas ("Mr. Nahas"), issued Mr. Tsur's annual performance review for 2013, assigning Mr. Tsur a "Successful" rating. Mr. Nahas told Mr. Tsur that he would have given Mr. Tsur a higher rating if Mr. Tsur had not been in his first year with the department. Mr. Nahas also explained that due to limited allocations of time-vesting Restricted Stock Unit ("RSU") stock options to his department, Mr. Tsur was assigned a low Stock Share Level of 4 ("SSL 4").

28.    In or about April 2014, faced with a reduction in force directive from Intel's upper management, the Electrical Validation Department transferred Mr. Tsur to its Tools and Methodologies group.

29.    In or around March 2015, Mr. Tsur's new manager, Roger Rees ("Mr. Rees"), issued Mr. Tsur's annual performance review for 2014, assigning Mr. Tsur a "Successful" rating. As had Mr. Nahas, Mr. Rees explained to Mr. Tsur that he would have given Mr. Tsur a higher

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

rating if Mr. Tsur had not been in his first year with the department. Mr. Rees attributed Mr. Tsur's relatively small raise to the fact that at the time Mr. Tsur was already above the HR-mandated pay scale for his position. Mr. Rees also reassured Mr. Tsur that Mr. Tsur's award of no RSU grant in the same review, or a Stock Share Level of 5 ("SSL 5"), had nothing to do with Mr. Tsur's performance during 2014. Indeed, at the same time, Mr. Rees awarded Mr. Tsur a pay letter, including an unusually high Annual Performance Bonus ("APB") base of 11.4%.

30.    On or about June 15, 2015, Mr. Tsur's manager, above Mr. Reese in Intel's corporate structure, Avi Avraham ("Mr. Avraham"), informed Mr. Tsur that Mr. Tsur had been selected for involuntary termination as a part of Intel's cost-saving layoff of 1,155 employees across Intel's United States workforce. Mr. Tsur's last day working for Intel was to be July 15, 2015. In response to Mr. Tsur's request for the reason he was selected for layoff, Mr. Avraham replied that he was unaware of the reason, and that the decision was made above the department at the "corporate" level.

31.    Also on or about June 15, 2018, Intel sent Mr. Tsur a letter describing Mr. Tsur's involuntary termination as permanent, such that Intel would not allow Mr. Tsur to "displace or bump" any other employee of Intel, and that Mr. Tsur would not be "recalled to work" for Intel. Intel's letter further described the criteria for the so-called "Performance-Based Mandatory Buyout" for employees selected for layoff as follows:

"Because you received: (1) a current 2015 focal or out-of-cycle rating of Improvement Required (IR); or (2) a stock share level (SSL) 4 or 5 in the 2015 focal and, in the past three years, another low rating (lR or Below Expectations (BE)) at focal or out-of-cycle or a stock grant of SSL 4 or 5, you were selected for this involuntary separation."

32.    The discriminatory effect on older workers, inherent in Intel's second criterion for selecting targets for involuntary termination (SSL 4 or SSL 5 rating within the most recent four

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

years of reviews), was immediately apparent, and profoundly hurtful to Mr. Tsur.  Mr. Rees and

Mr. Nahas informed Mr. Tsur that they generally assigned higher SSL to younger employees, as

did Intel's managers in general, for the following reasons:

      a.      Intel's policy dictated that RSU (Reserve Stock Unit) time-vesting stock option grants were to be given out *not* based on past performance, but based on anticipated future performance, a standard disfavoring older employees, whose anticipated performance was limited by earlier anticipated retirement or death than younger employees.

      b.      The RSU stock options vested only for employees who were still employed with Intel five years after the options were issued, such that the grants were of less value to older employees who were more likely to retire or die before their grant would vest than younger workers.

      c.      Older workers who had started working at Intel later in life (such as Mr. Tsur) had even less of a chance of benefitting from RSU grants because of Intel's policy providing for one year of accelerated vesting upon retirement for every five years of employment with Intel.

      d.      The RSU grant program was conceived as a way to incentivize employees to stay with Intel by increasing their compensation relative to competitors. Because younger employees were understood to have a higher turnover than older employees, managers prioritized RSU grants to younger workers for whom the grant presented a greater incentive to stay with Intel.

      d.      Older employees tended to be compensated at a higher level on Intel's pay scale, such that RSU grants were a smaller component of their

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

compensation, so RSU grants to older employees were understood to make less of a difference in retention than grants to younger employees.

e.      Managers had a limited amount of RSU options to give out each year, so they had to choose carefully according to the above concerns or risk attrition resulting in higher turnover, lower staffing and/or lower performance within their respective departments, each of which risked reducing such managers' bonuses.

f.      Using the SSL rating system to feign "meritocracy," Intel pressured managers to assign SSL 4 ratings to at least 10% of their subordinates and SSL 5 ratings to the same proportion. Many older workers understood that if they "took one for the team" in this area, managers would find other ways to compensate for their lower rating.

Intel's own Employee Handbook from 2015 lays bare any pretext of using SSL ratings as a proxy for performance by explaining that "RSUs are not granted to you for your past service."

33.      Between June 15, 2015, when Mr. Tsur received his notice of involuntary separation, and July 15, 2015, when he was terminated, Mr. Tsur made several attempts to request that Intel use its "Open Door" review process to reconsider the evaluations Intel relied upon to select Mr. Tsur for the layoff. Mr. Tsur explained that the reviews at issue did not accurately reflect his performance. Intel refused Mr. Tsur's requests for review, denying him the chance to show how discriminatory motives and policies substantially impacted the decision to end his employment.

34.      Other employees of Intel, who were substantially younger than Mr. Tsur, who were of United States origin, and who had not reported or opposed workplace hostility related to age or

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

national origin discrimination, had received Open Door reviews; including one who had their "Improvement Required" rating elevated to "Successful," and another whose SSL 4 RSU rating was adjusted to SSL 3.

35.    Statistical evidence demonstrates a significant age-based disparity, favoring younger employees of Intel over older employees of Intel as a result of Intel's standards for selecting Mr. Tsur along with the rest of the 1,155 employees involuntarily terminated in July 2015. These disparities are reflected in the older composition of the cohort selected for involuntary termination from the Electrical Validation Department where Mr. Tsur worked, and among Intel's employees nationwide, as compared to the composition of the members of each group who were allowed to keep their jobs.

36.    In or around April and May 2016, Intel laid off another 12,000 United States-based employees, again including a significantly disproportionate number of older workers among those who were terminated.

37.    Intel's 2015 layoff was consistent with a longstanding culture of ageism permeating its ranks, which included pressuring older workers to retire out of a preference for younger workers. Older employees of Intel were made to understand that 65 was an appropriate age to retire, and were subject to years of inducements to retire earlier, including Voluntary Separation Plans and pervasive hostility targeting those who decided not to retire at or before the age of 65.

38.    By selecting Mr. Tsur for involuntary termination, in reliance on Mr. Jones' April 1, 2013 discriminatory and retaliatory "Improvement Required" ("IR") performance review for Mr. Tsur, Intel discriminated against and terminated Mr. Tsur because of his age. In doing so, Intel knowingly reaffirmed and continued Mr. Jones' unlawful discrimination and retaliation against

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

Mr. Tsur. As such, Mr. Tsur's termination was motivated in substantial part by Mr. Jones' unlawful discriminatory and retaliatory animus.

39.     After Intel terminated Mr. Tsur's employment, Mr. Tsur's former manager, Roger Rees, attempted to procure Mr. Tsur's services as an independent contractor, only to find that Intel had "blacklisted" Mr. Tsur such that it was Intel's policy that Mr. Tsur was permanently ineligible for hire as a contractor, let alone as an employee, of Intel.

40.     On or about January 12, 2016, Mr. Tsur timely filed a complaint of unlawful employment practices with the Oregon Bureau of Labor and Industries ("BOLI"), and thereby, the Equal Employment Opportunity Commission ("EEOC"). Mr. Tsur has timely filed this action within 90 days of the EEOC issuing his right to sue letter.

41.     As a direct and proximate result of Intel's actions, Mr. Tsur has suffered lost wages and fringe benefits through trial, and prejudgment interest on lost wages and benefits, in an amount to be determined at trial. Mr. Tsur has also lost eligibility for full Social Security benefits, and other expected future earnings and benefits related to his separation from employment with Intel. Mr. Tsur is entitled to an order reinstating his employment or in the alternative an award of lost future wages and fringe benefits in an amount to be determined at trial.

42.     As a direct and proximate result of Intel's actions, Mr. Tsur has suffered emotional distress, humiliation, damage to his reputation and other compensatory damages in an amount to be determined at trial.

43.     Intel's actions were in deliberate disregard of Mr. Tsur's employment rights. Mr. Tsur is entitled to an award of punitive damages in an amount to be determined at trial.

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

44.     Mr. Tsur is entitled to a declaration that Intel violated his rights under ORS 659A.030, ORS 659A.199, 29 USC § 623 and 42 USC § 2000e-2 & 3; an order requiring Intel to take appropriate steps to make him whole; and/or other equitable remedies as appropriate.

45.     Intel's conduct constituted willful age discrimination. As a result, Mr. Tsur is entitled to a liquidated damages penalty equal to lost wages and benefits and in an amount to be determined at trial.

46.     Mr. Tsur has hired legal counsel to bring these claims and is entitled to an award of costs and reasonable attorney fees.

## V.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (Age Discrimination – Disparate Treatment)

47.     Mr. Tsur realleges and incorporates paragraphs 1 through 46 above.

48.     Intel subjected Mr. Tsur to strict scrutiny and different treatment with respect to discipline and wrongful termination because of Mr. Tsur's age in violation of ORS 659A.030 and 29 USC § 623(a)(1) & (d).

### SECOND CLAIM FOR RELIEF

#### (Age Discrimination – Disparate Impact)

49.     Mr. Tsur realleges and incorporates paragraphs 1 through 48 above.

50.     In the alternative, Intel's employment policies had a disparate impact on Mr. Tsur because of his age in violation of ORS 659A.030 and 29 USC § 623.

### THIRD CLAIM FOR RELIEF

#### (Age Discrimination – Hostile Work Environment)

51.     Mr. Tsur realleges and incorporates paragraphs 1 through 50 above.

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

52.    Intel subjected Mr. Tsur to a severe or pervasive hostile work environment because of Mr. Tsur's age in violation of ORS 659A.030 and 29 USC § 623.

## FOURTH CLAIM FOR RELIEF

### (Retaliation for Reporting and/or Opposing Age Discrimination)

53.    Mr. Tsur realleges and incorporates paragraphs 1 through 52 above.

54.    Intel subjected Mr. Tsur to strict scrutiny and different treatment with respect to discipline and wrongful termination in retaliation for Mr. Tsur's complaints of unlawful employment practices, including opposition of the same, and participation in an investigation of the same, in violation of ORS 659A.030(1)(f), ORS 659A.199 and 29 USC § 623.

## FIFTH CLAIM FOR RELIEF

### (National Origin Discrimination – Disparate Treatment)

55.    Mr. Tsur realleges and incorporates paragraphs 1 through 54 above.

56.    Intel subjected Mr. Tsur to strict scrutiny and different treatment with respect to discipline and wrongful termination because of Mr. Tsur's national origin in violation of ORS 659A.030 and 42 USC § 2000e-2(a) & (m).

## SIXTH CLAIM FOR RELIEF

### (National Origin Discrimination – Hostile Work Environment)

57.    Mr. Tsur realleges and incorporates paragraphs 1 through 56 above.

58.    Intel subjected Mr. Tsur to a severe and pervasive hostile work environment because of Mr. Tsur's national origin in violation of ORS 659A.030 and 42 USC § 2000e-2(a) & (m).

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

## SEVENTH CLAIM FOR RELIEF

### (Retaliation for Reporting and/or Opposing National Origin Discrimination)

59.     Mr. Tsur realleges and incorporates paragraphs 1 through 58 above.

60.     Intel subjected Mr. Tsur to strict scrutiny and different treatment with respect to discipline, and wrongful termination, in retaliation for Mr. Tsur's complaints of unlawful employment practices, including opposition of the same, and participation in an investigation of the same, in violation of ORS 659A.030(1)(f), ORS 659A.199 and 42 USC § 2000e-3.

## VI.    PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.      An award for economic damages in the form of lost wages and benefits, and consequential damages in an amount to be determined at trial;

2.      An order reinstating Plaintiffs' employment and revoking Defendant's no-rehire policy for Plaintiff as a contractor, or in the alternative, an award of lost future wages, benefits and contractor earnings through retirement in an amount to be determined at trial;

3.      An award for mental and emotional distress, humiliation, damage to reputation and other compensatory damages in an amount to be determined at trial;

4.      An award for liquidated damages consistent with the claims above in an amount to be determined at trial;

5.      An award of punitive damages to be determined at trial;

6.      A declaration that Defendant violated Plaintiff's rights and an order requiring Defendant to make him whole;

7.      An award of reasonable attorneys' fees, litigation expenses and costs, including expert witness fees and expenses, consistent with the claims above;

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

8.      An award of pre-judgement and post-judgment interest as appropriate and allowed by law;

9.      On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving a payment of wages over the applicable time frame; and

10.     Any and all other relief as this court may deem proper.

**Plaintiff Hereby Demands a Trial by Jury**

DATED this 29th day of April 2021.

**Lewallen Law, LLC**

*s/ Shanti Lewallen*
Shanti S. Lewallen, OSB No. 143740
shantilewallen@gmail.com
Tel.: 503-997-5447 / Fax: 844-364-5438

***Of Attorneys for Plaintiff***

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438