Helen M. McFarland, OSB 013176
hmcfarland@seyfarth.com
SEYFARTH SHAW LLP
999 Third Avenue, Suite 4700
Seattle, WA  98104-4041
Tel: (206) 946-4910

Christopher J. DeGroff (*Admitted Pro Hac Vice*)
cdegroff@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL  60606-6448
Tel: (312) 460-5000

Andrew Scroggins (*Admitted Pro Hac Vice*)
ascroggins@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL  60606-6448
Tel: (312) 460-5000

*Attorneys for Defendant Intel Corporation*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON - PORTLAND DIVISION

| | |
|---|---|
| RON TSUR,<br><br>        Plaintiff,<br><br>   v.<br><br>INTEL CORPORATION,<br><br>        Defendant. | Case No. 3:21-cv-00655-SI<br><br>**INTEL CORPORATION'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Request For Oral Argument** |

## TABLE OF CONTENTS

LR 7-1 CERTIFICATION ................................................................................... 1

MOTION ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I.  INTRODUCTION ...................................................................................... 1

II.  FACTS ..................................................................................................... 3

    A.  Intel Hired Plaintiff As A Software Engineer And Bruce Jones Provides
An Initial "Successful Evaluation" for 2011 ...................................... 3

    B.  Plaintiff Disagrees With And Complains About His 2011 Performance
Evaluation ....................................................................................... 5

    C.  Intel's Human Resources Department Investigates Plaintiff's Complaint ........... 5

    D.  Plaintiff Does Not The Problems From The Constructive Feedback And
Bruce Jones Provides A "Below Expectations" Mid-Year Performance
Evaluation ....................................................................................... 7

    E.  Plaintiff Fails To Improve And Earns An "Improvement Required"
Rating For 2012 ............................................................................... 8

    F.  Intel Offers Plaintiff A Voluntary Separation Package In Lieu Of A
Performance Plan ............................................................................. 9

    G.  Intel Gives Plaintiff Permission To Transfer To A New Department ................. 10

    H.  Plaintiff's New Supervisor Steven Nahas Rated Him As Successful And
Issued An SSL 4 For 2013 ............................................................... 11

    I.  Plaintiff's New Supervisor Roger Rees Also Rated Plaintiff As
Successful And Issued An SSL 5 for 2014 ........................................ 12

    J.  Intel Institutes Its Performance-Based Mandatory Buyout Layoff in July
2015 ............................................................................................... 13

    K.  Plaintiff Qualifies For The PMB Layoff And Was Laid Off on July 15,
2014 Along with 1,154 Other Intel Employees .................................. 14

    L.  Plaintiff Unsuccessfully Sought An Open Door Investigation of the
Layoff ............................................................................................. 15

    M.  This Is A Single Plaintiff Lawsuit Limited To Adverse Actions In 2015
That Plaintiff Contends Are Age Discrimination, National Origin
Discrimination Or Retaliation ......................................................... 15

III.  SUMMARY JUDGMENT SHOULD BE AWARDED TO INTEL ............................. 16

    A.  Legal Standard ............................................................................... 16

    B.  Plaintiff's Disparate Treatment Age Discrimination Claim Fails As A
Matter Of Law ................................................................................ 17

        1.  Plaintiff Cannot Show A Prima Facie Case Of Age
Discrimination ...................................................................... 18

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

|  |  | a. | No Inference Of Discrimination Can Be Made Regarding Plaintiff's 2015 SSL Rating or Selection For The PMB Layoff .......................................................................... 19 |
|  |  | b. | No Inference Of Discrimination Can Be Made Regarding Intel's Decision Not To Reconsider Prior Performance And SSL Ratings ...................................................................... 20 |
|  | 2. | Intel Had A Legitimate, Nondiscriminatory Reason for the PMB Layoff .......................................................................................... 20 |
|  | 3. | Plaintiff Cannot Establish Pretext ........................................................ 21 |
|  | 4. | No Cat's Paw Theory Applies ............................................................... 22 |

C.  Plaintiff's Disparate Impact Age Discrimination Claims Fail As A Matter Of Law ........................................................................................... 23

    1.  Particular Practice ....................................................................................... 24

    2.  Reasonable Factors Other Than Age ........................................................ 26

D.  Plaintiff's Retaliation Claim Fails Because He Did Not Engage In A Protected Activity And He Cannot Establish Causation ........................................ 27

E.  Plaintiff Has No Evidence To Support His National Origin Discrimination Claim ...................................................................................... 29

IV.  CONCLUSION ........................................................................................................ 31

CERTIFICATE OF COMPLIANCE ..................................................................................... 32

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. Kempthorne,*
    292 Fed.Appx. 646 (9th Cir. 2008)......................................................................23

*Aichele v. Blue Elephant Holdings, LLC,*
    292 F. Supp. 3d 1104 (D. Or. 2017) ................................................................28

*Barnes v. Saul,*
    840 Fed. Appx. 943 (9th Cir. 2020)..................................................................24

*Castellanos v. United States,*
    438 F. Supp. 3d 1120 (S.D. Cal. 2020)..............................................................16

*Coleman v. Quaker Oats Co.,*
    232 F.3d 1271 (9th Cir.2000) ..........................................................................18

*Diaz v. Eagle Produce Ltd. P'ship,*
    521 F.3d 1201 (9th Cir. 2008) ........................................................................18

*Doyle v. City of Medford,*
    512 Fed. Appx. 680 (9th Cir. 2013)..............................................................26, 27

*Garay v. Lowes Home Centers, LLC,*
    1:17-CV-00269-MC, 2017 WL 5473887 (D. Or. Nov. 14, 2017)....................24, 25

*Gross v. FBL Fin. Servs., Inc.,*
    557 U.S. 167 (2009)......................................................................................27, 29

*Hazen Paper Co. v. Biggins,*
    507 U.S. 604 (1993)............................................................................................25

*Henderson v. Jantzen, Inc.,*
    79 Or. App. 654 (Or. App. 1986)........................................................................30

*Hervey v. Cnty. of Koochiching,*
    527 F.3d 711 (8th Cir. 2008) ..............................................................................8

*Jianqing Wu v. Special Counsel, Inc.,*
    54 F. Supp.3d 48 (D. D.C. 2014).......................................................................25

*Jones v. Royal Admin. Servs., Inc.,*
    866 F.3d 1100 (9th Cir. 2017) ............................................................................16

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

*Keyser v. Sacramento City Unified Sch. Dist.*,
  265 F.3d 741 (9th Cir. 2001) ............................................................28

*Ledbetter v. Goodyear Tire & Rubber Co.*,
  550 U.S. 618 (2007)........................................................................29

*Leupold & Stevens, Inc. v. Lightforce USA, Inc.*,
  501 F. Supp. 3d 987 (D. Or. 2020) ...................................................17

*Maner v. Dignity Health*,
  2021 WL 3699780 (9th Cir. 2021) ...................................................27

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)........................................................................17

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)........................18

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
  682 F.3d 1144 (9th Cir. 2012) .........................................................16

*Nidds v. Schindler Elevator Corp.*,
  113 F.3d 912 (9th Cir. 1996) ...........................................................19

*Noga v. Costco Wholesale Corp.*,
  583 F. Supp. 2d 1245, 1257 (D. Or. 2008) .......................................28

*Olivier v. Baca*,
  913 F.3d 852 (9th Cir. 2019) ...........................................................16

*Ossanna v. Nike, Inc.*,
  365 Or. 196 (2019)..........................................................................30

*Palmer v. United States*,
  794 F.2d 534 (9th Cir. 1986) ...........................................................24

*Poland v. Chertoff*,
  494 F.3d 1174 (9th Cir. 2007) .....................................................22, 27

*Raad v. Fairbanks N. Star Borough Sch. Dist.*,
  323 F.3d 1185 (9th Cir. 2003) .........................................................29

*Sheppard v. David Evans & Assoc.*,
  694 F.3d 1045 (9th Cir. 2012) .........................................................18

*Smith v. City of Jackson*,
  544 U.S. 228, 125 S. Ct. 1536, 161 L. Ed. 2d 410 (2005)...............23, 24

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

*Stockwell v. City and Cnty. of San Francisco,*
  749 F.3d 1107 (9th Cir. 2014) ...................................................................................24

*Thompson Metal Fab, Inc. v. U.S. Dep't of Transp.,*
  289 F.R.D. 637 (D. Or. 2013) ...................................................................................17

*Villiarimo v. Aloha Island Air, Inc.,*
  281 F.3d 1054 (9th Cir. 2002) ..................................................................................23

*Wards Cove Packing Co. v. Atonio,*
  490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).........................................24

*White v. Bolden,*
  2017 WL 8793863 (C.D. Cal. Oct. 18, 2017), *aff'd sub nom. White v.*
  *Bridenstine,* 738 Fed. Appx. 544 (9th Cir. 2018) ...................................................19

*Wood v. City of San Diego,*
  678 F.3d 1075 (9th Cir. 2012) ..................................................................................29

*Zetwick v. Cty. of Yolo,*
  850 F.3d 436 (9th Cir. 2017) ....................................................................................16

*Zolotovitski v. HERE N. Am. LLC,*
  2:19-CV-1964-RAJ-BAT, 2021 WL 6334931 (W.D. Wash. Aug. 30, 2021),
  *report and recommendation adopted,* 219CV01964RAJBAT, 2022 WL 73942
  (W.D. Wash. Jan. 7, 2022)...................................................................................24, 26

**Statutes**

42 U.S.C. § 2000e–2(m) ...................................................................................................29

29 USC §623(a)(1).............................................................................................................17

29 USC §623(d) .................................................................................................................17

42 USC §2000e-2 ...............................................................................................................15

Age Discrimination in Employment Act (29 USC §623) ..................................... *passim*

Older Workers' Benefit Protection Act ............................................................................25

ORS 659A.030....................................................................................15, 17, 23, 27

ORS 659A.199.............................................................................................................15, 27

ORS chapter 659A .............................................................................................................30

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

**Other Authorities**

Federal Rule of Civil Procedure 56 ............................................................................................1, 16

Local Civil Rule 7-1....................................................................................................................1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

## LR 7-1 CERTIFICATION

In compliance with Local Civil Rule 7-1(a), Defendant Intel Corporation ("Intel") states that its counsel and counsel for plaintiff Ron Tsur ("Plaintiff") have conferred by telephone, have made a good faith effort to resolve the matters in this motion, and were unable to do so.

## MOTION

Pursuant to Federal Rule of Civil Procedure 56, Intel moves this Court for an Order granting summary judgment in its favor on all four claims for relief asserted by Plaintiff in his First Amended Complaint ("FAC"). Based on the undisputed material facts, Intel is entitled to judgment as a matter of law. This motion is supported by the following Memorandum, Plaintiff's deposition testimony, the declarations of Bruce Jones, David Sanchez, Deanna Thronson, and Helen McFarland, along with all corresponding exhibits, the pleadings and documents on file in this case, and such other evidence and argument the parties may present to this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff was one of 1,155 employees Intel laid off on July 15, 2015 in a reduction in force ("RIF") known as the Performance-Based Mandatory Buyout ("PMB layoff"). Intel's selection criteria for the PMB layoff used two aspects of its performance rating scales to identify the lowest performing employees in the company. Perhaps unsurprisingly, Plaintiff, who had previously demonstrated an inability to accept coaching tailored to help him improve his performance deficiencies, struggled to accept that he fell within the group of lower performing employees. Accordingly, he points to a single supervisor with whom he worked in 2011 and 2012 (Bruce Jones) and claims discrimination based upon his age and national origin and retaliation.

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 1

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

However, the undisputed facts show that Plaintiff has no evidence to support his claims of discrimination or retaliation.  Even if all of his allegations about Mr. Jones were true, this Court has already ruled those alleged "bad acts" are untimely.  This Court held that the statute of limitations bars Plaintiff's discrimination and retaliation claims arising out of events that occurred before January 12, 2015 (for federal claims) and before March 18, 2015 (for Oregon state claims).  All of Plaintiff's allegations related to age and national origin and retaliation arise out of alleged actions by Mr. Jones, with whom Plaintiff did not see after the spring of 2013.  Those claims are too late.

Although Plaintiff claims his inclusion the PMB layoff in 2015 was discriminatory or retaliatory, it is undisputed that the PMB layoff was for a legitimate business need (to cut costs) and that the criteria were neutral and not related to age, national origin, or any other protected category.  Plaintiff testified that the ratings he received from his two other managers (which separately qualified him for inclusion in the PMB layoff) were not improper.  It is undisputed that Mr. Jones did not have any contact with either of Plaintiff's two subsequent supervisors or with the leadership team that implemented the PMB layoff.  Plaintiff simply cannot demonstrate pretext sufficient to establish his claims.

Accordingly, Intel moves for summary judgment of all of Plaintiff's claims and respectfully requests that this Court dismiss Plaintiff's FAC as a matter of law.

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

## II.    FACTS[1]

### A.    Intel Hired Plaintiff As A Software Engineer And Bruce Jones Provides An Initial "Successful Evaluation" for 2011

Intel hired Plaintiff on January 21, 2011 as a Software Engineer (grade 8[2]).  *Deposition of Plaintiff,* attached as Exhibit A to *Declaration of Helen McFarland in Support of Intel's Motion for Summary Judgment* ("*McFarland Decl.*"), ¶2 ("*Plaintiff's Depo.*") 97:17-25, 98:19-22.  He was 58 years old.  *Plaintiff Depo.*, 98:13-15. Bruce Jones supervised Plaintiff in that role; Mr. Jones was 51 years old at the time.  *See Declaration of Bruce Jones in Support of Intel's Motion for Summary Judgment* ("*Jones Decl.*"), ¶¶2, 3.

During the timeframe relevant to this lawsuit, Intel managers assessed annual performance on two scales.  *See Declaration of David Sanchez in Support of Intel's Motion for Summary Judgment,* ("*Sanchez Decl.*"), ¶¶6, 7, 9; *Jones Decl.*, ¶¶6, 7.  First, supervisors prepared a written evaluation which described achievements and areas for improvement rated the individual's overall annual performance with one of five "Focal ratings": "Outstanding," "Exceeds Expectations," "Successful," "Below Expectations" ("BE") and "Improvement Required" ("IR").  *Sanchez Decl.*, ¶7; *Jones Decl.*, ¶6.  At the same time, the supervisor issued a Stock Share Level ("SSL") that ranged from 1 (highest value) to 5 (lowest value).  *Sanchez Decl.*, ¶9; *Jones Decl.*, ¶7.  The SSL corresponded to an amount of restricted stock that the employee was granted.  *Id.*

SSLs are awarded to employees based on merit. *Sanchez Decl.*, ¶¶10-13.  When awarding SSLs, managers were instructed to differentiate among their employees based on the employee's contributions and growth relative to their peers, performance level and skill set, and expectations

---

[1] Intel attempted to obtain a stipulation of facts from Plaintiff, but was unable to obtain Plaintiff's agreement.
[2] Intel hires individuals into "grades" based upon the job scope, complexity, responsibilities, experience and skill. Grades are unrelated to an individual's age.  *Thronson Decl.*, ¶8.

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 3

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

of employee contribution and leadership. *Sanchez Decl.*, ¶10. They were given a certain budget for the employees they supervised and required to allocate the set budget within their employees based upon relative performance. *Jones Decl.*, ¶8; *Sanchez Decl.*, ¶12. Intel provided annual published guidance and training to the managers who issued SSL ratings. *Sanchez Decl.*, ¶¶10-12; *Jones Decl.*, ¶8. In 2011, an Outstanding Focal level corresponded to an SSL 1, and an IR Focal level corresponded to an SSL 5. *Jones Decl.*, ¶7; *Sanchez Decl.*, ¶11.

On April 9, 2012, Mr. Jones gave Plaintiff his annual performance evaluation for 2011. *Jones Decl.*, ¶¶10, 11, Ex. A; *Plaintiff Depo.*, 102:1-8. For his performance in 2011, Mr. Jones rated Plaintiff's performance as "Successful," and he also issued restricted stock units to Plaintiff at SSL 3[3]. *Jones Decl.*, ¶¶6, 9-11, Ex. A; *Plaintiff's Depo.,* 215:12-17, 219:6-8; *Deposition of Bruce Jones*, attached as Exhibit B to *McFarland Decl.*, ¶3 ("*Jones Depo*"), 55:2-56:16.

In the written evaluation, Mr. Jones commended Plaintiff for much of his work, his ability to work effectively with an outside team to resolve numerous integration and functional problems, his strong system-level debug skills, and his deep understanding of system hardware and software. *Plaintiff's Depo.,* 215:18-217:14, *Jones Decl.,* ¶11, Ex. A. However, Mr. Jones also described several areas in which Plaintiff should improve: Mr. Jones explained that Plaintiff was "frustrating" when discussing technical issues because he focused on small issues and lost sight of the larger picture; Plaintiff built walls in his interactions with fellow engineers; Plaintiff divided work into "my work" and "your work" rather than focusing on the team's work and objectives; Plaintiff told a team of co-workers he was "very disappointed" in them for not following his directions on the task (although he was not their supervisor); Plaintiff adopted a style of positioning tasks for other people to do the work (instead of performing the work

---

[3] Plaintiff does not take issue with these performance ratings. Despite his letter to Aicha Evans, Plaintiff testified that he did not have any complaints about the 2011 performance review. *Plaintiff's Depo.*, 220:5-11.

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 4

himself) while Plaintiff monitored and tracked the efforts; and Plaintiff was not acting as a leader or role model for the team.  *Plaintiff's Depo.,* 215:18-217:14, *Jones Decl.,* ¶11, Ex. A.  The review stated that Plaintiff also did not make any code contributions in 2011 or fix any of his assigned defects.  *Id.*

**B.    Plaintiff Disagrees With And Complains About His 2011 Performance Evaluation**

Two days after receiving his evaluation, on April 11, 2012, Plaintiff sent a letter to Aicha Evans, then Intel's Senior Vice President/Corporate Strategy Officer, describing his concerns about the feedback outlined in his 2011 performance appraisal.  *Plaintiff's Depo.*, 220:14-19, Ex. 12; *Deposition of Deanna Thronson,* attached as Exhibit C to *McFarland Decl.* ¶4 ("*Thronson Depo.*"), 49:7-19; *Declaration of Deanna Thronson in Support of Intel's Motion for Summary Judgment,* ("*Thronson Decl.*"), ¶3, Ex. A.  Although Plaintiff did not report to Ms. Evans, he knew her from prior interactions.

In that three-page document, Plaintiff provided a summary of his professional background and outlined his various complaints with Mr. Jones' evaluation of his performance during calendar year 2011.  *Thronson Decl.*, ¶3, Ex. A.  Plaintiff wrote that he disagreed with the criticisms Mr. Jones provided, which he felt were "ludicrous," "bad spirited," and "contradicted reality."  *Id.*  He also wrote that Mr. Jones said: "I never managed anyone who is 10 years older than me" and that Plaintiff "did not match the profile" of his team.  *Id.*  Notably, Plaintiff did not complain that Bruce Jones had ever made any negative comments regarding his national origin nor did he identify any other age-related statement by Mr. Jones. *Id.*

**C.    Intel's Human Resources Department Investigates Plaintiff's Complaint**

Intel assigned one of its Legal investigators (Deanna Thronson) to investigate.  *Thronson Decl.*, ¶¶2, 3.  In the spring of 2012, Ms. Thronson interviewed Plaintiff about his complaint to Ms. Evans and any other complaints he had about Mr. Jones.  *Plaintiff's Depo.*, 238:14-240:12;

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 5

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

*Thronson Decl.*, ¶4.  Plaintiff was upset that Intel's Human Resources department was involved and was reluctant to participate at first.  *Id.*  However, he spoke with Ms. Thronson and divulged his complaints about Mr. Jones.  *Id.; Plaintiff's Depo.*, 238:14-239:24.

Although Ms. Thronson directly asked Plaintiff about the alleged comments by Mr. Jones, that "I never managed anyone 10 years older than me," and that Plaintiff "did not match the profile" of his team, Plaintiff did not complain about unfair treatment regarding his age. *Thronson Depo.*, 51:4-8; *Thronson Decl.*, ¶¶5-6.  Plaintiff did not complain to Ms. Thronson that Mr. Jones made any other age-related comments nor did Plaintiff state that Mr. Jones said anything about his national origin.  *Plaintiff's Depo.*, 240:15-242:1; *Thronson Depo.*, 45:8-15; *Thronson Decl.*, ¶6.  In fact, Plaintiff did not mention <u>any</u> of the alleged age and national origin-based comments that he has included in paragraph 10 of his FAC.  *Plaintiff's Depo.*, 130:15-20; *Thronson Depo.*, 45:8-15; *Thronson Decl.*, ¶7.  Instead, Plaintiff focused on rebutting what he felt to be Mr. Jones' inaccurate criticisms of his work.  *Thronson Decl.*, ¶7.

Ms. Thronson fully investigated Plaintiff's claims in the spring of 2012.  *Thronson Decl.*, ¶¶2-10.  She spoke with Plaintiff, Mr. Jones, and several other witnesses including a person of similar age on Mr. Jones' team and a character witness with whom Plaintiff suggested she speak. *Thronson Depo.*, 43:21-44:8, 47:18-49:6; *Thronson Decl.*, ¶8.  She invited Plaintiff to provide any and all information he thought would be relevant.  *Thronson Depo.*, 61:14-62:2; *Thronson Decl.*, ¶¶4, 11.  Mr. Jones denied that he said, "I never managed anyone 10 years older than me," but he did acknowledge that Plaintiff had more years of experience than Mr. Jones did. *Thronson Depo.*, 44:16-45:7, 52:8-15.  Mr. Jones explained that because Plaintiff had more experience, it had been challenging to provide supervision to him because Plaintiff did not want to listen to or accept instructions or feedback from Mr. Jones.  *Thronson Depo.*, 46:23-47:17,

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

52:16-53:1.  Plaintiff often felt he was "above" the work that was given to him and refused to do the tasks that Mr. Jones needed to have completed.  *Jones Decl.*, ¶¶5, 11-13.

Ms. Thronson did not find any evidence of an Intel policy violation nor did she find that Mr. Jones had engaged in any improper conduct.  *Plaintiff's Depo.*, 245:7-14, 246:18-247:8, 252:10-24; *Thronson Decl.*, ¶9.  Instead, she concluded that Mr. Jones was properly trying to manage his team as a supervisor and the areas for improvement identified in the performance evaluation were justified.  *Thronson Depo.*, 45:16-23, 55:2-8, 57:21-58:4; *Thronson Decl.*, ¶9; *Plaintiff's Depo.*, 248:6-249:13, 250:11-23.  Ms. Thronson informed Plaintiff of her conclusions in August 2012, including telling him she felt the performance review was accurate; she described that in at least one instance, she found that Plaintiff's tone with his team was offensive. *Thronson Depo.,* 59:12-60:9, 62:24-64:4; *Thronson Decl.*, ¶¶10-11, Ex. B.  Ms. Thronson tried to help him understand that he needed to listen to the instructions of Mr. Jones and do the work that was asked of him rather than the work he wanted to do.  *Thronson Depo.*, ¶67:16-22.

**D.      Plaintiff Does Not The Problems From The Constructive Feedback And Bruce Jones Provides A "Below Expectations" Mid-Year Performance Evaluation**

Intel managers sometimes prepared mid-year performance evaluations if an employee's performance was not meeting expected standards.  *Deposition of Matt Smith,* attached as Exhibit F to *McFarland Decl.*, ¶7 ("*Smith Depo.*"), 43:4-16.  The purpose of a mid-year evaluation was to provide notice, guidance and coaching to the employee to help the employee improve in advance of Intel issuing its Focal performance evaluation covering the entire calendar year.

In September 2012, Mr. Jones prepared a mid-year performance evaluation for Plaintiff, assessing Plaintiff's performance as "Below Expectations."  *Plaintiff's Depo.*, 257:1-259:14, 260:8-14, 261:4-12; *Jones Decl.*, ¶12, Ex. B.  Mr. Jones worked closely with Intel's Human

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

Resources department (Rachel Lawson) and his own supervisor (Dror Shindelman) to prepare it. *Jones Decl.*, ¶12.

Plaintiff's mid-year review described the reasons Mr. Jones assessed Plaintiff's performance as being "Below Expectations." *Jones Decl.*, ¶12, Ex. B. Mr. Jones highlighted some of Plaintiff's continuing performance problems, many of which had previously been noted as areas for improvement in the 2011 performance evaluation. *See Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008) ( "Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity."); *Id.* Mr. Jones wrote:

> Ron's performance and results in work not related to software integration embedded with platform teams have been below expectations. He did not fix any of the defects assigned to him. He contributed no code to the Linux WiFi driver. He completed no software development tasks. This is a failure to meet one of Intel's Grade 8 Technical Contributor expectations. …
>
> Ron completed none of the other deliverables. After a month of no progress on any deliverable, I had to reassign the work to another engineer….
>
> Performance Summary. Ron is at risk to be rated **Below Expectations.** His results do not meet those expected of grade 8 Software Engineers due to the absence of expected software development deliverables and his failure to lead the Power Management effort. *Id.*

## E.     Plaintiff Fails To Improve And Earns An "Improvement Required" Rating For 2012

Plaintiff was upset about the Below Expectations mid-year evaluation and communicated with Ms. Thronson about it. *Thronson Decl.*, ¶12. However, he did not allege to Ms. Thronson that this review constituted age discrimination or retaliation[4].

*Plaintiff's Depo.*, 262:10-14; *Thronson Decl.*, ¶¶12-13.

---

[4] Ms. Thronson, as an experienced HR Legal Investigator, did investigate this mid-year review to ascertain whether it could be considered retaliation. *Thronson Decl.*, ¶¶2, 13. She determined that it was not. *Thronson Decl.*, ¶13. Instead, it was a continuation of the same performance deficiencies that Mr. Jones identified in Plaintiff's 2011 performance review that remained unaddressed by Plaintiff. *Id.*

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

Instead, Plaintiff continued to insist that he did not agree with the substance of the commentary Mr. Jones provided. *Thronson Decl.*, ¶12.  Plaintiff told Ms. Thronson that other supervisors thought he was a great worker and he felt that Mr. Jones was not accurate in his evaluation. *Thronson Decl.*, ¶12; *Thronson Depo.*, 75:15-22.

Unfortunately, during the remainder of 2012, Plaintiff did not change his behaviors nor start performing the work that Mr. Jones had outlined in the 2012 mid-year evaluation. *Jones Decl.*, ¶13.

Thus, by early December 2012, it became clear that Mr. Jones was going to give Plaintiff a less than Successful Focal rating and that a performance management plan would be the next step. *Jones Decl.*, ¶13.  Mr. Jones worked closely with Intel's Human Resources representative and his own supervisor in preparing this evaluation. *Jones Decl.*, ¶¶13, 15.

**F.    Intel Offers Plaintiff A Voluntary Separation Package In Lieu Of A Performance Plan**

Intel has a standard process through which it offers employees who are being placed on a formal performance management plan an opportunity to resign and accept a severance package in exchange for signing a release. *Jones Decl.*, ¶13; *Thronson Decl.*, ¶14.  Given Plaintiff's diminished performance in 2012, and the need to commence a formal performance management plan, Intel offered Plaintiff an opportunity to enter into a voluntary separation agreement (also sometimes referred to as a "buyout"). *Plaintiff's Depo.*, 272:3-5, 272:25-274:2; *Jones Decl.*, ¶13.  He could elect to either: resign and accept a severance package in exchange for a release; or elect to stay, in which case he would be placed on a Corrective Action Plan ("CAP"), he would receive an Improvement Required Focal rating for 2012, and he would be expected to improve his performance. *Jones Decl.*, ¶13; *Plaintiff's Depo.*, 272:25-273:8.  Intel communicated these

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041

options to Plaintiff in December 2012 and gave him until January 2, 2013 to consider his decision.  *Jones Decl.*, ¶14; *Plaintiff's Depo.* 272:25-273:8.

In December 2012, Plaintiff discussed the situation and options with several people at Intel, including Ms. Thronson.  *Plaintiff's Depo.*, 242:7-244:8; *Thronson Decl.*, ¶14.  Plaintiff invited a friend who was also an Intel employee (Glen Begis) to meet with Ms. Thronson to help Plaintiff consider his decision; Plaintiff, Ms. Thronson and Mr. Begis talked about the situation and options for over an hour on December 26, 2012[5].  *Thronson Decl.*, ¶14; *Plaintiff's Depo.* 242:2-14.  Ultimately, on January 2, 2013, Plaintiff declined the separation package and elected to stay with Intel.  *Thronson Decl.*, ¶16; *Plaintiff's Depo.*, 273:21-24.  He would receive an Improvement Required rating for his performance in 2012[6] and he would have to successfully complete the CAP with Mr. Jones in early 2013.  *Plaintiff's Depo.*, 268:9-11, 273:9-11; *Thronson Decl.* ¶16.  Mr. Jones gave him a copy of the CAP on January 9, 2013.  *Plaintiff's Depo.*, 119:4-120:3, 267:2-268:11.

## G.    Intel Gives Plaintiff Permission To Transfer To A New Department

Normally, Intel would require an employee on a CAP to successfully complete the CAP with the supervisor issuing the CAP before moving to a new role or supervisor.  *Plaintiff's Depo.*, 274:8-13; *Thronson Decl.*, ¶16.  Notwithstanding, in January 2013, Plaintiff explored transferring to another position by contacting a different Intel supervisor and expressing interest in an internal transfer.  *Thronson Decl.*, ¶16.  In January 2013, Plaintiff asked Ms. Thronson if he could transfer to a new supervisor before completing his CAP with Mr. Jones.  *Thronson Decl.*,

---

[5] Consistent with his prior communications with Ms. Thronson, during this meeting on December 26, 2012, Plaintiff never once mentioned any claim of alleged age discrimination, national origin discrimination, or retaliation. *Thronson Decl.*, ¶15.  He never mentioned any age-related or national origin-related comments.  *Id.*
[6] Plaintiff did not complain about the Improvement Required rating from Mr. Jones.  *Plaintiff's Depo.*, 275:9-17, 277:4-16.

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 10

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

¶16.  Intel approved Plaintiff's request for a transfer and informed him that he would have to complete a CAP under his new supervisor.  *Plaintiff's Depo.*, 128:11-14; *Thronson Decl.*, ¶16.

## H.    Plaintiff's New Supervisor Steven Nahas Rated Him As Successful And Issued An SSL 4 For 2013

Thus, on January 14, 2013, Intel transferred Plaintiff to a new team that was supervised by Steven Nahas, then age 62.  *Plaintiff Depo.*, 105:21-106:6; *Deposition of Steven Nahas,* attached as Exhibit E to *McFarland Decl.* ¶6 ("*Nahas Depo.*"), 22:9-13.  Although Plaintiff still had to complete a CAP[7], Mr. Nahas re-drafted a CAP that was specific to the behaviors identified by Mr. Jones and the duties Plaintiff would need to perform in his group.  *Thronson Decl.*, ¶17; *Nahas Depo.,* 63:1-9.  In his new position, Plaintiff held a new title (Software Architect) and worked in a new department.  *Plaintiff Depo.*, 106:11-16.

Mr. Jones and Mr. Nahas did not know each other and did not work with each other.  *Jones Decl.*, ¶17; *Jones Depo.,* 138:3-7.  Although Mr. Jones met with Plaintiff and Mr. Nahas in the spring of 2013 to deliver the 2012 performance evaluation (which was an Improvement Required and an SSL 5 rating for performance in calendar year 2012), it is undisputed that there was no further contact between the two managers.  *Plaintiff's Depo.*, 108:22-109:15, 121:11-22, 128:24-129:4; *Jones Decl.*, ¶17.  Plaintiff did not see Mr. Jones again after that April 2013 meeting.  *Plaintiff's Depo.*, 115:12-16.  There was no need for Plaintiff or Mr. Nahas to see or interact with Mr. Jones because of Plaintiff's new position.  *Jones Decl.*, ¶17.

Plaintiff had absolutely no complaints with Mr. Nahas or his supervision.  *Plaintiff's Depo.,* 107:24-108:1.  Plaintiff testified that he did not believe Mr. Nahas said or did anything negative towards him because of his age, national origin, or any other reason.  *Plaintiff's Depo.,*

---

[7] Plaintiff never complained about the CAP he received from Mr. Nahas.  *Plaintiff's Depo.*, 277:14-19, 278:5-6.

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

107:17-23; 129:24-130:9; 132:5-10.  Plaintiff does not believe Mr. Nahas retaliated against him because of his complaint related to Mr. Jones.  *Plaintiff's Depo.,* 116:11-15; 130:10-13.

Mr. Nahas prepared Plaintiff's performance evaluation for 2013.  *Nahas Depo.,* 140:12-18*; Plaintiff's Depo.* 130:6-21.  In the spring of 2014, Mr. Nahas gave Plaintiff a performance rating of "Successful" for 2013 but issued a low SSL rating of 4.  *Nahas Depo.,* 38:6-18*; Plaintiff's Depo.* 131:17-19.  Plaintiff did not have any complaints about the evaluation he received from Mr. Nahas for 2013.  *Plaintiff's Depo.,* 120:7-16.  Although he received a low SSL rating, Plaintiff believed it was "based on the tenure of the time that you had worked with that manager."  *Plaintiff's Depo.,* 132:11-15.  In other words, Plaintiff did not believe that the SSL rating he received from Mr. Nahas was discriminatory or retaliatory.  *Plaintiff's Depo., 116:11-15, 132:5-10.*  Further, Mr. Nahas testified that he did not evaluate or assign SSLs to Plaintiff on account of Plaintiff's age or national origin, nor did he retaliate against Plaintiff on account of the prior complaint about Mr. Jones. *Nahas Depo.*, 188:22-189:25.

**I.      Plaintiff's New Supervisor Roger Rees Also Rated Plaintiff As Successful And Issued An SSL 5 for 2014**

In January 2014, Plaintiff was transferred again, this time to a team supervised by Roger Rees, then age 63.  *Plaintiff's Depo.*, 133:10-134:6.  Plaintiff testified that this was a promotion and his salary was increased.  *Plaintiff's Depo.*, 134:7-9, 17-19.  Mr. Rees supervised Plaintiff from January 2014 until he was laid off on July 15, 2015.  *Plaintiff's Depo.,* 136:22-137:4.  Like with Mr. Nahas, Plaintiff testified that he had absolutely no complaints about working with Mr. Rees as his supervisor. *Plaintiff's Depo.,* 136:19-21.  Plaintiff agreed that Mr. Rees never treated him unfairly because of his age or national origin and he never retaliated against him for any reason.  *Plaintiff's Depo.,* 136:13-18, 142:23-143:25, 144:9-15.

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

In the spring of 2015, Mr. Rees gave Plaintiff his performance evaluation for 2014[8].
*Plaintiff's Depo.*, 141:18-22; *Deposition of Roger Rees*, attached as Exhibit D to *McFarland Decl.*, ¶5 ("*Rees Depo.*") 57:22-25.  Mr. Rees gave Plaintiff a focal rating of "Successful" and issued him an SSL rating of 5.  *Plaintiff's Depo.*, 145:4-6; *Rees Depo.*, 54:11-14, 72:14-18.  Plaintiff agreed with Mr. Rees' performance evaluation of him and did not believe anything in the review was related to his age, national origin, or in retaliation for any prior complaint.  *Plaintiff's Depo.*, 142:23-144:4.  Plaintiff did not believe Mr. Rees was even aware of his complaints against Mr. Jones, which form the basis of his retaliation claim.  *Plaintiff's Depo.*, 144:16-19.  Plaintiff also admitted that the SSL rating issued by Mr. Rees were not motivated by his age, national origin, or any prior complaint he may have made.  *Plaintiff's Depo.*, 148:8-16.  Mr. Rees also confirmed that the performance ratings and SSL awards he gave to Plaintiff were not based on age or national origin.  *Rees Depo.*, 165:4-10

**J.     Intel Institutes Its Performance-Based Mandatory Buyout Layoff in July 2015**

In the first quarter of 2015, Intel determined that its revenue was down and that it would need to lower its revenue forecast for the year.  *Sanchez Decl.*, ¶15; *Smith Depo.*, 23:21-24:16.  In response, Intel determined that it needed to reduce spending by $300 million by the end of the year.  *Sanchez Decl.*, ¶15; *Plaintiff's Depo.*, 166:25-167:11.  To meet that end, Intel planned to reduce its headcount through an involuntary separation program known as the PMB layoff.  *Sanchez Decl.*, ¶16; *Smith Depo.*, 57:22-58:12.  This was a decision that Intel did not take lightly.  *Sanchez Decl.*, ¶16.

---

[8] Mr. Rees also prepared a mid-year review for Plaintiff in the late spring of 2015 at Plaintiff's request.  Mr. Rees believed Plaintiff wanted this mid-year review to obtain future employment.  It was also a positive performance evaluation.  *Rees Depo.*, 125:8-15, Ex. 111.

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 13

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

Intel identified the criteria to be used to select the lowest performing employees for layoff; Intel used Focal (annual performance reviews) and SSL ratings to identify and select the lowest performing employees for layoff; the rating system was a meritocratic program that supported consistent performance management across the company.  *Sanchez Decl.*, ¶16; *Plaintiff Depo.*, 165:20-166:5, 175:5-25.  The specific PMB criteria were: (1) current 2015[9] Focal rating or out-of-cycle rating of Improvement Required (IR); or (2) current 2015 SSL4 or SSL5 and in 2012, 2013, and 2014[10], any combination of SSL4 or SSL5, or Focal rating of BE or IR.  *Sanchez Decl.*, ¶17.  Intel did not consider any employee's age, national origin, or other protected characteristic to select them for PMB.  *Sanchez Decl.*, ¶19; *Jones Decl.*, ¶18; *Nahas Depo.,* 188:22-189:7; *Rees Depo.,* 30:9-14, 165:4-20.

**K.      Plaintiff Qualifies For The PMB Layoff And Was Laid Off on July 15, 2014 Along with 1,154 Other Intel Employees**

Applying the criteria outlined above, Plaintiff was included in the PMB layoff because: 1) he received an SSL5 in 2015 (Mr. Rees' rating for Plaintiff's 2014 performance) and an SSL4 in 2014 (Mr. Nahas' rating for Plaintiff's 2013 performance); and 2) he received an SSL5 in 2015 (Mr. Rees' rating for Plaintiff's 2014 performance) and an SSL5 and Improvement Required Focal rating in 2013 (Mr. Jones' rating for Plaintiff's 2012 performance).  *Sanchez Decl.*, ¶22; *Plaintiff Depo.*, 165:11-13.  Plaintiff qualified for the PMB layoff under these two different scenarios, one of which did not involve Jones.  *Plaintiff Depo.*, 175: 4-25.  Plaintiff was not selected because of his age, national origin, or because he had complained about Bruce Jones in 2012.  *Sanchez Decl.*, ¶20.  The individuals who set the PMB selection criteria did not

---

[9] Because Intel provides performance evaluations in the spring, the 2015 rating was actually based upon performance in 2014.  *Sanchez Decl.*, ¶6.
[10] Again this would mean the ratings received in 2012, 2013, and 2014, which were evaluations from the work performed in 2011, 2012, and 2013. *Sanchez Decl.*, ¶6.

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 14

know Plaintiff, his age, or his national origin.  *Sanchez Decl.*, ¶20; *Smith Depo.*, 60:7-24.  They

also did not know that Plaintiff complained about Bruce Jones in 2012.  *Sanchez Decl.*, ¶20.

On June 15, 2015, Plaintiff received notice that he would be laid off effective July 15,

2015.  *Plaintiff Depo.*, 150:4-7.

## L.    Plaintiff Unsuccessfully Sought An Open Door Investigation of the Layoff

Following receipt of his layoff notice, Plaintiff attempted to initiate an "Open Door

Investigation" into his layoff.  *Plaintiff Depo.,* 150:10-14.  He sought to challenge the SSL

ratings that qualified him for the layoff and hoped Intel would reconsider the decision to lay him

off.  Intel's Legal investigator (Diana Egusa) informed Plaintiff that Intel was not performing

Open Door investigations with regard to PMB selection.  *Plaintiff Depo.,* 206:21-207:4.  This

was not a decision limited to Plaintiff; Intel generally did not reconsider performance ratings and

SSL levels for the over eleven hundred employees impacted by the PMB layoff.  *Sanchez Decl.*,

¶23.

## M.    This Is A Single Plaintiff Lawsuit Limited To Adverse Actions In 2015 That Plaintiff Contends Are Age Discrimination, National Origin Discrimination Or Retaliation

This Court held that Plaintiff brought a single-plaintiff lawsuit, and it shall not be

transformed it into a class or collective action.  (Dkt. 41)  The FAC contains four causes of

action: (1) age discrimination - disparate treatment - alleged violation of the Age Discrimination

in Employment Act ("ADEA") (29 USC §623) and ORS 659A.030; (2) age discrimination -

disparate impact - alleged violation of ADEA and ORS 659A.030; (3) retaliation - alleged

violation of ADEA and ORS 659A.030(1)(f), ORS 659A.199; and (4) national origin

discrimination - disparate treatment - alleged violation of 42 USC §2000e-2 (a), (m) ("Title

VII").  *FAC.*

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

This Court has already held that Oregon's one-year statute of limitations applies in this case.  Because Plaintiff filed his BOLI charge on January 12, 2016, the limitations period for his ADEA and Title VII claims begins on March 18, 2015 (300 days before filing his BOLI charge) and on January 12, 2015 (one year before filing his BOLI charge) for his state law claims. (*Dkt. 22).*

### III.    SUMMARY JUDGMENT SHOULD BE AWARDED TO INTEL

#### A.    Legal Standard

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017). "The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'An issue of material fact is genuine [only] if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jones v. Royal Admin. Servs., Inc.*, 866 F.3d 1100, 1104 (9th Cir. 2017) *quoting Anderson, supra,* 477 U.S. at 242.

Rule 56 "contains 'no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.'" *Castellanos v. United States*, 438 F. Supp. 3d 1120, 1126 (S.D. Cal. 2020), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (emphasis in original). Rather, "[w]here, as here, the [nonmoving] party will have the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case." *Olivier v. Baca*, 913 F.3d 852, 857 (9th Cir. 2019) *quoting Celotex, supra,* 477 U.S. at 325. "Once the moving party has met its burden, the burden shifts to the non-moving party to 'set out specific facts showing a genuine

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

issue for trial.'" *Thompson Metal Fab, Inc. v. U.S. Dep't of Transp.*, 289 F.R.D. 637, 640 (D. Or. 2013), quoting *Celotex*, 477 U.S. at 324. "To carry this burden, the non-moving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.*; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may rely only on evidence that "could be presented in an admissible form at trial[.]" *Leupold & Stevens, Inc. v. Lightforce USA, Inc.*, 501 F. Supp. 3d 987, 1023 (D. Or. 2020), citing *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

**B.    Plaintiff's Disparate Treatment Age Discrimination Claim Fails As A Matter Of Law**

In his First Claim for Relief, Plaintiff alleges disparate treatment related to his age in violation of ORS 659A.030 and 29 USC §623(a)(1) & (d) ("ADEA").  Under the ADEA, it is unlawful for an employer "(1) to … discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 USC §623(a)(1).

When this Court granted Intel's Motion to Dismiss Plaintiff's age discrimination disparate treatment claims based on events that occurred prior to January 12, 2015, it noted that Plaintiff's disparate treatment claims were thus reduced to: (1) his 2015 stock award[11]; (2) his selection for layoff; (3) his termination; and (4) Intel's refusal to reconsider his performance reviews.  (*Dkt 22*).  The Court also acknowledged that Plaintiff's "cat's paw" theory had not yet been dismissed.  Now that discovery is complete, it is apparent that Plaintiff's claims are unsustainable.

---

[11] Plaintiff does not appear to take issue with his 2015 stock award (given by Roger Rees). Because he testified he does not believe that was unfair, we do not address it here.

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT -  17

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

ADEA discrimination claims are evaluated with the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).   *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008), *citing Enlow v. Salem–Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004). Under this framework, the employee must first establish a prima facie case of age discrimination. *Diaz, supra*, 521 F.3d at 1207; *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir.2000). If the employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. *Id*.  If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination. *Id.*  The evidence must be more than just a denial of the business reason, it must be specific evidence showing that the employer's proffered reason is unworthy of credence.  *Diaz, supra*, 521 F.3d at 1212.

### 1.    Plaintiff Cannot Show A *Prima Facie* Case Of Age Discrimination

In order to establish a prima facie case of age discrimination, a plaintiff must show he: a) is a member of a protected class; b) was performing his job satisfactorily; c) was discharged; and d) was discharged under circumstances otherwise giving rise to an inference of discrimination. *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012).

Plaintiff must show that Intel discharged him "under circumstances otherwise giving rise to an inference of discrimination." *Diaz, supra*, 521 F.3d at 1207–08.  "An inference of discrimination can be established by showing the employer had a continuing need for the employee['s] skills and services in that their various duties were still being performed ... or by showing that others not in their protected class were treated more favorably." *Id.*

INTEL CORPORATION'S MOTION FOR SUMMARY JUDGMENT -  18

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

### a.  No Inference Of Discrimination Can Be Made Regarding Plaintiff's 2015 SSL Rating or Selection For The PMB Layoff

As evidenced by his testimony, Plaintiff's disparate treatment claim related to his termination is based solely on alleged comments by Mr. Jones in 2011 and 2012.  *Plaintiff's Depo.*, 132:11-15 (admitting Mr. Nahas did not give him the SSL 4 rating due to his age), 148:8-16 (admitting Mr. Rees did not give him the SSL5 rating due to age); 191:9-23 (admitting that he had no evidence that Intel intended to develop the PMB layoff to negatively impact older employees).

Plaintiff alleges Mr. Jones made offensive age-related comments in 2011 (and maybe 2012). *FAC*, ¶10.  These alleged statements are completely uncorroborated and Plaintiff admits he never told anyone at Intel about them even during Ms. Thronson's investigation.  *Plaintiff's Depo.,* 130:15-20.

But even if, *arguendo,* Mr. Jones made these comments related to age, they are not evidence of discrimination when not directly tied to the adverse action.  *See, e.g., Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918-19 (9th Cir. 1996)(manager's references to Plaintiff as "old dog" and "crazy Canadian" insufficient to rise to level of direct evidence).  Though Plaintiff *feels* that these comments showed a bias by Mr. Jones, he cannot show that the comments were "tied to" any adverse action.  *See, e.g. White v. Bolden*, 2017 WL 8793863, at *4 (C.D. Cal. Oct. 18, 2017), *aff'd sub nom. White v. Bridenstine*, 738 Fed. Appx. 544 (9th Cir. 2018)("a plaintiff's subjective belief is 'wholly insufficient evidence to establish a claim of discrimination as a matter of law").

Plaintiff did not work with Mr. Jones after January 12, 2013.  It is undisputed that Mr. Jones did not have any further contact with Plaintiff after the spring of 2013.  *Jones Decl.,* ¶17.  Once Plaintiff moved to a different role under the supervision of Mr. Nahas (for 2013) and then

Mr. Rees (for 2014 and part of 2015), he had no complaints about anything in his employment. *Plaintiff's Depo.,* 107:17-23; 116:11-15; 129:24-130:13; 132:5-10, 136:13-21, 142:23-143:25, 144:9-15.  Plaintiff does not dispute the accuracy of his Focal ratings from 2013, 2014, or 2015[12].  He does not believe the SSL ratings he received for 2013 or 2014 came with any unfair or discriminatory or retaliatory motive.  *Id.*

Plaintiff simply cannot show an inference of discrimination.  Plaintiff was included in the PMB layoff that impacted 1154 other employees and was necessary to reduce Intel's expenses in 2015.  *Sanchez Decl.*, ¶21.

**b.    No Inference Of Discrimination Can Be Made Regarding Intel's Decision Not To Reconsider Prior Performance And SSL Ratings**

No inference of discrimination can be made from Intel's evenly applied policy declining to investigate concerns about prior performance reviews or SSL ratings raised after employees were informed they would be impacted the PMB layoff.  *Sanchez Decl.*, ¶23.  This policy was applied evenly to all employees that qualified for the PMB layoff.  *Sanchez Decl.*, ¶23.  Plaintiff has no evidence to suggest that younger people were treated differently.

Regardless, in 2012, Intel (through Ms. Thronson) had already reviewed Plaintiff's concerns about his performance evaluations issued by Bruce Jones.  *Thronson Decl.*, ¶¶3-13. Ms. Thronson did not find any guideline violation then and relayed that information to Plaintiff. *Thronson Decl.*, ¶¶3-13.  Any Open Door investigation would have been futile.

**2.    Intel Had A Legitimate, Nondiscriminatory Reason for the PMB Layoff**

As set forth in the declaration of David Sanchez and other discovery in this case, Intel had a legitimate reason for Plaintiff's layoff: it was trying to save $300 million in expenses. Intel

---

[12] Because Intel provides Focal ratings in the spring, these ratings are based upon the performance from years 2012, 2013, and 2014. *Sanchez Decl.*, ¶6.

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 20

created performance-based criteria to select individuals for PMB. *Sanchez Decl.*, ¶¶15-19; *Plaintiff's Depo.* 167:5-7. The criteria were age-neutral, objective, and applied evenly. *Sanchez Decl.*, ¶¶17-19. Focal ratings and SSL ratings (which were based upon performance) were objective and fair means to identify the lowest performing employees and cull them from the employee population. Intel terminated the employment of hundreds of employees through the PMB layoff action.

### 3.        Plaintiff Cannot Establish Pretext

Plaintiff has no evidence to suggest pretext. *Plaintiff's Depo.*, 179:14-25. He admitted that he does not have any evidence that Intel intended to develop the PMB layoff to negatively impact older employees, he is not aware of any documents to suggest that Intel intended to negatively impact older employees, and he is not aware of any statements by anyone at Intel to support an intent to impact older employees through the PMB layoff. *Plaintiff's Depo.*, 191:9-23.

Notably, Plaintiff qualified for the PMB layoff for two separate reasons, each of which would have individually qualified him for inclusion (2015 SSL5 and 2014 SSL4 or separately 2015 SSL5 and 2013 IR/SSL5). *Sanchez Decl.*, ¶22. Plaintiff's ratings issued in 2014 and 2015 for performance during each of the immediately prior years were issued by two managers who Plaintiff testified had no discriminatory or retaliatory animus (Mr. Nahas and Mr. Rees).

Plaintiff cannot use his subjective belief that the criteria used for deciding who would be impacted in the PMB layoff was not the best criteria to assess lower performance. Although Plaintiff may argue that stock awards may have been disproportionately lower for older workers, as he alleges, this is not sufficient to establish pretext.

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

### 4.      No Cat's Paw Theory Applies

Plaintiff's claims described above fail in large part because the only acts attributable to an allegedly discriminating/retaliating manager, Mr. Jones, occurred in or before Spring 2013, while the only timely adverse action at issue in this lawsuit took place in or after July 2015[13].  Because this Court ruled that any action prior to January 12, 2015 (for federal claims) and before March 18, 2015 (for Oregon state claims) is untimely, Intel expects Plaintiff to try to argue that a "cat's paw" theory applies.

In order to prevail on a "cat's paw" theory, Plaintiff must show that a biased subordinate "influenced, affected, or was involved in the adverse employment decision."  *Poland v. Chertoff*, 494 F.3d 1174 (9th Cir. 2007).

Plaintiff cannot do that.  It is absolutely undisputed that Mr. Jones had no influence or involvement in the selection of the PMB layoff criteria.  *Sanchez Decl.*, ¶20.  Mr. Jones did not know that any Focal rating he distributed would have any likelihood of leading to a future layoff years later.  *Jones Decl.*, ¶18.  Mr. Jones did not even know that Plaintiff had been included in the PMB layoff until after Plaintiff initiated legal proceedings against Intel.  *Jones Decl.*, ¶18.

Further, and very importantly, Mr. Jones had no input into either Mr. Nahas' ratings or Mr. Rees' ratings.  *Nahas Depo.,* 189:11-25; *Rees Depo.*, 165:23-166:1.  Mr. Nahas only briefly interacted with Mr. Jones in the spring of 2013 after which time they had no contact.  *Nahas Depo.*, 192:15-23; *Jones Decl.*, ¶17.  Mr. Rees did not know Mr. Jones at all.  *Rees Depo.*, 165:21-22.  Mr. Jones did not communicate with either of them regarding Plaintiff.  *Jones Decl.*, ¶17.  Neither Mr. Nahas nor Mr. Rees relied on Mr. Jones' opinions or prior performance

---

[13] Because Plaintiff holds Mr. Nahas and Mr. Rees blameless and he does not believe they had any improper motive based on age, national origin, or retaliation, we do not consider the Focal or SSL ratings issued by them to be adverse employment actions for purposes of this claim.

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 22

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

evaluations when they prepared their own independent evaluations of Plaintiff (giving him SSL 4 and SSL 5 ratings, respectively). *Nahas Depo.,* 189:11-25, 192:15-194:9; *Rees Depo.*, 72:14-19, 165:23-166:1.

These facts  are insufficient to survive summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

**C.      Plaintiff's Disparate Impact Age Discrimination Claims Fail As A Matter Of Law**

In his FAC, Plaintiff alleges disparate impact under the ADEA and ORS 659A.030.  He alleges that Intel's "employment policies had a disparate impact on [Plaintiff] because of his age." *FAC*, ¶51.  A disparate impact claim under the ADEA is narrower than under Title VII. *Smith v. City of Jackson*, 544 U.S. 228, 240, 125 S. Ct. 1536, 1545, 161 L. Ed. 2d 410 (2005).

To establish a prima facie case of disparate impact under the ADEA, the employee must: 1) show a significant disparate impact on a protected class or group; 2) identify the specific employment practices or selection criteria at issue; and 3) show a causal relationship between the challenged practices or criteria and the disparate impact. *Adam v. Kempthorne,* 292 Fed.Appx. 646, 651 (9th Cir. 2008).   If the employee makes such a showing, the employer may avoid liability by showing that the adverse impact was attributable to a non-age factor that was reasonable, i.e. a reasonable factor other than age. *Smith, supra,* 544 U.S. at 238-39.

Here, Plaintiff's individual claim of disparate impact age discrimination must be dismissed for two separate, independent reasons.  First, Plaintiff is unable to identify a "particular practice" that caused the disparity he claims existed for older employees.  Second, Plaintiff cannot show a causal relationship between any challenged practice and any adverse impact.  Summary judgment should be granted to the employer if there was any non-age reasonable factor that explains the adverse impact.

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

1.      **Particular Practice**

Under the ADEA, the plaintiff must identify a particular practice that causes the disparate impact; it is insufficient to simply find an uneven distribution and cry foul.  *Smith*, *supra,* 544 US at 241 (plaintiff is "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities"); *Barnes v. Saul*, 840 Fed. Appx. 943, 946 (9th Cir. 2020).  Identifying the specific practice in age discrimination cases alleging disparate impact "is not a trivial burden." *Stockwell v. City and Cnty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014).  "A disparate impact plaintiff must not merely prove circumstances raising an inference of discriminatory impact; he must prove the discriminatory impact at issue." *Palmer v. United States*, 794 F.2d 534, 536-37 (9th Cir. 1986) (affirming summary judgment in an ADEA disparate impact claim).  This standard is "exacting."  *Garay v. Lowes Home Centers, LLC*, 1:17-CV-00269-MC, 2017 WL 5473887, at *2 (D. Or. Nov. 14, 2017); *see also Zolotovitski v. HERE N. Am. LLC*, 2:19-CV-1964-RAJ-BAT, 2021 WL 6334931, at *9 (W.D. Wash. Aug. 30, 2021), *report and recommendation adopted*, 219CV01964RAJBAT, 2022 WL 73942 (W.D. Wash. Jan. 7, 2022)(aggregating different decisions by different supervisors using different criteria is insufficient for identifying a particular practice).

Plaintiff is unable to identify any particular practice.  When asked whether he felt the PMB layoff discriminated against older workers, Plaintiff responded "if it stands out that there's correlation between age and probability of being laid off in a significant way that any actions that the company could have taken to alleviate that have not been exercised."  *Plaintiff's Depo.,* 188:23-189:2.  This is precisely what is not allowed under the extensive case law, including *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)(explaining it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is "responsible

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 24

for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities").

Plaintiff has not and cannot identify a specific practice that he believes is discriminatory. Instead, he has taken Intel's Older Workers' Benefit Protection Act ("OWBPA") notice, and relies on the *results* of the PMB layoff to try to show a discriminatory practice. Plaintiff confirmed this when asked "how do you know what the company did" by responding "I don't know. I'm looking at the results." *Plaintiff's Depo.,* 189:3-4. This is insufficient to establish a prima facie claim of disparate impact age discrimination.

Plaintiff may argue that SSL awards[14] were distributed unevenly to workers based upon age. However, as set forth above, Intel provided detailed guidance to all of its managers when issuing SSLs. *Sanchez Decl.*, ¶¶10-11, Ex. B; *Jones Decl.*, ¶¶8-9. Intel's policy required managers to distribute stock based upon relative performance, not age.

Plaintiff may also try to argue that SSLs were awarded based on employees' *grade* not their age. But grade is related to an employee's job scope, complexity, education, and experience, not their age. *Thronson Decl.*, ¶8. "[A]n employee's age is analytically distinct from his years of service." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) (addressing a disparate treatment claim under the ADEA); *see also Jianqing Wu v. Special Counsel, Inc.*, 54 F. Supp.3d 48, 55 (D. D.C. 2014) (addressing a disparate impact claim and concluding that "age and experience in the field are not logical equivalents,"); *accord Garay v. Lowes Home Centers, LLC*, 1:17-CV-00269-MC, 2017 WL 5473887, at *3 (D. Or. Nov. 14, 2017). Age is not a factor when setting grade. *Thronson Decl.*, ¶8.

---

[14] Plaintiff may also argue that time-vesting stock options distributed by the SSLs disfavored older employees.

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 25

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

2.      **Reasonable Factors Other Than Age**

Plaintiff's claims of disparate impact also fails because Intel has shown that the PMB layoff was effectuated for "reasonable factors other than age."  In the present case, Intel selected individuals based on both Focal and SSL ratings, neither of which is "age."  Instead, these annual performance ratings are the assessments of several managers (only one of whom is alleged to have discriminatory animus) that were determined independent of the decision years later to use these factors the PMB layoff selection.  *Jones Decl.*, ¶18.

Plaintiff cannot show that the PMB layoff criteria (Focal and SSL ratings) selected for age for the simple reason that they did not; they were associated with each employee's manager's assessment of performance.  Per Intel's policy on SSL ratings, Intel's guidance to managers was that SSL ratings were to be correlated to performance.  *Sanchez Decl.*, ¶¶10, 11, Ex. B.  Additionally, none of Plaintiff's supervisors distributed SSL ratings based on age.  *Jones Decl.*, ¶¶9, 18; *Nahas Depo.*, 188:22-189:25; *Rees Depo*, 165:4-20.

Plaintiff does not even believe that the ratings that led to his selection were due to age. *Plaintiff's Depo.,* 132:11-15 (acknowledging Mr. Nahas did not give him the SSL 4 rating due to his age), 148:8-16 (admitting Mr. Rees did not give him the SSL5 rating due to age); 262:15-19 (attributing Mr. Jones' ratings to retaliation rather than age).

One court held summary judgment was appropriate on a disparate impact claim, despite a statistical analysis showing a disparity, where "the undisputed record evidence shows that the criteria used in Plaintiff's selection for the RIF was relative performance, as assessed by the direct supervisor of the individuals under consideration for the RIF."  *Zolotovitski*, 2021 WL 6334931, at *9.

Courts have found a reasonable factors other than age defense existed in cases using factors much closer-related to age.  In *Doyle v. Medford*, the Ninth Circuit affirmed summary

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

judgment in favor of the employer holding, "[t]he City met its burden of proof by presenting evidence that its decision [to exclude retirees from health insurance coverage] saved the City and its employees significant sums of money." *Doyle v. City of Medford*, 512 Fed. Appx. 680, 681 (9th Cir. 2013). Plaintiff admits that the company informed employees that the reason for the reduction in force was due to "flat revenue and … a need to cut $300 million." *Plaintiff's Depo.*, 167:5-7.

It is undisputed that, even if Plaintiff thinks that SSL ratings are skewed according to age, per Intel's guidance on SSL issuance, they are ostensibly performance related factors and are analytically distinct from age. Thus, Intel must prevail on the defense that it relied upon reasonable factors other than age.

## D.    Plaintiff's Retaliation Claim Fails Because He Did Not Engage In A Protected Activity And He Cannot Establish Causation

In his FAC, Plaintiff alleges that Intel retaliated against him in violation of ORS 659A.030(1)(f), 659A.199 and the ADEA. *FAC*, ¶¶52, 53. To state a claim for retaliation under the ADEA, a plaintiff must show: "(1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action." *Poland v. Chertoff*, 494 F.3d 1174, 1179-80 (9th Cir. 2007) A "causal link" is equivalent to but-for causation under the ADEA. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). The plaintiff must also show the defendant "was aware that the plaintiff had engaged in protected activity." *Maner v. Dignity Health*, 2021 WL 3699780, at *11 (9th Cir. 2021) (quoting *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003)).

Similarly under ORS 659A.030(1)(f) and 659A.199, the plaintiff must establish that he engaged in a protected activity, the plaintiff suffered an adverse employment action, and there is

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 27

a link between these two activities.  *Aichele v. Blue Elephant Holdings*, *LLC*, 292 F. Supp. 3d 1104, 1111 (D. Or. 2017).

As a preliminary issue, Plaintiff did not engage in any protected activity.  Plaintiff made only one complaint that could even be remotely considered a protected activity: his complaint to Aicha Evans in April 2012, which Intel (through Ms. Thronson) investigated in 2012.  Plaintiff complained only that in 2011 Mr. Jones said he "did not match the profile of [his] team," and he "never managed anyone 10 years older than he was" before.  This comment, even if it were true, does not constitute a complaint of age discrimination[15].

Further, Ms. Thronson investigated all of Plaintiff's complaints in 2012.  *Thronson Decl.*, ¶¶2-10.  They were not claims related to age discrimination (and he never said anything about national origin).  Instead, Plaintiff complained about the areas for improvement identified in his 2011 performance evaluation and Mr. Jones' detailed problems with Plaintiff's work.  Thus, Plaintiff did not engage in any protected activity to meet the first element of a retaliation claim.

But even if, *arguendo*, this Court held that Plaintiff's statement and resulting investigation were a protected activity, Plaintiff cannot establish any causation between those activities and his layoff[16] three years later.  *See, e.g., Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 752 (9th Cir. 2001)(two years too long to establish temporal proximity).

---

[15] Mr. Jones denies the comment Plaintiff referenced and regardless would be only be a stray comment.  *Noga v. Costco Wholesale Corp.*, 583 F. Supp. 2d 1245, 1257 (D. Or. 2008)("Stray remarks are remarks unrelated to the decisional process, and are insufficient to demonstrate that the employer relied on illegitimate criteria").  He referred only to Plaintiff's experience and the challenges that it presented when Plaintiff did not want to listen to his guidance.  *Thronson Depo.*, 44:16-45:7, 52:8-15, 46:23-47:17, 52:16-53:1.
[16] This Court has already ruled that any of Plaintiff's claims for retaliation based on events prior to March 18, 2015 are untimely.  Dkt. 22.  Thus, he cannot maintain that the BE/IR ratings from Mr. Jones were retaliatory or that the ratings by Mr. Nahas or Mr. Rees were retaliatory.  Regardless, Plaintiff admitted that he does not believe his other managers (Mr. Nahas or Mr. Rees) retaliated against him when they prepared their performance evaluations and issued SSL ratings of 4 and 5.  *Plaintiff's Depo.*, 116:11-15; 130:10-13; 143:23-25; 164:5-9.

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT - 28

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

If a plaintiff brings a retaliation claim against his employer, the plaintiff must show that the individual decision-makers responsible for the adverse employment action knew of the plaintiff's protected activity. *See Raad*, 323 F.3d at 1197 (stating that the plaintiff, suing a school district, must show that the "principals who refused to hire her were aware that she had engaged in protected activity").

Thus, in order to show any retaliation, Plaintiff must show that the PMB layoff (in July 2015) was caused by his 2012 complaint about Mr. Jones or his involvement in Intel's investigation of that 2012 complaint.  However, it is undisputed that no one who prepared the criteria for the PMB layoff knew Plaintiff or knew that he had filed any complaint about Mr. Jones.  *Sanchez Decl.*, ¶20; *Jones Decl.*, ¶18.  Thus, Plaintiff cannot establish retaliation as a matter of law and his third cause of action should be dismissed with prejudice.

**E.    Plaintiff Has No Evidence To Support His National Origin Discrimination Claim**

Title VII prohibits employment discrimination on the basis of national origin. The plaintiff must show that the improper discrimination was a "motivating factor" of an adverse employment action. 42 U.S.C. § 2000e–2(m); *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 174 (2009). "Disparate treatment occurs 'where an employer has treated a particular person less favorably than others because of a protected trait.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). The "central element" of a disparate treatment claim is "discriminatory intent." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 624 (2007). Thus, a plaintiff alleging disparate treatment "must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Wood*, 678 F.3d at 1081 (quoting *Ricci*, 557 U.S. at 577). This requires more than showing an employer knew that its actions might have adverse consequences on the protected person. *Id.*

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

Oregon's anti-discrimination statutes mirror Title VII and require the same prima facie elements for disparate treatment. *Ossanna v. Nike, Inc.*, 365 Or. 196, 204-05 (2019) (stating that Oregon courts "look[] to Title VII precedent for guidance in analyzing claims brought under analogous provisions of ORS chapter 659A"); *Portland State Univ.*, 352 Or. at 711 (stating that ORS Chapter 659A parallels Title VII); *Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 657 (Or. App. 1986).

Plaintiff has zero evidence for his national origin discrimination claim.  Plaintiff's sole evidence of discriminatory animus is alleged comments by Mr. Jones in 2011 and 2012.  Even if Mr. Jones made these comments, which he vehemently denies, there is no way to tie any of those claims to any actionable adverse employment action.  Any claim premised on Mr. Jones' reviews of Plaintiff (issued in 2012 and 2013 or the prior calendar years) is time barred.  *Dkt. 22*. Plaintiff admitted that the Focal and SSL ratings he received from Mr. Nahas and Mr. Rees were not related to his national origin.  *Plaintiff's Depo.,* 107:17-23; 129:24-130:9; 132:5-10, 136:13-18, 142:23-143:25, 144:9-15.

The only possible adverse employment action he could establish would be his selection for inclusion in the PMB layoff.  But it is undisputed that those who established the criteria for the PMB layoff used Focal and SSL ratings to select the individuals to be laid off.  *Sanchez Decl.,* ¶¶17-20.  It is similarly undisputed that these ratings were never tied to any individual's national origin and that the crafters of the PMB criteria did not know Plaintiff or his national origin.  *Sanchez Decl.,* ¶¶19-20; *Plaintiff's Depo.,* 177:10-21 ("I have never seen any report that indicated national origin").

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

Plaintiff simply cannot dispute that he has no evidence to even suggest his national origin was a factor in his selection for the July 2015 layoff.  This Court should grant summary judgment on this claim as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, Intel respectfully requests that the Court grant summary judgment in its favor and dismiss Plaintiff's First Amended Complaint with prejudice.

DATED:  September 29, 2022.                    SEYFARTH SHAW LLP


By:  *s/Helen M. McFarland*
    Helen M. McFarland (Bar No. 013176)
    hmcfarland@seyfarth.com
    SEYFARTH SHAW LLP
    999 Third Avenue, Suite 4700
    Seattle, WA  98104-3100
    Tel: (206) 946-4910

    Christopher J. DeGroff (*Admitted Pro Hac Vice*)
    cdegroff@seyfarth.com
    SEYFARTH SHAW LLP
    233 South Wacker Drive, Suite 8000
    Chicago, IL  60606-6448
    Tel: (312) 460-5000

    Andrew Scroggins (*Admitted Pro Hac Vice*)
    ascroggins@seyfarth.com
    SEYFARTH SHAW LLP
    233 South Wacker Drive, Suite 8000
    Chicago, IL  60606-6448
    Tel: (312) 460-5000

    *Attorneys for Intel Corporation*

INTEL CORPORATION'S MOTION FOR SUMMMARY JUDGMENT -  31

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), because it contains 9,484 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue
Suite 4700
Seattle, WA  98104-4041

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2022, I presented ***Intel Corporation's Motion for***

***Summary Judgment*** with the Clerk of the Court using the CM/ECF system, which sent

notification of such filing to the following counsel of record:

> Shanti Lewallen
> LEWALLEN LAW, LLC
> 65 SW Yamhill
> Suite 300
> Portland, OR 97204
> shantilewallen@gmail.com
> lcdlex@gmail.com

> Andrew J. Horowitz
> Bruce C. Fox
> Obermayer Rebmann Maxwell & Hippel LLP
> 525 William Penn Place, Ste. 1710
> Pittsburgh, PA 15219-2502
> F: (412) 566-1500
> Andrew.horowitz@obermayer.com
> bruce.fox@obermayer.com

> *s/ Valerie Macan*
> Valerie Macan

87139709v.2

CERTIFICATE OF SERVICE