SHANTI LEWALLEN, OSB No. 143740
shantilewallen@gmail.com
LEE DUDLEY, OSB No. 206821
lcdlex@gmail.com
Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Telephone: (503) 997-5447

ANDREW HOROWITZ, PA Bar No. 311949 (*pro hac vice*)
BRUCE FOX, PA Bar No. 42576 (*pro hac vice*)
Obermayer Rebmann Maxwell & Hippel LLP
525 William Penn Place, Ste. 1710
Pittsburgh, PA 15219
Telephone: (412) 288-2461

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RON TSUR**, <br><br> Plaintiff, <br><br> vs. <br><br> **INTEL CORPORATION**, <br><br> Defendant. | Case No.: 3:21-cv-00655-SI <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> **Request for Oral Argument** |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES.......................................................................................... iii

I. INTRODUCTION...........................................................................................................1

II. FACTS ..........................................................................................................................1

    A.   Intel Assigns Tsur to Manager Bruce Jones who Fosters a Hostile Work Environment with Ageist, Xenophobic and Anti-Semitic Statements ...............................................1

    B.   Plaintiff Reports Jones' Ageist Comments to Intel Management .......................................3

    C.   Intel HR Legal Conducts a Perfunctory "Investigation," Targeting Tsur with Unfair Scrutiny and Criticism in Retaliation for Protected Whistleblowing...........................................4

    D.   After Learning of Tsur's Concerns, Jones Retaliates, Targeting Tsur with a Mid-year Review Downgrading His "Satisfactory" Rating to "Below Expectations" ...............................5

    E.   Intel Attempts to Terminate Tsur Based on Jones' Shifting Demands and Biased Performance Evaluation ............................................................................................................6

    F.   Intel Forces Tsur to Choose Between a Humiliating "Corrective Action Plan" and Termination ....................................................................................................................................6

    G.   Engineers Familiar with Tsur's Work Convince Intel to Transfer Tsur to Steven Nahas; Jones Rates Tsur "Improvement Required" in an Encrypted 2013 Review, Giving Him an SSL Rating of 5, Later Used to Justify Tsur's Termination.......................................................7

    H.   Nahas' Hands are Tied by Jones' Prior Unfair Review, Such That Nahas Rates Tsur SSL 4 in 2014, Testifying Later that Tsur Deserved SSL 3 .............................................................7

    I.   Roger Rees' Hands are Tied by Jones' Unfair Review and Intel's Focal Guidelines, Such That Rees Rates Tsur SSL 5 in 2015, Testifying Later That Tsur Deserved SSL 3 ..................9

    J.   Intel's Label, "Performance-Based Mandatory Buyout" for its 2015 RIF Adds Insult to Injury, as SSL Ratings Relied Upon Had Little, if Anything, to do With Performance Under Intel's Inflexible Focal Guidelines Paired with Widespread "Peanut-Buttering".......................9

    K.   Overwhelming Statistical Evidence Demonstrates that the RIF Targeted Older Workers for Termination....................................................................................................................12

    L.   Intel Blackballs Tsur Over His Manager's Attempts to Retain and Rehire Him ..............15

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

III. SUMMARY JUDGMENT SHOULD BE DENIED IN FULL ..............................................16

   A.   Legal Standard..................................................................................................................16

   B.   All Facts and Reasonable Inferences Must be Construed in Favor of Tsur .....................17

   C.   The Facts of the Case Must be Construed in Context Rather Than as an Unrelated Collection of Isolated Events.....................................................................................................19

   D.   Tsur Does Not "Admit" That He Has No Evidence ..........................................................20

   E.   Jones' Ageist, Xenophobic and Anti-Semitic Comments Are Probative Evidence of Jones' Discriminatory Animus .....................................................................................................21

   F.   Tsur Can Show Age-Based Bias on the Part of Intel Irrespective of Jones .....................23

   G.   Intel Exposed Itself to Cat's Paw Liability by Relying on Jones' Evaluations of Tsur to Include Him in the 2015 Reduction in Force .........................................................................23

   H.   Plaintiff's Claim for Age-Based Disparate Treatment is Supported by Evidence of Age-Related Bias in His SSL Ratings and Jones' Discriminatory Animus ......................................25

   I.   Plaintiff's Claim for Age-Based Disparate Impact is Supported by the Disproportionately-Older Composition of the 2015 RIF and the Age-biased Assignment of 2013-2015 SSL Ratings...............................................................................................................26

   J.   Plaintiff's Retaliation Claim for Reporting Age Discrimination is Supported by Jones' Conduct After Plaintiff Engaged in Protected Activity, Compared with Before, and Intel's Refusal to Review Plaintiff's Selection for the 2015 RIF or Consider Rehiring Him ..............28

   K.   Plaintiff's Discrimination Claim Based on National Origin is Supported by Evidence of Jones' Xenophobic and Anti-Semitic Animus ........................................................................30

IV. CONCLUSION ................................................................................................................31

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

# **TABLE OF AUTHORITIES**

## CASES

*Alexander v. Eye Health Nw., P.C.*, No. CV05-1632-HU, 2006 U.S. Dist. LEXIS 72282, at \*16-17 (D. Or. Oct. 3, 2006)...................................................................................21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) ..................................16

*Andrews v. Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990)....................................20

*Bator v. Hawaii*, 39 F.3d 1021 (9th Cir. 1994). ..........................................................16

*Black v. Grant County Public Utility District*, 820 F. App'x 547, 552 (9th Cir. 2020)................20

*Boynton-Burns v. University of Oregon*, 197 Or. App. 373, 105 P.3d 893, 897 (Or. App. 2005) 28

*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U. S. 53, 126 S Ct 2405, 165 L Ed 2d 345 (2006) ...........................................................................................................29

*Daniels v. Pioneer Central School District*, 2012 WL 1391922 (W.D.N.Y. April 20, 2012) ......24

*Debarros v. Wal-Mart Stores, Inc.*, No. 6:11-cv-06116-AA, 2013 U.S. Dist. LEXIS 87326, at \*14 (D. Or. June 19, 2013)...........................................................................................22

*Diaz v. AT&T*, 752 F2d 1356 (9th Cir. 1985) .............................................................25

*Doff v. Brunswick Corp.*, 372 F.2d 801 (9th Cir. 1966) ...............................................17

*Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-21 (9th Cir. 1998) .......................25

*Griggs v. Duke Power Co.*, 401 U.S. 424 (1971) ........................................................26

*Hartung v. Cae Newnes, Inc.*, 229 F. Supp. 2d 1093, 1100 (D. Or. 2002)....................22

*Helton v. Factor 5, Inc.*, 26 F. Supp. 3d 913, 917 (N.D. Cal. 2014) ...........................27

*Henderson v. Jantzen, Inc.*, 79 Or.App. 654 (Or. App. 1986)......................................25

*Mallinckrodt Inc. v. Masimo Corp.*, 293 F. Supp. 2d 1102 (C.D. Cal. 2003). .............16

*McLaughlin v. Wilson*, 365 Or. 535 (2019)................................................................29

*Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101-102 (2008) ........................27

*Meyer v. State*, 292 Or. App. 647 (2018) ...................................................................29

*Moore v. King Cty. Fire Prot. Dist.* No. 26, 2005 WL 2898065, at \*7 (W.D. Wash. Oct. 31, 2005)...........................................................................................................................6

*Neighorn v. Quest Health Care*, 870 F. Supp. 2d 1069 (D. Or. 2012)..........................28

*Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996)........................23

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). .....16

*Noga v. Costco Wholesale Corp.*, 583 F. Supp. 2d 1245, 1257 (D. Or. 2008) .............23

*Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007) .......................................17

*Obrey v. Johnson*, 400 F.3d 691 (9th Cir. 2005) ........................................................25

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

*Ossana v. Nike*, 365, Or. 196 (2019) ...................................................................24

*Poland v. Chertoff*, 494 F.3d 1174 (9th Cir. 2007) ..........................................24

*Reece v. Pocatello/Chubbuck Sch. Dist. No. 25,* 713 F. Supp. 2d 1222, 1232 n.6 (D. Idaho 2010) ...............................................................................................21

*Rose v. Wells Fargo & Co.*, 902 F.2d 1417 (9ᵗʰ Cir. 1990)..............................25

*Schoenbaum v. Firstbrook*, 405 F.2d 215 (2d Cir. 1968), *cert. denied*, 395 U.S. 906 (1969) ......16

*Seigler v. Wal-Mart Stores Tex.,* 30 F.4th 472, 478 (5th Cir. 2022) ...............21

*Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012) ..................................25

*Skou v. Pacific Intern. Pipe Enterprises, Inc.*, 995 F.Supp. 1142 (D. Or. 1998) ..................25

*Smith v. City of Jackson, Miss.*, 544 U.S. 228 (2005) ....................................26

*Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003) ..................................20

*Toensing v. Brown,* 374 F. Supp. 191, (N.D. Cal. 1974)...................................17

*United States v. Perry*, 431 F.2d 1020 (9th Cir. 1970)......................................16

*Vance v. Southern Bell Tel. and Tel. Co.*, 863 F.2d 1503, 1510 (11th Cir. 1989) ......................20

*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994)...........................25

*White v. Bolden*, No. 2:15-cv-03377-SVW-AJW, 2017 U.S. Dist. LEXIS 220286, at *8 (C.D. Cal. Oct. 18, 2017) .................................................................................23

## STATUTES

29 U.S.C. § 623(f)(1)........................................................................................26

42 USC 2000e-3 ...............................................................................................28

ORS 659A.030(1)(f)..........................................................................................28

ORS 659A.199 .................................................................................................28

## REGULATIONS

29 C.F.R. § 1607...............................................................................................27

29 C.F.R. § 1625.7(e)........................................................................................14

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

# I. **INTRODUCTION**

Intel Corp. omits key evidence from its brief and refuses to draw reasonable inferences that benefit Ron Tsur, the non-moving party, on summary judgment. According to Tsur's expert statistician, Dr. Mark Killingsworth, Intel failed to conduct adequate due diligence to avoid discrimination, as Tsur's layoff, along with 1,154 other Intel employees, disproportionately targeted 6.26 percent of workers aged 60 and older while only 2.15 percent of workers younger than 60 were terminated. Killingsworth Report, Lewallen Decl. ("L.Dec."), ¶ 2, Ex. 1, at p. 18. This difference in termination rates is 12.832 standard deviations, "leaving a probability that the age correlation happened by chance at much less than one in ten thousand." *Id.* at ¶18. This case is rife with disputed issues of material fact that must be tried to a jury.

# II. **FACTS**[1]

Tsur immigrated to the United States from Israel in 1981 and began working for Intel in 1984 as an independent contractor. Over his ensuing thirty-one-year career at Intel, Tsur developed a reputation at Intel as being a "go-to" person to solve complex interdisciplinary problems, particularly in the critical area of embedded circuitry devices. While Tsur long maintained his independent contractor status to maintain personal flexibility and perform work for other clients, Intel quickly became his primary client and nearly full-time employer. He later joined Intel as a direct employee in 2011.

## A. Intel Assigns Tsur to Manager Bruce Jones who Fosters a Hostile Work Environment with Ageist, Xenophobic and Anti-Semitic Statements

In January 2011, Tsur accepted a position as a full-time direct employee with Intel.

---

[1] Intel provided a draft proposed stipulation of facts two days before the deadline to file dispositive motions, representing to the Court that it was "unable to obtain Plaintiff's agreement" to the same, without explaining that Plaintiff's counsel were unable to adequately respond in the given timeframe due to other scheduling constraints. L.Dec., ¶ 3.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

Sometime in 2011, Intel assigned Tsur to work under Bruce Jones, who was approximately seven years younger than Tsur. Jones Decl., Dkt. 64, ¶ 3. Almost immediately, Jones began making biased comments about Tsur's age and Israeli national origin, communicating his bigoted opinions to Tsur as follows:

- If you think age is an advantage in this job, you are mistaken.

- At your age, you should be retired.

- You must realize that at your age your mind cannot be as sharp as when you were 20 or 30 years old. You need to make adjustments.

- You Israelis have too narrow a view of the world.

- Jews created a lot of problems in this world, look at Socialism.

- Coming from a small country like Israel, do not expect too much cooperation from other departments at Intel.

- You Israelis speak too directly with coworkers. This is not a good way to conduct business at Intel.

- You need to work at improving your accent.[2]

- I find the same communication problem that I have with you, with people who come from China or India.

Tsur Depo. (L.Dec., ¶ 11, Ex. 9) at 225:01-236:20.

Jones' opinions from Tsur's first one-on-one meeting with him were so extreme that Tsur actually wrote some of them down. L.Dec., ¶ 12, Ex. 10. Tellingly, at his deposition, Jones stopped short of denying that he made statements of this nature to Tsur, repeating instead that he did not recall having done so. Jones Depo. (L.Dec., ¶ 6, Ex. 4) at 49:22-50:03 & 104:16-107:24. On July 8, 2011, Jones removed Tsur from his role as a technical lead for a key project, assigning the work to a younger, less qualified employee who had made demeaning statements to Tsur in the

---

[2] While Tsur speaks English with a noticeable accent, he is easily understood by native English speakers.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

workplace, such as calling him "old man" and "old fart." Tsur Depo. at 210:11-210:14; L.Dec., ¶ 12, Ex. 10.

### B. Plaintiff Reports Jones' Ageist Comments to Intel Management

On April 9, 2012, Jones issued Tsur a "Successful" yearly performance ("Focal") rating based on Tsur's 2011 performance.[3] L.Dec., ¶ 14, Ex. 12. In addition to yearly Focal ratings ("Outstanding," "Exceeds Expectations," "Successful," "Below Expectations," and "Improvement Required"), Intel also assigned employees a Stock Share Level ("SSL") rating, with 1 being the best and 5 being the worst. *Id.* at ¶ 15, Ex. 13. The SSL ratings determined how many Restricted Stock Units ("RSU") of time-vesting stock (20% per year for 5 years) the employee would be awarded that year, with an SSL rating of 5 amounting to no stock award. *Id.* In 2012, Jones awarded Tsur an SSL of 3, reflecting that Tsur was expected to continue meeting Jones' expectations going forward. *Id.*; L.Dec., ¶ 16, Ex. 14.

Jones' performance review for 2012 included praise from others, commending Tsur for a year with challenging accomplishments met through his experience, initiative, technical skills and hard work, including taking a pivotal role in meeting deadlines and authoring technical documents. L.Dec., ¶ 14, Ex. 12. However, in the "Areas for Development and/or Improvement" portion of the review, Jones listed several confusing and contradictory conditions for future positive reviews, e.g., expecting Tsur to take a leadership role, but not to delegate tasks, and accusing him of "Tom Sawyerism,"[4] yet stating that "Tom Sawyerism" is "sometimes the right approach." *Id.* Jones warned that Tsur's success would depend largely on the perceptions of his teammates and made the unrealistic demand that "[g]oing forward I need Ron to show that he can make our entire team

---

[3] In 2012 Intel directed managers to rate 60-80% of employees "Successful," suggesting that Tsur had generally met Jones' met expectations for the prior calendar year. L.Dec., ¶ 16, Ex. 14.
[4] Jones defined "Tom Sawyerism" as trying to "position things so that other people will do the work while [Tsur] monitors and tracks the efforts." L.Dec., ¶ 14, Ex. 12.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

successful." *Id*. Jones concluded that for Tsur to succeed in the future he would need to "significantly improve his working relationships with his team mates and stakeholders," without any discernable guidance on how such challenges should be attempted or measured, particularly given the demands already placed on Tsur as a team leader. *Id*.

Upon receiving the performance review, Tsur worried that Jones' discriminatory animus would have a very negative impact on his career at Intel. Tsur had already requested reassignment from his next-level manager, Assaf Mor, so he could continue his work under someone other than Jones, to no avail. Tsur Depo. at 254:14-21. On April 11, 2012, Tsur sent a letter to Vice President of Intel's Wireless Platform Research and Development group, Aicha Evans, reporting Jones' ageism and unfair criticism and reiterating his request for transfer out from under Jones. L.Dec., ¶ 18, Ex. 16. Out of fear of retaliation, Tsur asked that his transfer request be handled confidentially to avoid Jones' learning about it, but Evans instead reported his concerns to Human Resources ("HR"). Thronson Depo. (L.Dec., ¶ 10, Ex. 8) at 49:07-50:23. In response to Evans' report, Intel assigned HR Legal Investigator Deanna Thronson to address Tsur's concerns. *Id*. at 43:21-44:19.

### C. Intel HR Legal Conducts a Perfunctory "Investigation," Targeting Tsur with Unfair Scrutiny and Criticism in Retaliation for Protected Whistleblowing

Thronson conducted a cursory review of the age composition of Jones' working group and an interview of Jones, his "second level manager" and "a couple of others." Thronson Depo. at 43:21-44:04. According to Thronson, Jones did not admit to his inappropriate comments or to any unfairness in managing Tsur or other older workers. *Id*. at 45:01-45:07. Thronson advised Jones to revise his performance review to clarify his expectations of Tsur. *Id*. at 116:12-116:14. There is no indication that Jones ever did so.

On December 25, 2012, Tsur emailed Thronson with a list of witnesses to his quality of work, his ability to meet the demands of his job and his cooperative acuity, but there is no evidence

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

she followed up with any of these witnesses. L.Dec. ¶ 19, Ex. 17.[5] On January 27, 2013, Tsur again wrote Thronson, explaining that Jones' evaluation of his work mischaracterized the demands of his job and contradicted the experience of his coworkers. L.Dec., ¶ 20, Ex. 18. There is no evidence Thronson ever followed up with the witnesses Tsur identified in these communications; meanwhile, without adequate assessment of Jones' motives, during the time Tsur was actively complaining to HR about unfair treatment, Intel permitted Jones to ratchet up the pressure on Tsur as follows.

### D. After Learning of Tsur's Concerns, Jones Retaliates, Targeting Tsur with a Mid-year Review Downgrading His "Satisfactory" Rating to "Below Expectations"

In the process of investigating Tsur's complaint about Jones' conduct, Thronson made Jones aware Tsur had complained about his ageist comments.[6] In the succeeding months, Jones increased his scrutiny of Tsur's work performance, such that, while Jones had given Tsur a "Satisfactory" annual review in April of 2012, after learning he had reported the ageist comments, Jones singled Tsur out for a mid-year "Below Expectations" review, effective September 26, 2012. L.Dec., ¶ 21, Ex. 19.

A reasonable jury could draw the inference that Jones' "Below Expectations" rating was based on retaliatory animus, rather than actual performance concerns, because such reviews were normally given in July or soon after; and because such reviews were generally preceded by a written warning allowing for improvement, and none was given. Archuleta Depo. at 26:16-29:12; L.Dec., ¶ 36, Ex. 33. Indeed, assigning the low rating to Tsur served the dual purpose of punishing

---

[5] Thronson testified that Intel had lost the file from Tsur's Open Door Investigations (ODI) related to Mr. Jones' bigoted comments, this although she admitted her involvement stemmed from the potential for litigation based on Tsur's discrimination claims. Thronson Depo. at 37:08-40:20.

[6] While Thronson eventually concluded that no discrimination occurred, this is immaterial because the report and investigation gave Jones a motive to retaliate. There is ample evidence from which a reasonable jury could conclude that Jones had a discriminatory motive upon which he acted.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

Tsur's protected whistleblowing and meeting Intel's requirement for managers to give **some** subordinate a low rating regardless of whether each was performing at a satisfactory level.[7]

### E. Intel Attempts to Terminate Tsur Based on Jones' Shifting Demands and Biased Performance Evaluation

Less than three months after reducing Tsur's rating to "Below Expectations," Jones issued Tsur an extraordinary out of cycle "Improvement Required" review, forcing Tsur to choose between a buyout package (termination) and a "Corrective Action Plan" ("CAP"). L.Dec., ¶ 22, Ex. 20. This, during the same time period that Tsur's next level manager recommended Tsur for "any position requiring deep understanding and integration of complex hardware/software system behavior, interactions with other technical teams and high dedication to product delivery." *Id.*[8]

### F. Intel Forces Tsur to Choose Between a Humiliating "Corrective Action Plan" and Termination

Based on Jones' "Improvement Required" ratings, Intel presented Tsur with a choice between involuntary termination and accepting a "Corrective Action Plan" ("CAP") under which Jones would assign Tsur additional projects and have the discretion to fire Tsur at any time if Jones was not satisfied with his work. L.Decl., ¶ 23, Ex. 21. Not wanting to end his long career at Intel, Tsur chose the CAP. *Id.* at ¶ 24, Ex. 22. At the time, Intel's policy proscribed individuals under a CAP from transferring to a new manager, so in effect, Jones' "Improvement Required" rating made it impossible for Tsur to receive the relief he had initially requested. *Id.*

---

[7] Tsur's subsequent manager Roger Rees explained that managers were made to understand that if they did not eliminate someone by issuing a poor performance review, they themselves would be eliminated by someone higher up; and that by issuing a punitive mid-year review, they could avoid being required to do so at the following yearly Focal review. Rees Depo. at 67:07-67:24 & 136:21-137:16.

[8] While these events occurred prior to the statute of limitations period, they remain relevant evidence to prove Tsur's claims. *See Moore v. King Cty. Fire Prot. Dist.* No. 26, 2005 WL 2898065, at *7 (W.D. Wash. Oct. 31, 2005) ("In addition, while Mr. Lawrence's conduct from Mr. Moore from 1996 through 1999 is not actionable, it is admissible as evidence of retaliatory motive").

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

**G. Engineers Familiar with Tsur's Work Convince Intel to Transfer Tsur to Steven Nahas; Jones Rates Tsur "Improvement Required" in an Encrypted 2013 Review, Giving Him an SSL Rating of 5, Later Used to Justify Tsur's Termination**

Upon learning that Tsur's future at Intel was in jeopardy, and recognizing him as an asset to Intel, a number of fellow engineers in management positions came together to save his job. Archuleta Depo. at 18:11-19:06; *and* L.Decl., ¶ 25, Ex. 23. They readily found a team in need of Tsur's skills, and they prevailed upon Thronson to permit Tsur to make a transfer, despite the CAP. Thronson Depo. at 83:18-84:04. Under Nahas' supervision, Tsur completed the CAP and his performance status was returned to "Successful." L.Dec. at ¶ 26, Ex. 24.

Meanwhile, in spite of Intel's awareness of Jones' ageist comments, and Tsur's overwhelmingly good reviews from the rest of his fellow engineers and programmers, Intel permitted Jones to issue yet another unfair review of Tsur's performance. *Id*. at ¶ 27, Ex. 25. Again, Jones gave Tsur an "Improvement Required" rating in the 2013 Focal, assigning Tsur an SSL 5. *Id*. Jones then encrypted Tsur's review such that Tsur could not see the rationale for Jones' negative ratings, let alone challenge them qualitatively. *Id*. at ¶ 26, Ex. 24, p. 8. Tsur asked Nahas for advice as to whether and how best to set the record straight by challenging Jones' review. *Id*. Nahas advised Tsur to focus on his work instead of pursuing an appeal of Jones' review. *Id*.

**H. Nahas' Hands are Tied by Jones' Prior Unfair Review, Such That Nahas Rates Tsur SSL 4 in 2014, Testifying Later that Tsur Deserved SSL 3**

While Tsur performed well under Nahas, and subsequent manager, Roger Rees, Jones' discriminatory and retaliatory evaluations continued to adversely affect him. Both Nahas and Rees testified that due to Intel's policy against dramatically revising previous a year's Focal ratings, and a Focal "tool" (an HR-programmed spreadsheet setting limits on Focal and SSL ratings for employees), they felt constrained by Jones's prior ratings to assign poor SSL and Focal ratings to Tsur, unreflective of his high performance. Rees Depo. at 151:01-153.22; Nahas Depo. at 38:12-

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

39:06. Nahas testified that at the 2014 Focal he rated Tsur "Successful" when he should have received "Exceeds Expectations," because giving an employee who was so recently rated "Improvement Required" an "Exceeds Expectations" would raise HR concerns. Nahas Depo. at 38:12-39:06. He felt constrained to give Tsur a 2013 SSL rating of 4 for similar reasons, even though Tsur better met the definition of an SSL 3 than an SSL 4. Nahas Depo. at 133:24-138:06.

On July 25, 2020, Mr. Nahas signed an affidavit, attesting in pertinent part:

- "[C]oloring the SSL4 stock grant that Mr. Tsur was given subsequent to his 2013 review as an indicator of bad performance [is] outrageous. The SSL4 grant was simply given to Mr. Tsur (as well as many other senior employees) as a standard component of the overall compensation package. The Stock Share Level program (SSL) was constituted as an **employee retaining device**.

- "During my tenure at Intel Corp. manager's preference was always to distribute the stock units allocated for the department use during review time to compensate lower grade employees with larger amount of reserve stock shares, in lieu of a larger salary cash increase. Since Mr. Tsur base salary was high, relative to his peers, granting him smaller amount of stock units via SSL4 served as an **equalization mechanism**.

- "[Mr. Tsur] was known at Intel Corp. to be a free thinker, to achieve work results with only minimal supervision, and in fact, identify and decide for our team where the 'best bang for the buck' must be directed. Mr. Tsur was self-motivated and immediately inserted himself to provide necessary expertise, mentoring, and novel ideas to improve our team's operations.

- "In my opinion Mr. Tsur applied his expertise to the greater benefit of Intel Corp. and my recommendation to promote Mr. Tsur to a higher level of responsibility under Mr. Roger Reese was based on Mr. Tsur's record of accomplishments while he served within my department.

- "During my infrequent meetings with Mr. Bruce Jones, he came off as an abrasive bully. Mr. Jones seemed to be more driven by bad feelings than by his duties to serve the needs of the company. I can not fathom Mr. Jones motivations to prevent Mr. Tsur from transferring into a department that desperately needed his expertise. What kind of positive purpose could possibly be served by blocking Mr. Tsur the opportunity to produce significant outcomes for the benefit of Intel Corp.?

- "Mr. Tsur completed the CAP program very successfully (as we expected) and his 'successful' rating was restored, as Intel Corp. HR rules required. It was almost comical to have to put Mr. Tsur through that superfluous wringer. To his credit, Mr. Tsur handled this awkward situation with true grace and focused his attention on productive outcomes to the benefit of our department."

Nahas Aff., L.Dec., ¶ 26, Ex. 24 (*emphases in original*).

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

**I. Roger Rees' Hands are Tied by Jones' Unfair Review and Intel's Focal Guidelines, Such That Rees Rates Tsur SSL 5 in 2015, Testifying Later That Tsur Deserved SSL 3**

Rees testified that Tsur also deserved an SSL of 3 in his 2015 Focal review, as opposed to the SSL 5 that Rees felt required to give him based on Intel's Focal Guidelines. Rees Depo. at 84:13-86:24. Rees also testified that SSL ratings were more dictated by the Focal Guidelines than the manager's subjective evaluation of an employee's performance. *Id.* On August 21, 2020, Rees signed an affidavit explaining:

- "[B]eing [rated] as a successful employee does not represent a person that is underperforming.

- "[I]t is true that I informed [Tsur] of my decision [to award Tsur SSL 5 in 2015] based on the fact that I made this assignment for the purpose of trying to reach what I felt was better equity within my team of approximately 50 engineers.

- "Intel's 'guideline' of close to 5% SSL5 [for grade 7 and above workers] in fact is implemented by senior managers as a REQUIREMENT. I always felt this was Draconian, given that Intel prides itself on hiring the best and brightest. Had I been given the opportunity to do what is right, rather than meet an artificial target, Tsur would have been granted SSL3. But as stated in [Intel's Focal Guidelines], 'Stock budgets can't be exceeded and must be achieved at the business group level.'

- "I would have tried to [re]hire Mr. Tsur as a "green badge" contractor, but the terms of this RIF prevented Mr. Tsur from ever return[ing] to Intel, either as an employee or a contractor."

Rees Aff., L.Dec., ¶ 27, Ex. 25.

**J. Intel's Label, "Performance-Based Mandatory Buyout" for its 2015 RIF Adds Insult to Injury, as SSL Ratings Relied Upon Had Little, if Anything, to do With Performance Under Intel's Inflexible Focal Guidelines Paired with Widespread "Peanut-Buttering"**

Intel's criteria for selecting employees for the 2015 RIF were based on employees' Focal performance ratings and their SSL ratings between 2012 and 2015, selecting employees for termination who had:

(1) A 2015 rating of Improvement Required; _**or**_

(2) A 2015 SSL rating of 4 or 5 _**and**_, in the preceding three years (2012-2014),

    a. A Focal rating of Improvement Required or Below Expectations; _**or**_

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

> b. An SSL rating of 4 or 5.

L.Dec., ¶ 28, Ex. 26.

While the first criterion, an employee's Focal rating of "Improvement Required" for 2015, may have been performance-based, SSL ratings were far from it. Former Intel manager, Glenn Begis, who worked at Intel for 30 years, including as a "Rank Manager, responsible for overseeing the Focal Process for various Rank Groups," testified that Intel used its "focal tool" programmed spreadsheet to make its Focal guidelines enforce a bell curve distribution for Focal performance ratings with the majority forming the peak of the curve being ranked "Successful." Begis Aff., L.Dec., ¶ 29, Ex. 27, p. 1; Begis Depo. at 37:23-38:09.

Meanwhile, both Nahas and Begis testified that it was understood that SSL ratings were not to be used to retrospectively evaluate performance, but rather to incentivize retention for 'up-and-coming' talent. Nahas Depo. at 126:23-25; Begis Depo. at 41:05-42:01. The SSL guidelines speak for themselves, directing that "[s]tock is to be granted to **attract, retain and motivate** the employees necessary **to enhance Intel's longer-term growth and profitability**," and providing the following "SSL Definitions:"

- **SSL1** "is recommended for employees whose contributions and growth far exceed and outpace their peers. They perform at an expert level and display critical skills. **Level 1 stock is appropriate for employees who are expected to be leaders and key contributors**."

- **SSL2** "is recommended for employees whose contributions and growth are ahead of their peers. They perform above average and are building critical skills. **Level 2 stock is appropriate for employees who are showing the potential to be key contributors**."

- **SSL3** "is recommended for employees whose contributions and growth are consistent with their peers. They perform at an average level and display standard skills. **Level 3 stock is appropriate for employees who are meeting expectations and are expected to continue meeting expectations**."

- **SSL4** "is recommended for employees whose contributions and growth are below the average of their peers. They perform at a modest to low level and display developing or

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

limited skills. **Level 4 stock is appropriate for employees who may take more time to grow or are new to their job**."

- **SSL5** is no stock, and "is recommended for employees whose contributions and growth fall well below their peers. They perform at a low level and display very limited skills. **Level 5 stock is appropriate for employees who need significant performance management to meet job expectations.**"

L.Decl., ¶ 30, Ex. 28 (*emphases added*).

The emboldened passages show that SSL awards were intended by Intel to be allocated based at least in part on the company's **future** expectations for the employee. Line managers correctly understood that the company expected better SSL ratings to be directed towards employees they viewed as the future of the company and wanted to retain. Older employees, closer to retirement as a rule, were not perceived to be 'up-and-coming' talent and would not be the future of the company.

The Focal Guidelines specifically directed managers to apply different SSL rating ratios to salaried employees depending on their pay grade, with 95% of those at Grade 6 and below receiving SSL 3 and only 5% receiving SSL 5. *Id.*[9] Meanwhile, employees at Grade 7 and above were to receive SSL 4 and 5 at a rate of 10% and 5%, respectively, such that all other factors being equal, these higher pay grade employees were 3-times more likely to be included in the 2015 RIF than those receiving Grade 6 and below. *Id.* Nahas testified that in his experience workers at Grades 6 and below were generally younger than those of Grades 7 and above, consistent with workers advancing to higher grades as they accumulated experience, influence and education with age. Nahas Depo. at 149:19-150:11.

---

[9] The Focal Guidelines cited here reference "non-exempt" employees, which Nahas explained, referred to employees who were not exempt from overtime pay eligibility by virtue of being paid hourly as opposed to "exempt" workers who were paid a salary. Nahas Depo. at 147:23-148:07.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

Meanwhile, so long as they stayed within the Focal Guidelines regarding proportional requirements based on pay grade, managers at Intel could assign SSL outside the SSL definitions without review. Indeed, Intel's FRCP 30(b)(6) designee, along with Begis, explained that Intel managers used the term "peanut-buttering" to describe the regular practice of Intel management redistributing, or 'spreading,' limited quotas of compensation in the form bonuses, RSUs and pay raises between their workers to equalize compensation in spite of Intel's qualitative definitions of respective SSL ratings. *See*, e.g., Begis Depo. at 56:18-60:04; Sanchez Depo. at 205:17-206:18.

"Peanut-buttering" resulted poor SSL ratings going to older workers, unreflective of their performance, in that managers understood that stock awards were less advantageous to older employees who could be incentivized with salary increases and cash bonuses. According to Begis, this was well-understood in management circles:

> I can attest that during my employment at Intel, multiple times, in pre-focal discussions with managers and those I managed, and in Focal Rank Group sessions where compensation and SSLs were dispensed for employees of those managed by the Focal Rank Group members that I participated in, and sometimes managed, preferences for SSL vs salary increases were discussed, and trade-offs made, with the discussions and outcomes comprehending the diminished value of SSLs to older employees.

Begis Aff., L.Decl., ¶ 29, Ex. 27, p. 4.

**K. Overwhelming Statistical Evidence Demonstrates that the RIF Targeted Older Workers for Termination**

Intel has been tight-lipped about the process of developing the 2015 RIF selection criteria, but from what little it disclosed in discovery it appears that in planning the 2015 RIF, Intel experimented with using only the first criterion, a 2015 Focal performance rating of "Improvement Required," to identify a subset of low performers. Sanchez Depo. at 163:01-163:24. This, method however, identified only 92 terminations, not nearly enough terminations to meet the company's financial target. *Id.*; Killingsworth, L.Decl., ¶ 2, Ex. 1, at ¶ 32. Intel also considered doing a skills-

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

based RIF, engaging line-level mangers to reduce its ranks, while keeping individuals with skills necessary to keep projects alive based on managers' feedback. Sanchez Depo. at 161:23-162:20. Allegedly, Intel decided this approach, which it had employed in prior RIFs, would somehow take too long. *Id.* Intel ultimately settled on the criteria laid out above, but it is unclear what, if any due diligence was undertaken to ensure that using SSL ratings as a criterion would not select a disproportionately older cohort. Ultimately, Intel's criteria qualified 1,385 employees for termination because of their 2015 SSL ratings combined with some earlier criteria. L.Decl., ¶ 2, Ex. 1, at ¶ 32.[10]

Tsur, having received a "Successful" rating from Rees in 2015, did not meet the first criterion, so the second set of criteria were applied to terminate him. L.Dec., Para 31., Ex. 29. However, a reasonable jury may find that Tsur's termination had nothing to do with performance because Tsur was selected for the 2015 RIF because of

- His 2015 SSL rating of 5 – which Rees testified should have been a 3 under the Focal Guidelines definition for SSL 3;

- Combined with Tsur's earlier negative Focal and SSL ratings from Jones – Tsur's harasser, who was aware of his protected complaints and engaged in other adverse employment actions providing evidence of bias; and

- Nahas' 2014 SSL rating of 4 – which Nahas testified should have been a 3 under the Focal Guidelines definition for SSL 3.

*See supra.*

EEOC guidance calls for comprehensive review of criteria for mass layoffs such as the 2015 RIF to ensure that selections are made based on "reasonable factors other than age." 29 C.F.R.

---

[10] Intel's FRCP 30(b)(6) designee explained that some of those who received a 2015 SSL 5 were not terminated because they were new hires or were employees of a company recently acquired by Intel.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

§ 1625.7(e).[11] Intel argues that the 2015 RIF was based on reasonable factors other than age (Dkt. 61 at 33), however it failed to allege as much in its Answer and has failed to produce **any** evidence that it complied with this regulation in developing the 2015 RIF criteria. L.Decl., ¶ 32. There is no indication Intel made any attempt to determine whether the SSL ratings were used by managers assigning them to reliably rate performance, long-term potential or really anything at all. *Id.*

Tsur's expert statistician, Dr. Mark Killingsworth, opines that the percentage chance of being terminated in Intel's RIF sharply increased with age, and that the probability of this correlation occurring merely by chance was less than one hundredth of one percent:

```
          Table 4:  Termination rates by age group
               for PMB reduction-in-force of 2015


                              total          terminated
                                          _____
age group                     number      number   % of total

age 0-39                      19672        222        1.13%

age 40-49                     16762        364        2.17

age 50-59                     11301        439        3.88

age 60 or older                2078        130        6.26

total                         49813       1155        2.32

Statistical significance test:
  Chi-squared:                          389.2182
  "chance probability":                 < 0.0001
```

Killingsworth Report, L.Decl., ¶ 2, Ex. 1, at Table 4.

---

[11] (2) Considerations that are relevant to whether a practice is based on a reasonable factor other than age include, **but are not limited to**: (i) The extent to which the factor is related to the employer's stated business purpose; (ii) The extent to which the employer defined the factor accurately and applied the factor fairly and accurately, including the extent to which managers and supervisors were given guidance or training about how to apply the factor and avoid discrimination; (iii) The extent to which the employer limited supervisors' discretion to assess employees subjectively, particularly where the criteria that the supervisors were asked to evaluate are known to be subject to negative age-based stereotypes; (iv) The extent to which the employer assessed the adverse impact of its employment practice on older workers; and (v) The degree of the harm to individuals within the protected age group, in terms of both the extent of injury and the numbers of persons adversely affected, and the extent to which the employer took steps to reduce the harm, in light of the burden of undertaking such steps. 29 C.F.R. § 1625.7(e) (*emphasis added*)

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

Indeed, the statistical evidence further shows that on average, employees qualified for termination solely due to having a 2015 Focal rating of Improvement Required were 2.3362 years younger than employees such as Tsur who had satisfactory or better 2015 Focal ratings but presented 2015 SSL ratings of 4 and 5 combined with other older negative Focal or SSL ratings. Killingsworth Report, L.Decl., ¶ 2, Ex. 1, at ¶ 32.[12]

## L. Intel Blackballs Tsur Over His Manager's Attempts to Retain and Rehire Him

On June 15, 2015, Intel gave Tsur written notice that July 15, 2015 would be his last day of work. L.Dec., ¶ 28, Ex. 26. In the weeks leading up to Tsur's termination, Rees inquired as to whether Tsur could be retained, but the answer was no. L.Dec., ¶ 33, Ex. 30. On November 12, 2015, Tsur requested clarification as to his eligibility for rehire, whether as a direct employee, an independent contractor or as the employee of a third-party contractor. L.Dec., ¶ 34, Ex. 31. Intel responded that he was not eligible for rehire. *Id.*

However, a number of younger employees, also terminated in the 2015 RIF, who are not known to be whistleblowers were in fact allowed to return to Intel. L.Dec., ¶ 35, Ex. 32. This supports the inference that Tsur's blackballing had more to do with his protected status, whether based on age or whistleblower status, than it had to do with his performance.[13] Additionally, Rees attests that based on Intel's Employee Handbook and his experience and opinions as a manager, Tsur's ODI request should have been honored, and would have resulted in his 2015 SSL 5 being corrected given that Rees' assigning Tsur that rating was motivated by avoiding "overspending allotted" RSU, and was given without considering the SSL 5 definition. L.Dec., ¶ 37, Ex. 34.

---

[12] This age difference is the equivalent of 2.05 standard deviations with a 0.0428 probability of occurring purely by chance, and is therefore statistically significant. ratings. Killingsworth Report, L.Decl., ¶ 2, Ex. 1, at ¶32.
[13] Tsur has diligently pursued mitigation through Intel's internal grievance machinery and a resolution short of trial from the first days after Jones targeted him with unfair scrutiny in his 2012 Focal review. Intel's refusal to acknowledge that Jones' actions reflecting his discriminatory motives for issuing poor performance reviews, relied upon in selecting Tsur for termination, remain relevant such that these spurious arguments should be rejected.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

# III. <u>SUMMARY JUDGMENT SHOULD BE DENIED IN FULL</u>

## A. Legal Standard

The Court should not grant a motion for summary judgment unless Tsur's evidence is so weak that the Court would otherwise grant a motion for a directed verdict against Tsur at the close of his case at trial:

> The Court has said that summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party. And we have noted that the "genuine issue" summary judgment standard is "very close" to the "reasonable jury" directed verdict standard: The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (*internal quotations omitted*).

Cases that raise issues as to knowledge, intent, and motive require a full trial with the opportunity to observe demeanor of witnesses, and to conduct cross-examination in open court; in such cases summary judgment cannot be granted. *Schoenbaum v. Firstbrook*, 405 F.2d 215 (2d Cir. 1968), *cert. denied*, 395 U.S. 906 (1969). This is because trial "might disclose a picture substantially different from that given by affidavits." *United States v. Perry*, 431 F.2d 1020 (9th Cir. 1970).

At the summary judgment stage, a district court may not make credibility determinations or weigh conflicting evidence. *Bator v. Hawaii*, 39 F.3d 1021 (9th Cir. 1994). Evidence of the non-moving party, Tsur, is to be believed and all justifiable inferences are to be drawn in his favor. *Mallinckrodt Inc. v. Masimo Corp.*, 293 F. Supp. 2d 1102 (C.D. Cal. 2003). Tsur's burden is merely "to produce enough evidence to create a genuine issue of material fact." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). In an employment

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

discrimination analysis, a plaintiff's burden to raise a triable issue of pretext is "hardly an onerous one." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007).

Conversely, Intel carries the burden of proof and must show that no genuine issue of material fact exists, regardless of the plaintiff's carrying the burden of proof at trial. *Doff v. Brunswick Corp.*, 372 F.2d 801 (9th Cir. 1966), *cert. denied*, 389 U.S. 820 (1967). Intel further has the burden of conclusively showing by factual evidence that facts relied upon by Tsur are "not susceptible of interpretation which he seeks to give them." *Toensing v. Brown*, 374 F. Supp. 191, (N.D. Cal. 1974), *aff'd*, 528 F.2d 69 (9th Cir. 1975). Intel utterly fails to meet its burden.

### B. All Facts and Reasonable Inferences Must be Construed in Favor of Tsur

Intel ignores the essential standard of review – that all genuine disputes of material fact and reasonable inferences must be construed in favor of Tsur. Intel wrongly seeks to construe material disputed facts and draw inferences in its favor, summarized as follows:

- <u>Intel contention</u>: Tsur demonstrated willingness and ability to accept coaching designed to help him to improve his performance.

  <u>Facts and reasonable inferences that must be accepted for summary judgment</u>: Jones admits that Tsur did improve his interpersonal interactions on the team. Jones' later criticism about how Tsur prioritized his work reflect only Jones' frustration that others above him were taking Tsur's time with work that was more mission-critical to the company than the work that Jones oversaw.

- <u>Intel contention</u>: Intel's RIF was "performance-based," and its criteria were age-neutral.

  <u>Facts and reasonable inferences that must be accepted for summary judgment</u>: Tsur has developed testimony from managers that confirm that that the SSL ratings that caused Tsur's termination were at best loosely-related to performance, that they did not reflect his performance and that they were better understood to incentivize retention of younger employees to the detriment of older employees like Tsur, and that Tsur's managers did indeed reduce his SSL ratings because of his age. Moreover, Dr. Killingsworth's analysis reveals that the RIF dramatically impacted older works, finding that the probability that age correlation in the RIF was the product of chance was much less than *one in ten thousand*. Intel can provide no excuse for its failure to perform any analysis of this gross statistical disparity in carrying out the RIF.

- <u>Intel contention</u>: Tsur's inclusion in the RIF was unrelated to discrimination by Jones.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

Facts and reasonable inferences that must be accepted for summary judgment: Jones' discriminatory reviews caused Tsur's selection for the RIF three years later. First, Tsur's subsequent managers felt constrained by Jones' Focal and SSL ratings in awarding Tsur focal and SSL ratings in subsequent years. Second, Jones' rating Tsur "Improvement Required" and SSL 5 in 2013 rendered him eligible for the RIF in combination with his 2015 SSL 5 rating. In addition to his bigoted comments (which he did not deny having made at his deposition) Jones' discriminatory animus is evidenced by his violation of Intel's own policies by failing to provide written warnings prior to disciplining Tsur and his holding Tsur accountable to shifting and contradictory criteria, all after learning that Tsur had complained about his ageist comments and conduct to upper management.

- Intel contention: SSL ratings were assigned based on merit, not age.

  Facts and reasonable inferences that must be accepted for summary judgment: The SSL guidelines facially relate to an employee's expected future contribution, and for that reason alone, the declaration of Intel's Rule 30(b)(6) witness, David Sanchez, must be disregarded to the extent that it downplays this. Second, Plaintiff has the testimony of managers explaining how age played into how SSL ratings were assigned.

- Intel contention: Jones had no input into or influence on Nahas' and Rees' ratings of Tsur.

  Facts and reasonable inferences that must be accepted for summary judgment: While Jones was not consulted directly by Rees and Nahas, both testified that they felt constrained by Jones' ratings of Tsur, and would have otherwise given him higher ratings. Intel also relied on Jones' 2013 Focal ratings to select Tsur for the 2015 RIF.

- Intel contention: A portion of Jones' discriminatory statements to Tsur likely did not happen, because Tsur did not report all of them, either in his letter to Intel Vice President, Aicha Evans, or to Intel HR.

  Facts and reasonable inferences that must be accepted for summary judgment: This is an impermissible credibility determination against the non-moving party. A reasonable jury may find that Tsur was "testing the waters" with his partial report, and did not report Jones's remaining statements after learning his complaint was dismissed, prompting punitive reviews.

- Intel contention: Jones did not feel insecure about managing someone older than him.

  Facts and reasonable inferences that must be accepted for summary judgment: Not only must the Court believe Tsur's testimony that Jones stated, "I never managed anyone 10 years older than me," but it must accept all inferences that a reasonable jury could draw from that statement. This statement (along with Jones's other ageist statements) can be read as showing that Jones felt insecure about exercising authority over someone older than him.

- Intel contention: Jones's comment, "I never managed anyone 10 years older than me," related

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

to the fact that Tsur had more experience than Jones rather than his age.[14]

Facts and reasonable inferences that must be accepted for summary judgment: The Court must assume that Jones meant what he said without accepting Intel's unsupported contrary inference as to how he may have intended for his statement to land.

- Intel contention: Tsur felt that he was "'above' the work that was given to him and refused to do the tasks that Jones needed to have completed." (Dkt. 61, p.14).

Facts and reasonable inferences that must be accepted for summary judgment: The paragraphs of Jones's declaration cited by Intel for this proposition do not contain the word "above," despite Intel having put this in quotation marks. At best, this is an inference in favor of the moving party—Intel is proposing that the Court infer from the dispute between Jones and Tsur about Tsur's work priorities that Tsur felt that the work Jones was assigning was below him. Even if this were supported by record evidence (and it is not) this would be improper on summary judgment. Instead, a reasonable jury could accept Tsur's explanation that he was not able to complete Jones's work because others above Jones had assigned him more important projects.

- Intel contention: Thronson believed that Jones's criticisms were legitimate and therefore the Court should also.

Facts and reasonable inferences that must be accepted for summary judgment: Tsur disputes Jones's criticisms and has provided record evidence that they were invalid and therefore evidence of pretext. The fact that Thronson investigated them, or that she was an "experienced HR Legal Investigator" does not change this.

**C. The Facts of the Case Must be Construed in Context Rather Than as an Unrelated Collection of Isolated Events**

Intel's Brief improperly isolates pieces of evidence that each favor Tsur, ignoring the relationships between the events revealing Intel's unlawful conduct. Meanwhile, Intel takes pains to contrive a narrative that favors its defense. This turns the summary judgment standard on its head. As the Third and Eleventh Circuits have explained:

> A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario. As the Court of Appeals for the Eleventh Circuit noted, the factfinder in this type of case should not "necessarily examine each alleged incident of harassment in a vacuum. What may appear to be a legitimate justification for a single incident of alleged harassment may look

---

[14] In its Brief, Intel twists Intel HR Legal Investigator, Deanna Thronson's testimony to make it sound as though Jones gave an explanation rationalizing that his comment related to Tsur's experience rather than his age. (Dkt. 61, p.13-14). A review of the testimony cited by Intel shows, however, that this was merely a conclusion by Thronson, rather than a statement by Jones. Jones denies recollection of having made any form of the statement.

MOTION FOR SUMMARY JUDGMENT

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

pretextual when viewed in the context of several other related incidents." The factfinder must not only look to the frequency of the incidents but to their gravity as well.

*Andrews v. Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990) (*citing Vance v. Southern Bell Tel. and Tel. Co.*, 863 F.2d 1503, 1510 (11th Cir. 1989) (*internal citations omitted*).

In *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003), the Ninth Circuit reversed the district court's entry of summary judgment in favor of the employer, holding that it "erred by examining each piece of Stegall's evidence in isolation, and failing to consider the timing of Stegall's termination in its pretext analysis." Conversely, individual pieces of evidence that are insufficient standing alone to prove pretext can be probative of discrimination when viewed in context with other evidence. *Id.*, at 1070. Similarly, in *Black v. Grant County Public Utility District*, 820 F. App'x 547, 552 (9th Cir. 2020), the Ninth Circuit found that the district court erred in entering summary judgment for an employer where it decided that an eight-month gap between the plaintiff's protected activity and termination was too long, and then proceeded to evaluate the plaintiff's "purportedly 'lone remaining allegation' in isolation." Instead, the Court held, a plaintiff's evidence must be "viewed holistically" to support inferences of causation. *Id.* The Court's closing reasoning has close parallels here:

> We do not question an employer's right to terminate an employee for wrongdoing, or to use the evidence that emerges during discovery in its employment decisions. But the question here is whether the PUD retaliatorily pursued discharge of an employee exercising his rights under discrimination law, even if the discharge is supported by an otherwise-legitimate rationale. **Faced with two competing narratives, each supported by evidence, we conclude that summary judgment was not appropriate** on Black's retaliation claims.

> *Id.* (emphasis added).

### D. Tsur Does Not "Admit" That He Has No Evidence

Intel attempts to exploit various purported "admissions" by Tsur that he has no evidence of certain facts, including that certain individuals were aware of his protected activity. These statements by Tsur, a non-lawyer who does not have a high-level understanding of the relevant

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

legal standards are flatly contradicted by other record evidence and must be disregarded for the purpose of summary judgment. *See, e.g., Reece v. Pocatello/Chubbuck Sch. Dist. No. 25,* 713 F. Supp. 2d 1222, 1232 n.6 (D. Idaho 2010) (rejecting the defendant's contention that he was unaware of what a decision-maker was thinking was an admission of the absence of pretext: "the Court does not construe this as an admission… Reece is not a lawyer and he may not have a complete understanding of the law regarding pretext").

Instead, Tsur is permitted to develop evidence through discovery to support inferences regardless of his prior "admission" regarding such evidence, which is not "binding." *Alexander v. Eye Health Nw., P.C.*, No. CV05-1632-HU, 2006 U.S. Dist. LEXIS 72282, at *16-17 (D. Or. Oct. 3, 2006); *see also Seigler v. Wal-Mart Stores Tex.,* 30 F.4th 472, 478 (5th Cir. 2022) (holding that "a non-lawyer deponent is not expected to understand the legal significance of the terms 'personal knowledge' and 'evidence'").

Tsur's deposition was also the very first deposition taken in the case, and Intel delayed significant portions of its document production (including the data necessary to conduct a statistical analysis of the RIF) until the end of the discovery period. This left Tsur and his counsel no meaningful opportunity to review these materials before his deposition. Following Tsur's deposition, he developed further evidence in depositions (including the depositions of the four mid-level managers who admitted to using SSL ratings in an age-biased manner) to support his claims, as suggested by *Alexander*. At *most,* this creates an issue of credibility for the jury. The Court should see Intel's over-reliance on these "admissions" by Tsur for what they are—a naked attempt to justify ignoring facts that favor Tsur.

### E. Jones' Ageist, Xenophobic and Anti-Semitic Comments Are Probative Evidence of Jones' Discriminatory Animus

Intel misapprehends the stray remarks doctrine, attempting to stretch it into an exclusionary

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

rule that prevents a plaintiff from using any biased statement in the workplace as evidence unless it is made by the decisionmaker and pertains directly to the decision at issue. This is not the law. First, the stray remarks doctrine applies when the plaintiff attempts to use a biased remark as direct evidence of discrimination, which would eliminate the need for the plaintiff to prove his case under the *McDonnell Douglas* burden-shifting framework. *See Debarros v. Wal-Mart Stores, Inc*., No. 6:11-cv-06116-AA, 2013 U.S. Dist. LEXIS 87326, at \*14 (D. Or. June 19, 2013) (Aiken, J.) ("The statement may, however, be considered as circumstantial evidence. As such, the discussion now turns to whether plaintiff is able to establish her prima facie case under *McDonnell Douglas*"). The stray remarks doctrine is not applicable where (as here) the Plaintiff seeks to prove his claim in part through circumstantial evidence, as a reasonable jury could believe that such comments suggest a bias in some manner when combined with additional evidence. *Id.*; *Hartung v. Cae Newnes, Inc*., 229 F. Supp. 2d 1093, 1100 (D. Or. 2002) ("The comment was a mere stray remark incapable of creating an inference of discrimination <u>without additional proof</u>…" (*emphasis added*)).

In *Hartung*, Judge Brown of this Court provided a careful analysis of the stray remarks doctrine. First, a biased comment is a stray remark only if it is an "isolated comment with no connection to the employment decision or the Plaintiff." *Id.* Jones, however, was connected to Tsur as his supervisor and made decisions about Tsur's Focal and SSL ratings close in time to his discriminatory comments that eventually caused Tsur to be included in the 2015 RIF. Jones also made a series of comments over a period of time in a manner that suggested biases on the basis of Tsur's age, ethnicity and Israeli national origin, not a single isolated comment that can be dismissed as bad humor. In *Hartung*, the court explained that each statement must be "viewed together and in conjunction with the other" statements. *Id.*, at 1101. While "some of the alleged

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

comments, if viewed in a vacuum, might be perceived as merely descriptive in nature as opposed to derogatory," but "when read together, show an age-related prejudice." *Id.*[15]

### F. Tsur Can Show Age-Based Bias on the Part of Intel Irrespective of Jones

Tsur has developed admissions and evidence in the discovery record sufficient to independently prove his age discrimination claims, regardless of Jones and his biases. Tsur would not have been selected for the RIF if Rees had not given him an SSL rating of 5 in 2015. Rees admitted that Tsur's SSL rating should have been a 3, but he instead gave Tsur a 5 because the guidelines, which required him to give better SSL ratings to lower pay grade workers, were the most important factor in assigning SSL ratings. Rees Depo. at 84:13-17. Meanwhile, Rees admitted that older workers were more likely to have a higher pay grade. *Id*. at 79:05-22. While Rees' discrimination was not malicious and he did not know that the SSL rating would cause Tsur to be terminated, it is an adverse decision he admits making based on Tsur's age.

### G. Intel Exposed Itself to Cat's Paw Liability by Relying on Jones' Evaluations of Tsur to Include Him in the 2015 Reduction in Force

Persisting in denying the significance of Tsur's allegations against Jones, Intel recites simplistic arguments that Tsur's claims are time-barred, ignoring the Court's ruling to the contrary in denying Intel's Motion to Dismiss in this matter:

> Here, Tsur adequately alleges that Jones's alleged retaliatory animus was a proximate cause of Intel's decision to select Tsur for the layoff because Tsur alleges that Intel chose Tsur for the layoff in part because Tsur had received low performance reviews from Jones. Tsur also alleges that age discrimination, national origin discrimination,

---

[15] Intel attempts to dismiss Jones's comments using caselaw that is easily distinguishable. In *Nidds v. Schindler Elevator Corp*., 113 F.3d 912, 918 (9th Cir. 1996), the plaintiff's only evidence of pretext was a few statements by the plaintiff's manager referring to him as an "old dog." This was found insufficient not because it was not probative evidence, but because it was insufficient without the presence of other evidence to form a pattern. *Id.* In *White v. Bolden*, No. 2:15-cv-03377-SVW-AJW, 2017 U.S. Dist. LEXIS 220286, at *8 (C.D. Cal. Oct. 18, 2017), the Plaintiff's only evidence of pretext was a series of vague comments that the organization was looking to "attract and retain younger employees." This, without more, was insufficient. *Id.* In *Noga v. Costco Wholesale Corp*., 583 F. Supp. 2d 1245, 1257 (D. Or. 2008), the alleged statement was by a coworker, not a supervisor, and unrelated to the Plaintiff's termination. While the court found that the statement was not direct evidence, it was still considered by the Court as circumstantial evidence. *Id.* The court ultimately granted summary judgment finding that the cumulative pattern of circumstantial evidence presented by the plaintiff was insufficient. *Id.*

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

and retaliatory animus motivated those low performance reviews. Even if other factors may also have caused Tsur's eligibility for the layoff, Tsur has sufficiently alleged that Jones's retaliatory animus was at least one proximate cause.

*See* Dkt. 22, at p.25-26.

The "Cat's Paw" Doctrine supports employment discrimination claims alleging that an agent of the employer, not directly involved in the decision-making process at issue, may be imputed to the employer, if the biased individual is alleged to have "influenced," "affected," or been "involved in" the decision-making process. *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007). A claim may proceed even if the plaintiff has not attributed any discriminatory animus to the ultimate decisionmaker's election to proceed with the adverse employment action. *Id.*[16] Even though Jones may not have been directly "involved" in developing the selection criteria used to include Tsur in the 2015 RIF, his evaluations of Tsur caused him to be included in the RIF and certainly "influenced" and "affected" his termination. Intel relies on gross distortions of the record to argue otherwise.

With the help of long-time colleagues who supported him, Tsur was able to find a new role in Intel and escape toxic conditions under Jones. But Jones's shadow hung over him and eventually caused him to be terminated in the RIF. It is undisputed Intel fired Tsur in 2015 because he triggered Intel's RIF criteria in two different ways that are directly attributable to Jones' discriminatory conduct: 1) Jones's 2013 rating of "Improvement Required" and SSL rating of 5 rendered Tsur eligible for the RIF in combination with Rees's 2015 SSL rating of 5; and 2) Nahas and Rees awarded Tsur SSL ratings of 4 and 5 respectively because they felt constrained by Jones'

---

[16] The "Cat's Paw" Doctrine applies to discrimination claims subject to "but for" causation under the Age Discrimination in Employment Act ("ADEA"), as well as claims subject to the "substantial factor" test, applied to other federal discrimination claims. *See Daniels v. Pioneer Central School District*, 2012 WL 1391922 (W.D.N.Y. April 20, 2012). The "cat's paw" doctrine applies with equal effect to Tsur's Oregon law claims. *Ossana v. Nike*, 365, Or. 196, 210 (2019).

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

earlier ratings. This was because Intel did not generally allow employees who had a poor SSL or Focal ratings to receive favorable ratings in successive years.

### H. Plaintiff's Claim for Age-Based Disparate Treatment is Supported by Evidence of Age-Related Bias in His SSL Ratings and Jones' Discriminatory Animus

In order to make a *prima facie* disparate treatment claim, Tsur must prove that (1) he was a member of a protected class; (2) he was qualified for the job; (3) he was the victim of an adverse employment action; and (4) was discharged under circumstances giving rise to an inference of discrimination. *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012). When Tsur has proven his prima facie case, the burden shifts to Intel to prove a legitimate, non-discriminatory reason for firing him. *Wallis v. J.R. Simplot Co*., 26 F.3d 885, 889 (9th Cir.1994). The burden then shifts back to Tsur to produce evidence discrediting Intel's reason. *Godwin v. Hunt Wesson, Inc*., 150 F.3d 1217, 1220-21 (9th Cir. 1998).[17]

The first *prima facie* element is satisfied by Tsur's age at the time of termination, 62. The second element, regarding Tsur's qualifications, is satisfied by the fact that he was hired by Intel, was selected by management for demanding projects, and was retained by Intel on an ongoing basis over the course of multiple decades. As to the third element, it is undisputed that Intel terminated Tsur in the 2015 RIF. Finally to satisfy the fourth element, the statistical evidence produced by Dr. Killingsworth[18] along with the testimony of Tsur's managers suggesting the age-related nature of SSL ratings, gives rise to an inference that Intel's selection of Tsur for termination

---

[17] Oregon courts have long held that "[t]he standard for establishing a prima facie case of discrimination under Oregon law is identical to that used in federal law." *Skou v. Pacific Intern. Pipe Enterprises, Inc.*, 995 F.Supp. 1142 (D. Or. 1998) (*citing Henderson v. Jantzen, Inc*., 79 Or.App. 654, 657, 719 P.2d 1322 (Or. App. 1986) (expressly adopting *McDonnell Douglas* for analysis under ORS Ch. 659A (then Ch. 659)).

[18] Tsur may prove an age-based disparate treatment claim by showing statistical evidence of a pattern of discrimination, inexplicable by factors other than age. *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1423 (9th Cir. 1990); *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005); *Diaz v. AT&T*, 752 F2d 1356, 1363 (9th Cir. 1985). Therefore, in combination with the statistical evidence of disparate treatment presented by Dr. Killingsworth, Tsur has presented sufficient evidence to support his disparate treatment age discrimination claim.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

in the RIF was age-based. In addition, Intel's reliance on Jones' age-biased performance reviews to select Tsur for the RIF, particularly given Tsur's efforts to bring his concerns about Jones' reviews to Intel's attention several times prior to his termination, fully supports the causal nexus.

Intel asserts that its legitimate, non-discriminatory reason for the RIF was a need to cut costs. Intel further asserts that the Focal and SSL ratings were an "objective and fair means to identify the lowest performing employees." Dkt. 61, p. 28. Intel, however, fails to explain how these ratings were "objective" or "fair." Regardless, Tsur has ample evidence to prove that this justification is false, by proving (via Dr. Killingsworth's analysis) that the SSL ratings were age-based and therefore not objective or fair, that (via the manager testimony) that SSL ratings were in-fact used in an age-based manner; and that the Focal and SSL ratings given to Tsur by Jones were tainted by discriminatory animus.

## I. Plaintiff's Claim for Age-Based Disparate Impact is Supported by the Disproportionately-Older Composition of the 2015 RIF and the Age-biased Assignment of 2013-2015 SSL Ratings

Tsur can prove a disparate impact claim by showing that a facially neutral employment policy (such as the 2015 RIF selection criteria) has, in its application, adversely affected members of the protected class (here, older workers). *See Griggs v. Duke Power Co.*, 401 U.S. 424, 430-432 (1971). To proceed, a plaintiff need not prove discriminatory motive, with the pleadings focusing instead on the consequences of the employment practice in question. *Id*. Policies resulting in a disparate impact based on age may be permissible under the ADEA, but only if an employer can prove that the "differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1); *see Smith v. City of Jackson, Miss.*, 544 U.S. 228, 237-238 (2005).

Tsur has satisfied the first prong through Dr. Killingsworth's statistical analysis—showing that regardless of Intel's motive, Intel's policy of basing the 2015 RIF decisions in large part on

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

SSL ratings[19] resulted in older employees such as Tsur being overwhelmingly more likely to be terminated in the RIF; and that there is virtually no chance that this extraordinary correlation occurred by pure coincidence.

Tsur's evidence also defeats Intel's reasonable factors other than age affirmative defense.[20] Tsur developed testimony and evidence that Intel managers (including his managers) regularly gave poor SSL ratings to older employees in order to utilize their limited stock budgets to incentivize retention for younger employees. Intel took pains in discovery to conceal the information its senior executives relied upon in designing the RIF criteria and vehemently denies knowing that the SSL ratings were doled out in this manner, a reasonable jury could conclude that they knew or should have known that this was a widespread practice. Had Intel conducted the disparate impact analysis mandated by the EEOC's Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607, then they would have found a striking correlation between SSL 4 and 5 ratings and older age.[21]

Further, Intel initially designed a RIF that was based only on 2015 Focal ratings and determined that this did not cull enough employees to meet the financial target selected by senior management. Intel then added SSL ratings to the mix to increase the cull, without adjusting for the fact that a large number of employees would have satisfactory focal ratings combined with weak

---

[19] Intel argues that Tsur was unable to identify a practice at his deposition. As explained above, Tsur is not burdened with a requirement that he be able to explain all his legal theories at his deposition.

[20] The ADEA's reasonable factors other than age defense is an affirmative defense, for which the employer bears the burden of persuasion. *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101-102 (2008). When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. *Helton v. Factor 5, Inc.*, 26 F. Supp. 3d 913, 917 (N.D. Cal. 2014). Intel cannot come close to meeting this heavy burden and has failed to preserve this defense in its responsive pleadings.

[21] The EEOC strongly recommends the use of disparate impact analyses to protect older employees in RIFs. 29 CFR § 1607(e)(2)(v). However, Intel's corporate designee was instructed ***not*** to testify as to what, if any, studies of this nature, let alone findings, were made by Intel during Intel's FRCP 30(b)(6) deposition. Sanchez Depo. at 203:11-204:01.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

SSL ratings. Indeed, Intel amplified the influence of SSL ratings by making SSL ratings of 4 or 5 in 2015 a precondition for considering 2014 and 2013 SSL and Focal ratings for selection for the 2015 RIF. Sanchez Depo. at 161:19-163:21. From this evidence, sufficient to support an inference of intentional discrimination, a reasonable jury could conclude that Intel's decisionmakers at the very least had a "see no evil" mentality in designing the 2015 RIF.

### J. Plaintiff's Retaliation Claim for Reporting Age Discrimination is Supported by Jones' Conduct After Plaintiff Engaged in Protected Activity, Compared with Before, and Intel's Refusal to Review Plaintiff's Selection for the 2015 RIF or Consider Rehiring Him

Tsur brings a retaliation claim for reporting age discrimination under ORS 659A.030(1)(f), ORS 659A.199 and 42 USC 2000e-3. To prevail, Tsur must prove that (1) he engaged in a protected activity, (2) he suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision. *Neighorn v. Quest Health Care*, 870 F. Supp. 2d 1069, 1102 (D. Or. 2012); *Boynton-Burns v. University of Oregon*, 197 Or. App. 373, 105 P.3d 893, 897 (Or. App. 2005).

To satisfy the first element, Tsur must allege that he "in good faith reported information that [he] believes is evidence of a violation of a state or federal law, rule or regulation." ORS 659A.199(1). He need not prove that the conduct reported was actually a violation of a law, rule, or regulation, but rather that he at least "reasonably believed" the information reported constituted a violation of a rule, regulation or law. *See Neighorn v. Quest Health Care*, 870 F. Supp. 2d 1069, 1102 (2012); *Hall v. State*, 274 Ore. App. 445, 451 (2015). Both ORS 659A.030(1)(f) and 42 U.S.C. § 2000e-3 protect whistleblowers who have opposed discriminatory policies, or participated in related procedures, having to do with conduct proscribed by ORS Ch. 659A (addressing Oregon employment discrimination claims) and 42 U.S.C. Subch. IV (addressing federal civil rights claims), respectively.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

As to the second element, to allege an adverse employment action, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U. S. 53, 57 (2006); *McLaughlin v. Wilson*, 365 Or. 535, 551 (2019). Meanwhile, to allege a whistleblower claim under ORS 659A.199, a plaintiff must allege that the adverse employment action affected the plaintiff's "compensation, terms, conditions, or privileges of employment." *Meyer v. State*, 292 Or. App. 647, 679 n. 10 (2018).[22]

Combined, Tsur presents circumstances sufficient to support his retaliation claims. He has developed evidence that the Focal and SSL ratings that Jones issued him subsequent to his reporting some of Jones's age-based comments to Aicha Evans (then a Vice President) were a proximate cause of his termination in the 2015 RIF.[23] This report was protected activity because Tsur believed in good faith that Jones's conduct was discriminatory. His termination was certainly an adverse employment action. As for causation, it is undisputed that Jones's Focal and SSL ratings were proximate causes of Intel's selection of Tsur for the 2015 RIF, which leaves only a requirement that Tsur prove that his report to Evans (and/or subsequently to Thronson) was a proximate cause of the reviews. Tsur is able to make this showing, because he received a "Satisfactory" Focal rating from Jones prior to the report, contrasted to "Below Expectations" and "Improvement Required" after the report. Furthermore, the fact that Jones invented entirely new criticisms (regarding Tsur's prioritization of work projects) after Tsur successfully adjusted his work interactions to respond to the original criticisms strongly suggests that Jones did not want him to be successful in his group because of his retaliatory animus.

---

[22] Tsur incorporates his earlier discussion regarding Intel's purported legitimate, non-retaliatory reason.
[23] In denying Intel's motion to dismiss, the court held that Jones's conduct was relevant to the extent that it proximately caused Tsur's selection for the RIF, despite being time-barred as an independent adverse employment action. Dkt. 22, p.26.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

Intel's reliance on Jones' retaliatory evaluations of Tsur, particularly after Tsur repeatedly requested that they be properly reviewed prior to his termination, support that the retaliatory animus was adopted and effectuated by the 2015 RIF.

**K.  Plaintiff's Discrimination Claim Based on National Origin is Supported by Evidence of Jones' Xenophobic and Anti-Semitic Animus**

To prove a *prima facie* claim for national origin employment discrimination under Title VII or Oregon law, the four-part *McDonnell Douglas* test applies. To satisfy the first element, Tsur is of Israeli national origin; for the second element, Tsur was indisputably qualified for the job (*see supra* at p. 25); for the third element, Tsur's selection for the RIF is an adverse employment action; and for the fourth element, Jones treated Tsur in a manner suggesting an inference of discrimination. Jones's anti-Israeli and anti-Semitic remarks support the inference that impermissible animus related to Tsur's national origin, influenced the "Improvement Required" ratings and SSL ratings Intel relied upon to select Tsur for termination. Based on these facts, and the arguments above explaining how the cat's paw doctrine applies, Tsur's national origin-based discrimination claim should be allowed to proceed.

///

///

///

///

///

///

///

///

///

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

# IV. CONCLUSION

For the reasons set forth above, Tsur has presented ample evidence from which a reasonable jury could conclude that he was fired on the basis of his age, his national origin, and because of his complaint about Jones' ageist statements. Intel's Motion for Summary Judgment should therefore be denied.

DATED this 27th day of October 2022.    LEWALLEN LAW, LLC

_____

Shanti S. Lewallen, OSB No. 143740
shantilewallen@gmail.com
Tel.: 503-997-5447 / Fax: 844-364-5438

*Of Attorneys for Plaintiff*

Page 31 – PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

CERTIFICATE OF SERVICE

I certify that on the date indicated below, I caused to be served the foregoing PLAINTIFF'S

OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT upon Defendant

by EMAIL and the EM/ECF System at the addresses below:


Helen M. McFarland
hmcfarland@seyfarth.com
Nicholas Gillard-Byers
ngillard-byers@seyfarth.com
SEYFARTH SHAW LLP
999 Third Avenue, Suite 4700
Seattle, Washington  98104-4041

Christopher J. DeGroff
cdegroff@seyfarth.com
Andrew Scroggins
ascroggins@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois  60606-6448

Shardé T. Skahan
sskahan@seyfarth.com
SEYFARTH SHAW LLP
2029 Century Park East, Suite 3500
Los Angeles, California  90067-3021


DATED this 27th day of October 2022.

LEWALLEN LAW, LLC

_____
Signed: Shanti Lewallen, OSB # 143740
Email: shantilewallen@gmail.com

*Of Attorneys for Plaintiff*

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438