SHANTI LEWALLEN, OSB No. 143740
shantilewallen@gmail.com
LEE DUDLEY, OSB No. 206821
lcdlex@gmail.com
Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Telephone: (503) 997-5447

ANDREW HOROWITZ, PA Bar No. 311949 (*pro hac vice*)
BRUCE FOX, PA Bar No. 42576 (*pro hac vice*)
Obermayer Rebmann Maxwell & Hippel LLP
525 William Penn Place, Ste. 1710
Pittsburgh, PA 15219
Telephone: (412) 288-2461

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RON TSUR**, | Case No.: 3:21-cv-00655-SI |
| Plaintiff, | |
| vs. | **PLAINTIFF'S LAY WITNESS LIST** |
| **INTEL CORPORATION,** | |
| Defendant. | |

Plaintiff may call the following witnesses at trial in this case:

1. **Sky Archuleta**                    **Direct Testimony: 60 min.**

   <u>Occupation</u>: Retired

   <u>Address</u>: 27624 Gibbs Road, Scappoose, OR 97056

Archuleta will testify that during his approximately 20-year career at Intel Corp. as a first and second-level manager, he had extensive experience in managing groups of workers, including hiring, providing performance reviews for, and terminating employees. As such, Archuleta will

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

testify to how Stock Share Level (SSL) and Focal ratings, hiring, firing, corrective action plans and employee complaints or disputes were handled by managers and HR during his tenure at Intel. Archuleta will testify to his observations of how HR and management interacted with subordinates during his tenure at Intel and his understanding of best practices in this area. Archuleta will also testify to his experience as an older worker who was pushed out of the organization before he was ready.

Archuleta will testify that he worked with Plaintiff Ron Tsur (Tsur) on a number of projects during the time that Tsur was employed by Defendant as an independent contractor, and that in his experience, Tsur was highly qualified to complete complex tasks under rigorous time constraints. Archuleta will testify that on multiple occasions over the years, he recommended that Tsur be retained as an independent contractor or hired directly by Intel. Archuleta will aso testify that he recommended Intel that continue employing Tsur when Tsur's direct manager, Bruce Jones, attempted to have him fired. Archuleta will testify to Tsur's professionalism and skill over their lengthy working relationship, during which time Jones was the only person who Archuleta knew to have had a negative interaction with Tsur.

### 2. **Glenn Begis** **Direct Testimony: 60 min.**

Occupation: Retired

Address: 460 Stepien Road, Gaston, OR 97119

Begis will testify that during his approximately 30-year career at Intel, including as a first and second-level manager, he had extensive experience in managing groups of workers, including hiring, providing performance reviews for, and terminating employees. As such, Begis will testify to how SSL and Focal ratings, hiring, firing, corrective action plans and employee complaints or disputes were handled by managers and HR during his tenure at Intel. Begis will testify as to his

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

observations of how HR and management interacted with subordinates during his tenure at Intel and his understanding of best practices in this area.

Begis will also testify that as an older worker, in many ways he felt pressure from Intel to retire early and that he indeed retired before he was ready to do so. He will testify that based on Intel's tendency to lay off older workers at a greater rate than younger workers, and the company pressuring older workers to retire early, he felt that Intel desired to dispose of older workers.

Begis will testify that for several years he worked as a Rank Manager, supervising other managers' evaluations of their teams through Intel's Focal process, by which Intel assigned yearly performance and SSL ratings. On occasion, this included remedying mis-allocation of ratings by the Focal process. Begis will testify that Intel's use of SSL ratings as criteria for the 2015 Reduction in Force (2015 RIF) in this matter disadvantaged older workers at a greater proportion than younger workers based on how SSL were assigned, and that SSL ratings do not reliably reflect the performance of those employees to whom they were assigned during the relevant time period. Begis will testify that SSL, concerning stock which would vest over a 5-year period, were awarded for retention purposes, making higher SSL ratings a better incentive for younger workers than older workers, such that manager were motivated to give better SSL ratings to younger workers in light of Intel's guidelines and limited stock available to award during each Focal.

Begis will testify that after Tsur received an "Improvement Required" (IR) rating from Jones, in 2012, putting Tsur's future employment at Intel in jeopardy, Begis became involved in the process of resolving Tsur's complaint about Jones' evaluation and the resulting choice Tsur was forced to make between "voluntary separation" and a "Corrective Action Plan" (CAP). Begis will testify that at that time, a number of managers who recognized Tsur's value to the company pressured Human Resources (HR) to make an exception to its normal rule prohibiting transfers of

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

employees under a CAP to permit Tsur to continue to be retained under a new manager, Steven Nahas.

**3. Intel Corporation's Appearance**        **Direct Testimony: 15-30 min.**
**Corporate Representative (adverse witness)**

<u>Occupation</u>: To be determined.

<u>Address</u>: To be determined.

Intel's appearance corporate representative who may be present at defense table during trial will be called to answer questions as to their position and experience at Intel, their knowledge of the facts of the matter, their knowledge of relevant Intel employment and human relations policies and the reason for their attendance.

**4. Bruce Jones (adverse witness)**        **Direct Testimony: 120 min.**

<u>Occupation</u>: Cloud Software Architect

<u>Address</u>: c/o Seyfarth Shaw, 999 Third Avenue, Suite 4700, Seattle, WA 98104

Jones will testify that he was Tsur's direct manager from approximately May of 2011 to January of 2013, and as such submitted performance reviews and SSL awards of Tsur based on his subjective evaluation of Tsur's performance. Jones will testify as to his recollection of conversations he had and written communications he exchanged with Tsur, HR and other employees of Intel with regard to Tsur's employment, including conversations in which Tsur remembers Jones making inappropriate and bigoted remarks revealing Jones' biases against older workers, Israelis and Jews. Jones will testify as to his motives for making employment evaluations of Tsur as "Successful" in 2012 for 2011 calendar year performance; yet subsequently downgrading Tsur's performance rating later in 2012, and submitting a negative review in 2013, which nearly resulted in Tsur's termination in 2012, and ultimately did result in Tsur's termination in 2015.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

**5.  Steven Nahas, Retired**                                        **Direct Testimony: 90 min.**

Occupation: Retired

Address: PO Box 1394, Middletown, CT 06457

Nahas will testify that he worked for Intel for over 29 years, including as an engineer, and as Tsur's direct manager during the years of 2013 and 2014, issuing Tsur's 2014 Focal review and SSL ratings. Nahas will testify that as an Intel manager he participated in managing groups of workers, including hiring, providing performance reviews for, and supervising employees. As such, Nahas will testify to how SSL and Focal ratings, hiring, firing, corrective action plans and employee complaints or disputes were handled by managers and HR during his tenure at Intel. Nahas will testify as to his observations of how HR and management interacted with subordinates during his tenure at Intel and his understanding of best practices in this area.

Nahas will also testify that as a manager assigned to award SSL ratings, he understood that such ratings were intended not as a performance metric, but as an employee retention incentive. Nahas will testify that because Tsur's base salary was higher than his peers, Tsur's low stock award related to his poor SSL rating in the 2014 Focal reflected Nahas' use of the SSL rating system as an equalization mechanism with which Nahas could award higher stock to lower-compensated employees only by reducing Tsur's stock award. Nahas will testify that meeting quotas specified in Intel's Focal Guidelines was the most important criterion in assigning SSL ratings, with performance trailing other factors including employee retention, the likelihood that an employee would even benefit from time vesting stock, and equalizing pay. Nahas will testify that an employee's performance was a distant last factor considered in order of importance in assigning SSL ratings, if at all.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

Nahas will further testify that, had he been able to use Intel's Focal Guidelines' definitions of the respective SSL ratings to assign SSL ratings, based on Tsur's skill, performance, and importance to his team in 2014, Tsur should have been awarded an SSL 3, not the SSL 4 that Nahas assigned him (a factor that was fatal to Tsur's tenure according to Intel's 2015 RIF criteria).

Nahas will testify that he and other engineer/managers were required to intervene to save Tsur's job after Jones' unfair review of Tsur's performance, that the Corrective Action Plan (CAP) required of Tsur was unnecessary, and that Tsur diligently completed the CAP without trouble and was returned to a "Successful" rating. Nahas will testify that Tsur was an asset to Intel and that Tsur quickly adjusted to new assignments and team needs. Nahas will testify that Tsur's performance was such that he recommended Tsur for a job with a higher level of responsibility under Tsur's subsequent manager, Roger Rees.

Nahas will testify that after Tsur was transferred to his supervision, he met with Tsur and Jones when Jones delivered Tsur's 2013 Focal review to Tsur; that in the meeting Jones was unfairly critical of Tsur; that Tsur handled it professionally; and that after the meeting Jones encrypted the review before it was posted on Tsur's electronic personnel record such that neither Nahas nor Tsur could read its content, a violation of Intel policy, making it impossible to use or challenge the review.

Nahas will testify that he discouraged Tsur from persisting in his Open Door Investigation (ODI) into Jones' unfair treatment of him, because he wanted Tsur to focus on his work. Nahas will also testify that as an older worker, in many ways he felt pressure from Intel to retire early, and that he indeed retired before he was ready to do so based on such pressure. He will testify that based on his experience as a recruiter for Intel, sent only to recruit younger workers as they

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

graduated from college, and his experience of Intel's efforts to induce older workers to retire early, he understood that Intel preferred younger workers over older ones.

### 6. David Sanchez (adverse witness)                Direct Testimony: 90 min.

<u>Occupation</u>: IOTG/VPU Chief of Staff/Operations Director

<u>Address</u>: 1978 West Olive Way, Chandler, AZ 85248

As Intel's FRCP 30(b)(6) designee Sanchez will testify as to Intel's corporate knowledge of the following subjects identified as Topics 6-14 in Plaintiff's Third Revised Deposition Notice:

**Topic 6:** Defendant's policies, rules, practices, guidelines and procedures related to assigning time-vesting Stock Share Levels (SSL) to its employees from January 1, 2012 through December 31, 2016, including for each:

    a. Its method and manner of communication to those assigning SSL levels;

    b. The rationale for its implementation;

    c. How it was intended to be related to performance;

    d. All efforts Defendant made to ensure it would be applied fairly without regard to age; and

    e. The various forms it took during this time period.

**Topic 7:** Facts and non-privileged documents known to Defendant reflecting how Defendant settled on SSL ratings of 4 or 5, assigned during the years of 2012-2015, as a criterion for selecting employees for termination in the 2015 Reduction in Force (RIF) at issue herein, including for each:

    a. Any efforts Defendant made to determine the age-composition of the group for which the criterion selected;

    b. Any other criteria Defendant considered using to select individuals for the RIF, and the age-composition for which they were selected.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

**Topic 11:** Facts and non-privileged documents known to Defendant sufficient to reflect all of Defendant's rules, practices, policies, procedures and guidelines governing eligibility for rehire or reemployment with Defendant, among those selected for the 2015 RIF.

Sanchez will testify that he has extensive experience in management and HR at Intel from at least 2007 until the present, serving as a lead, an HR partner, an HR manager, an HR Director and an Operations Manager. As such, Sanchez may also be asked to testify in his individual capacity to his experience of Intel's HR and management policies relevant to the 2015 RIF and complying with employment law.

       **7.   Roger Rees**                                   **Direct Testimony: 90 min.**

      <u>Occupation</u>: Retired

      <u>Address</u>: c/o Seyfarth Shaw, 999 Third Avenue, Suite 4700, Seattle, WA 98104

Rees will testify that during his approximately 20-year career at Intel, including as a first and second-level manager, he had extensive experience in managing groups of workers, including hiring, providing performance reviews for, and handling grievances of Intel employees. As such, Rees will testify to how SSL and Focal ratings, employee complaints, hiring, firing, corrective action plans and disputes were handled by managers and HR during his tenure at Intel. Rees will testify as to his observations of how HR and management interacted with subordinates during his tenure at Intel and his understanding of best practices in this area.

Rees will testify that when he was Tsur's direct supervisor in 2014 and 2015, Tsur worked well with his peers and followed Rees' direction without resistance. As such Rees will testify that he rated Tsur "Successful" in the 2015 Focal and in a 2015 Mid-year review. In further support of Tsur's "Successful" rating, Rees will also testify that Tsur had a paper he had authored approved by a technical body of Intel Principle Engineers for publication in Intel's annual 2015 Design Test

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

and Technology Conference. Rees will testify that ironically, Tsur's paper was published in July 2015, just days before his July 15 termination.

Rees will testify that he gave Tsur an SSL 5 – amounting to zero stock awarded – in the 2015 Focal process, unwittingly partially qualifying Tsur for the 2015 RIF, but that, as he explained to Tsur at the time, the SSL 5 rating was not based on performance, but based on trying to reach better equity in his team of 50 engineers. Rees will testify that the Focal Guidelines for assigning SSL 5 to a minimum of 5% of the workforce were strictly enforced, such that even if no employees in the group he supervised met the criteria laid out in the Focal Guidelines' SSL 5 definition, some would receive this low rating anyway. Rees will testify that if he were permitted to adhere to the respective SSL level definitions in the Focal Guidelines, he would have given Tsur an SSL 3.

Rees will testify that as an Intel manager he had the opportunity to handle a number of Open Door Investigations (ODI), including circumstances when employees' Focal performance ratings and SSL ratings were considered and improved as a result. Rees will testify that based on this experience, he was disappointed that Intel would not process Tsur's ODI request to have his performance and SSL ratings reviewed after Tsur learned he was to be included in the 2015 RIF. Rees will testify that at the time he assigned Tsur his 2015 SSL 5, he had not examined the definition of SSL 5, which was for employees whose "contributions and growth fall well below their peers," performing "at a low level and display[ing] very limited skills," among other criteria which did not apply to Tsur. Based on this Rees will testify that in his opinion, Tsur's 2015 SSL 5 should have been upgraded to SSL 3, such that he would not meet the criteria for the 2015 RIF.

Rees will further testify that after Tsur was noticed for termination in the 2015 RIF, he tried to find a way to keep Tsur on as an employee, but that Intel would not permit him to do so.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

Rees will testify that he would have considered rehiring Tsur, but understood that Intel would not permit Tsur return as a direct employee or as an independent contractor.

Rees will testify that in contrast with his experience managing employees for other high tech firms, Intel's Focal system was designed to eliminate 3-5% of employees per year, a policy communicated as a "recommendation" at higher levels of the company, but enforced by middle management as a "requirement" in practice. Rees will testify that on more than one occasion he was told if he could not find an "Improvement Required" candidate to put under a CAP or terminate, his manager would find one, which he understood to imply Rees himself would be terminated. Rees will testify that these policies motivated managers to assign "Improvement Required" ratings at times when such ratings were not warranted.

### 8. Matthew Smith (adverse witness)        Direct Testimony: 30 min.

<u>Occupation:</u> Chief People Officer, Employment & Labor Attorney

<u>Address:</u> c/o Seyfarth Shaw, 999 Third Avenue, Suite 4700, Seattle, WA 98104

Smith will testify that he was a lawyer with Intel's HR legal department the years of 1997 through 2013, including as head of the department several years. During the years of 2013 through 2015, Smith moved to managing Intel's worldwide business HR organization, and then was promoted to Corporate Vice President, Human Resources Business and Enterprise Solutions for Intel in April 2015, a position he held until 2019. Smith will testify to the creation of the team that designated the criteria for the 2015 RIF. Smith will testify that he understood the 2015 RIF to be motivated by Intel's interest in saving money at a time when the company was concerned about low growth in earnings by eliminating employees with poor performance. Smith will testify that during his tenure at Intel, he was involved in other cost saving RIFs involving both thinning numbers of employees and site closures, and that Intel had used many criteria to accomplish RIFs,

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

including job eliminations, functional eliminations, site closures, skills matrices, voluntary separation plans and performance-based criteria. He will testify to the pluses and minuses of each method of structuring a layoff.

Smith will testify that the 2015 RIF was the first he can remember for which Intel used Focal and/or SSL ratings as criteria to select employees for termination. Smith will testify that employees at Intel receiving pay grades two through six (who were to receive a lower proportion of SSL 4 and 5 ratings which could be fatal to their careers in the 2015 RIF per Intel Focal Guidelines) tended to be younger than employees in pay grades seven and above. Employees at grades two through six often occupied entry positions and were commonly new college graduates who were disproportionately younger than those in the higher pay grades. Smith will testify that in directing managers to apply the Focal Guidelines, HR higher ups at Intel would encourage them to "peanut butter" or spread the benefits of incentive pay such as SSL ratings outside of strictly performance-based assignments of the same, to send the "right message," as opposed to forcing the distribution set in the yearly Focal Guidelines. Smith will testify as to the importance of complying with employment law, including the ADEA and the OWBPA, as well as the company's global code of ethics.

**9. Ms. Ayalla Tsur**        **Direct Testimony: 30 min.**

Occupation: Human Resources Compensation Consultant

Address: c/o Lewallen Law, LLC, 735 SW First Ave., Ste. 300, Portland, OR 97204

Ms. Tsur will testify about her observations of the emotional condition of her father, Ron Tsur, both before and after Intel terminated his employment in July 2015, the importance of Tsur's employment to him and his family, and the detrimental effects of the termination on Tsur and his family.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

**10. Ron Tsur**                                          **Direct Testimony: 180 min.**

<u>Occupation</u>: Unemployed Software Architect/Engineer

<u>Address</u>: c/o Lewallen Law, LLC, 735 SW First Avenue, Suite 300, Portland OR 97204

Tsur will testify regarding his personal and career background and his career history with Intel. He will testify that he began working at Intel on various multidisciplinary projects as an independent contractor, employing his skills in designing electronic circuitry and programming software. Tsur will testify that in January of 2011, then 58 years of age, Tsur was persuaded by his colleagues to accept direct employment as an Embedded Systems Integration Technical Lead in Intel's Wireless Platform Research and Development (WPRD) group.

Tsur will testify that his employment with Intel proceeded smoothly until in or around May 2011, when Tsur was assigned to work under Intel Manager, Bruce Jones ("Jones"). Tsur will testify that starting with their first meeting on June 15, 2011, and continuing throughout the time Tsur worked with him, Jones regularly made ageist and xenophobic comments to Tsur. Tsur will testify that soon after, younger coworkers within Jones' department who became aware of Jones' critique of Tsur began calling Tsur derogatory names, such as "old man," and "old fart," as well as demeaning Tsur's Israeli origin in Tsur's presence.

Tsur will testify that as a part of Intel's 2012 Focal process Jones wrote a performance review of him, rating Tsur's performance for the calendar year of 2011 as "Successful," but including unfair criticism and mixed messages as to Jones' expectations. Tsur will also testify that in 2012 Jones assigned him an SSL 3, entitling Tsur to time-vesting Restricted Stock Units of Intel stock.

Tsur will testify that upon receiving Jones' 2012 Focal review containing unfair criticism which he attributed to Jones bigoted opinions, he understood Jones' ageist and xenophobic animus

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

to be a threat to his future at Intel. Tsur will testify that he approached his next-level manager above Jones requesting a transfer out from under Jones to no avail, so he escalated his request to Aicha Evans, Vice President for Intel's WPRD group, reporting some of Jones' ageist comments and requesting a transfer.

Tsur will testify that while he requested that Ms. Evans keep his complaint about Jones confidential, Ms. Evans involved HR such that Jones became aware that Tsur had reported Jones' workplace hostility and discriminatory conduct. Tsur will testify that after Jones became aware of Tsur's report to Ms. Evans, Jones subjected Tsur to unfair scrutiny and escalating unwarranted discipline in the form of successively poorer performance reviews, improperly downgrading his performance rating to "Below Expectations" and then "Improvement Required." Tsur will testify that HR representatives, including HR Legal investigator Deanna Thronson, minimized his concerns and were uninterested in his efforts to demonstrate that Jones' criticsms were in bad faith, ignored his request to contact witnesses Tsur identified, and chastised Tsur for allegedly failing to meet Jones' expectations.

Tsur will testify that by the end of 2012, Jones and HR's campaign to push him out of Intel reached a head when Jones offered Tsur a choice between "voluntary separation" and a "Corrective Action Plan" (CAP). Tsur will testify that he accepted the CAP, while persisting in his effort to get HR to complete its investigation and understand Jones' discriminatory and retaliatory motives for attacking what was, by all measures besides Jones', Tsur's excellent performance record. Tsur will testify that managing engineers and software developers, recognizing that it would be a mistake for Intel to let him go, came together to find him a position under a different manager, Steven Nahas, and persuade Thronson to permit a transfer, in spite of Intel's policy against allowing transfers for those undergoing a CAP.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

Tsur will testify that after he was transferred from Jones supervision, conditions improved markedly and he did not experience the extreme bigotry he had under Jones. He will testify that to the contrary, his subsequent managers were respectful and returned to rating his performance as "Successful" in the 2014 and 2015 Focals. However, Tsur will testify that because Jones had supervised him in 2012, Jones took the opportunity presented by the 2013 Focal to give Tsur an unfair "Improvement Required" rating, which later became one of the criteria Intel used to select Tsur for termination in the 2015 RIF.

Tsur will testify that after Jones issued the 2013 Focal review, Jones encrypted the review, such that although the review was posted in Tsur's personnel file in Intel's Electronic Data Archive, neither Tsur, nor his managers, nor even Intel's information technology (IT) department could access the review. Tsur will testify that because he could not access the review, and because Nahas encouraged him to focus on his work instead of persisting with his complaint about Jones' discriminatory and retaliatory review, he decided not to persist with his efforts to get Thronson to complete her investigation and overturn Jones' unfair performance rating.

Tsur will testify that although Nahas awarded him a "Successful" rating in the 2014 Focal, Nahas assigned him a poor SSL 4. Tsur will testify that Nahas explained at the time that the SSL 4 had nothing to do with Tsur's performance. Tsur will testify that similarly, in the 2015 Focal, when his subsequent manager, Roger Rees, assigned him a "Successful" performance review and an SSL 5, Rees explained that he would have given Tsur a higher rating if it had not been his first year with the department, also emphasizing that the SSL rating had nothing to do with Tsur's performance. Tsur will also testify that Rees informed him at the time that he could not give him a raise, as Tsur was at the high end of compensation for those in his Pay Grade of 8, and that he

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

would make up for the low raise and poor SSL rating with an Annual Performance Bonus increase of 11.4%.

Tsur will testify that on June 15, 2015, without warning, Intel informed him that he would be terminated, effective July 15, 2015, providing him with a letter explaining that he was selected for termination in a RIF based on his Focal performance and SSL rating history. Tsur will testify that the fact that the 2015 RIF was termed a "Performance-Based Mandatory Buyout" added insult to injury, as his reputation as a high performer was a central component of his self-worth, and had been affirmed by virtually everyone he worked with at Intel except for Jones. Tsur will testify that Intel's communications related to the 2015 RIF made clear that he would not be permitted to return to work for Intel either as a direct employee or an independent contractor, a devastating blow as Tsur yearned to return to his work at Intel.

Tsur will testify, that a culture of ageism permeated the ranks of Intel throughout his employment as a direct employee, as even though he was a recent hire and received excellent reviews from his managers, he was regularly contacted by Intel suggesting he retire early. After being terminated along with a great number of other workers in Oregon, Tsur will testify that he recognized that the market for his services in the region was flooded, however for a period of time he unsuccessfully applied for jobs in his field. Tsur will testify that he held out hope that through filing an administrative complaint with the Bureau of Labor and Industries (BOLI) and the Equal Employment Opportunity Commision (EEOC), he would be reinstated to Intel.

However, Tsur will testify that after several years of applying for jobs and fighting to get reinstated to Intel, it became clear that Tsur would never be able to return to his career there short of injunctive relief through this lawsuit. Tsur will testify that his termination by Intel caused him loss of wages and benefits and severe emotional distress, including humiliation, isolation,

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

depression, anxiety and betrayal-based trauma presenting with symptoms of Post Traumatic Stress Disorder. Tsur will testify that he also suffered loss of standing in his community both professionally and personally and was stripped of his role as a provider of financial support for his two children. Tsur will testify that felt discarded and betrayed by Intel, a company whose success he had devoted his most productive years. This feeling compounded as he later discovered that although Intel justified the 2015 RIF as fiscally required to recover from a $300 Million shortfall in the first Quarter of 2015, during the same three month period, the company saw fit to engage in stock buybacks more than double that amount, leveraging the savings to more than $3 Billion in stock buybacks in 2015 alone.

**11. Ms. Deanna Thronson**                             **Direct Testimony: 30 min.**

Occupation: Human Resources Director, Lawyer

Address: c/o Seyfarth Shaw, 999 Third Avenue, Suite 4700, Seattle, WA 98104

As Intel's FRCP 30(b)(6) designee Ms. Thronson will testify as to Intel's corporate knowledge of the following subjects identified as Topics 1, 2 and 4 in Plaintiff's Third Revised Deposition Notice:

**Topic 1:** All facts and non-privileged documents known by Defendant related to Defendant's investigation of Plaintiff's complaints to Defendant related to age discrimination made during the years of 2012 and 2013 (*see* Amended Complaint, ECF 23, Para. 10-23), including those related to:

a. All policies related to the handling of such complaints;

b. All efforts made by Defendant's agents to investigate Plaintiff's allegations;

c. The identity of all individuals involved in the investigations, whether investigating, being investigated, serving as a witness, or providing information of any nature;

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

d.  All findings from any such investigation; and

e.  All conclusions and actions taken pursuant to such investigation.

**Topic 2:** All facts and non-privileged documents known to Defendant related to Defendant directing Plaintiff to choose between resignation, termination, "voluntary separation" or a "Corrective Action Plan" (CAP) (*see* ECF 23, Para. 18-24), including those related to:

a.  All policies related to any known rationale for terminating Plaintiff and/or urging Plaintiff to agree to resignation, "voluntary separation" or a CAP;

b.  Any rationale known by Defendant for its agents to threaten to terminate Plaintiff and/or attempt to induce him to accept resignation, "voluntary separation" or a "Corrective Action Plan;"

c.  The terms of any voluntary separation offered to Plaintiff; and

d.  The terms of any CAP offered to Plaintiff, their development, their implementation, their evaluation and their completion.

**Topic 4:** All facts and non-privileged documents known to Defendant related to Plaintiff's former Manager Bruce Jones' evaluation of Plaintiff's performance.

Thronson will testify in her personal capacity that she has worked for Intel for most of the last 22 years, including as an HR Legal Investigator, an Employee Effectiveness Manager – Business HR, a Business HR Leader, and in her current role as Human Resources Director. Thronson will testify to Intel's HR and management practices, policies and procedures regarding addressing unlawful discrimination and retaliation in the workplace, investigating grievances raised by employees and assignment of performance ratings and incentive pay. Thronson will testify about her own investigation of Tsur's ODI complaints and how she came to her conclusions about Tsur's allegations about Jones' discriminatory and retaliatory acts.

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

Thronson will testify that in spite of Tsur being under a CAP which would normally preclude his transfer from under Jones, she had approved his transfer to the supervision of Nahas, where Tsur successfully completed his CAP. Thronson will also testify that after ending her investigation of Tsur's ODI complaints, she and/or others at Intel lost all paper and electronic records of her investigation, except for two screens from Intel's ODI electronic database and a few emails.

DATED this 9th day of January 2023.          LEWALLEN LAW, LLC

_____
Shanti S. Lewallen, OSB No. 143740
shantilewallen@gmail.com
Tel.: 503-997-5447 / Fax: 844-364-5438

**_Of Attorneys for Plaintiff_**

Lewallen Law, LLC
735 SW First Avenue, Suite 300
Portland, OR 97204
Tel: 503-997-5447
Fax: 844-364-5438

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RON TSUR**, | Case No.: 3:21-cv-00655-SI |
| Plaintiff, | I |
| vs. | **CERTIFICATE OF SERVICE** |
| **INTEL CORPORATION,** | |
| Defendant. | |

I certify that on the date indicated below, I caused to be served the foregoing Plaintiff's

Lay Witness List upon Defendant by EM/ECF System which sent notification of such filing to

Defendant's attorneys at the addresses below:

Helen M. McFarland
hmcfarland@seyfarth.com
SEYFARTH SHAW LLP
999 Third Avenue, Suite 4700
Seattle, Washington 98104-4041

Andrew Scroggins
ascroggins@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448

Christopher J. DeGroff
cdegroff@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448

Raymond C. Baldwin
rbaldwin@seyfarth.com
SEYFARTH SHAW LLP
975 F Street, NW
Washington, DC 20004

DATED this 9th day of January 2023.

LEWALLEN LAW, LLC

_____
Signed: Shanti Lewallen, OSB # 143740
Email: shantilewallen@gmail.com

*Of Attorneys for Plaintiff*

Lewallen Law, LLC
65 SW Yamhill Street, Suite 300
Portland OR 97204
Tel: 503-997-5447
Fax: 844-364-5438