Helen M. McFarland, OSB 013176
hmcfarland@seyfarth.com
SEYFARTH SHAW LLP
999 Third Avenue, Suite 4700
Seattle, WA 98104-4041
Tel: (206) 946-4910

Christopher J. DeGroff (*Admitted Pro Hac Vice*)
cdegroff@seyfarth.com
Andrew Scroggins (*Admitted Pro Hac Vice*)
ascroggins@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60606-6448
Tel: (312) 460-5000

Raymond C. Baldwin (*Admitted Pro Hac Vice*)
rbaldwin@seyfarth.com
SEYFARTH SHAW LLP
975 F St., N.W.
Washington, DC 20004
Tel: (202) 463-2400

*Attorneys for Defendant Intel Corporation*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON - PORTLAND DIVISION

RON TSUR,

Plaintiff,

v.

INTEL CORPORATION,

Defendant.

Case No. 3:21-cv-00655-MS

DEFENDANT INTEL CORPORATION'S *DAUBERT* MOTION TO EXCLUDE PLAINTIFF'S EXPERT ROY LUBIT, MD, FROM OFFERING CERTAIN TESTIMONY

INTEL CORPORATION submits the following *Daubert* Motion in support of its request to exclude certain testimony by Roy Lubit, MD, designated by Plaintiff as an expert witness regarding alleged emotional distress damages.

**INTRODUCTION**

Roy Lubit, MD, examined Plaintiff in 2022 in order to testify about the emotional distress allegedly caused by the termination of Plaintiff's employment in 2015. Dr. Lubit now seeks to offer improper testimony, which is neither reliable nor relevant, and which includes legal and factual determinations which are the province of the Court and/or the jury. This testimony should be excluded.

For example, Dr. Lubit's expert report discusses his view of Mr. Jones' abilities as a supervisor, the reasons Plaintiff performed poorly while being supervised by Mr. Jones in 2011-2012—allegedly due to Mr. Jones' supposed ageist and antisemitic comments—and Dr. Lubit's belief that Mr. Jones "tried to set Mr. Tsur up to fail." Dr. Lubit also seeks to testify that "ageism was an important factor" in subsequent Intel lay-offs, that the Company's selection criteria for the 2015 lay-off were ageist, that Plaintiff received an "unfair" review because of ageist and antisemitic comments, and that because Intel supposedly laid off 16,000 people at some point after Plaintiff was laid off, Plaintiff was unable to find another job. Dr. Lubit also seeks to offer reasons why Plaintiff did not initially report alleged antisemitic comments, and why certain of Plaintiff's deposition testimony may be inconsistent with his case theory. Dr. Lubit even seeks to offer testimony about the alleged trauma caused by Mr. Jones' alleged 2011 comments, even managing to work in references to the Holocaust, despite the fact that Plaintiff's hostile work environment claim was dismissed.



SEYFARTH SHAW LLP
999 Third Avenue, Ste. 4700
Seattle, WA 98104-4041
Tel: (206) 946-4910
Fax: (206) 299-9974

Dr. Lubit's expert report provides a narrative road map of the case Plaintiff hopes to present to the jury. In so doing, it strays far afield from the province of an expert, and decidedly far from any reliable basis upon which an expert could offer such testimony. Dr. Lubit's testimony should either be stricken in its entirety, or be limited to any assessment he can offer that the termination of Plaintiff's employment caused him emotional distress. All other testimony should be excluded.

## ARGUMENT

**Legal Standard.** Federal Rule of Evidence 702, as guided by the Supreme Court's holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), provides that expert witness testimony is allowed only if it is reliable and will assist the trier of fact in making its determination. The trial court serves as a "gatekeeper," ensuring the reliability and relevance of expert testimony, while also ensuring that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 152 (1999). "Maintaining *Daubert's* standards is particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063-64 (9th Cir. 2002) (*overruled* in part on other grounds by *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014)).

In *Daubert*, the Supreme Court established a two-part inquiry for assessing proffered testimony under Rule 702. An expert's testimony is admissible only if a court finds that the "expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. The first prong is intended to test the reliability of the testimony, and the second prong is intended to test the relevance of



SEYFARTH SHAW LLP
999 Third Avenue, Ste. 4700
Seattle, WA 98104-4041
Tel: (206) 946-4910
Fax: (206) 299-9974

the testimony. *Daubert* provides four factors for trial courts to use when weighing reliability: (1) whether the expert's technique or theory has been tested; (2) whether it has been subjected to peer review; (3) its known or potential error rate; and (4) whether it enjoys general acceptance within the relevant community. *Daubert*, 509 U.S. at 593-94. A court should not only analyze what the expert intends to say, but also the purported basis offered for saying it. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). Consistent with the reliability requirement, an expert's opinion may not rest on assumption and speculation. S*tephens v. Union Pac. R.R. Co*., 935 F.3d 852, 856 (9th Cir. 2019); *Siquerios v. General Motors, LLC*, No. 16-cv-07244-EMC, 2022 WL 74182, at * 13-14 (N.D. Cal. Jan. 7, 2022) (expert testimony is inadmissible when its "conclusions are grounded in nothing more than his say so.").

Another "significant fact" for the gatekeeper to consider, is whether the expert is testifying "about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). Moreover, an expert may not offer an opinion on an ultimate legal issue, because "offering legal conclusion testimony invades the province of the trial judge." *Nationwide Transp. Fin. v. Cass Info Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008); *Mukhtar*, 299 F.3d at 1066 at no. 10 (expert cannot give an opinion as to her legal conclusion). Similarly, an expert's testimony is "non-helpful" and therefore not permitted if the jury is capable of comprehending the facts and drawing correct conclusions, without the need for an expert. *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962).

The party offering the evidence bears the burden of proving admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592–593.


SEYFARTH SHAW LLP
999 Third Avenue, Ste. 4700
Seattle, WA 98104-4041
Tel: (206) 946-4910
Fax: (206) 299-9974

**Certain of Dr. Lubit's Conclusions Are Not Reliable.**[1] Dr. Lubit offers opinions without scientific support or basis, just stating that certain things are so. Plaintiff apparently hopes to use Dr. Lubit as a mouthpiece for his case theory, rather than as an expert to offer scientific expertise regarding alleged psychological harm:

> If, contrary to the data, one assumes that Mr. Jones criticism of Mr. Tsur's work with his team is correct, it is important to assess why Mr. Tsur's performance declined. High stress at work, from being badly mistreated, including subject to antisemitic and agist remarks by a manager, which spreads to other team members also engaging in such remarks, could lead someone to become irritable and less efficient. Mr. Jones, in his mistreatment of Mr. Tsur was a bad role model. The way superiors behave has a great impact on a group's culture and how others in the group subsequently behave. Moreover, it seems likely that as a result of his negative views of Israelis and of older people that Mr. Jones tried to set Mr. Tsur up to fail by giving him work in addition to what he needed to do for the project he was hired for. Then, after being told to not give him additional work, Mr. Jones criticized Mr. Tsur for not doing the things he asked Mr. Tsur to do.

*See* Dr. Lubit's Expert Report ("Lubit Report"), attached as Exhibit 1 to the Declaration of Raymond Baldwin in Support of Intel's Daubert Motion ("Baldwin Decl."), at 17.

Rule 702 sets forth the test for reliability: (1) the testimony must be based on sufficient facts or data; (2) the testimony must be the product of reliable principles and methods; and (3) the expert must have reliably applied the principles and methods to the facts of the case. Fed. R. Civ. P. 702. Dr. Lubit's proffered testimony on these issues, and others like them, falls well short of rule 702 standards. The testimony is based primarily on Plaintiff's opinion, it is not based on facts. The testimony is not the product of reliable scientific principles or methods, and there is no indication that Dr. Lubit reliably applied any principles or methods to the facts in order to determine, for example, that Mr. Jones' review of Plaintiff was incorrect. Dr. Lubit did

[1] Many of Dr. Lubit's findings fall short of reliability and relevance, and would be unduly prejudicial if offered by him at trial. Stated differently, much of his conclusion should be excluded on multiple grounds, and Intel offers certain findings under certain *Daubert* prongs not by way of limitation, but simply as a matter of efficiency.



SEYFARTH SHAW LLP
999 Third Avenue, Ste. 4700
Seattle, WA 98104-4041
Tel: (206) 946-4910
Fax: (206) 299-9974

not supervise or work with Plaintiff, nor is he a management or human resources' expert—he is a psychiatrist. Not surprisingly, Dr. Lubit offers no basis upon which to found these conclusions. He offers no studies, no peer reviewed papers, no expertise—nothing. *Daubert*, 509 U.S. at 594 (publication or lack of will be relevant though not dispositive).[2] Moreover, the jury needs no assistance in determining whether Mr. Jones' reviews of Plaintiff's performance were appropriate, or were tainted by discriminatory animus. *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (expert testimony must address "an issue beyond the common knowledge of the average layperson.") (internal quotations marks and citations omitted); *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973) (determining credibility of a witness is within common knowledge of the average layperson because "the jury is the lie detector in the courtroom.").

It is also inappropriate for Dr. Lubit to offer testimony regarding his opinion on why Mr. Tsur's performance allegedly declined. He offers no medical basis for such an opinion, no analysis of Plaintiff's performance over time, or any comparison of various tasks under different supervisors. He does not even offer any facts that might support this "expert" conclusion. Instead, Dr. Lubit just offers speculation and opinion—which is actually contrary to Plaintiff's position in this case, which is that his performance did not decline as a result of the alleged comments. Likewise, Dr. Lubit cannot offer his opinion that because Plaintiff claims Mr. Jones' alleged remarks "spread" to others on the team, this made Plaintiff "irritable and less efficient." He cites no authority or justification for this opinion, he simply "says it is so." This is not appropriate expert testimony. Fed. R. Civ. P. 702, Advisory Committee Notes, 2000

[2] This and other findings like it, for which Dr. Lubit offers no support, stand in contrast to his conclusions regarding trauma associated with termination, for which he at least includes some reference, albeit haphazardly, to what appear to be authors, journals or publications.



SEYFARTH SHAW LLP
999 Third Avenue, Ste. 4700
Seattle, WA 98104-4041
Tel: (206) 946-4910
Fax: (206) 299-9974

Amendments ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.' ").

Finally, Dr. Lubit seems to want to testify as to facts of which he has no personal knowledge and which allegedly occurred a decade ago, *i.e.* that Mr. Jones "set Mr. Tsur up to fail." This is wholly inappropriate. Dr. Lubit offers no basis for this opinion, provides no analysis of tasks Mr. Jones assigned—he does not even mention any specifics—he just asks the Court and jury to accept one of Plaintiff's trial themes as a fact. This proposed improper use of an expert should not be permitted.

**Certain Of Dr. Lubit's Conclusions Are Not Relevant And Would Be Unduly Prejudicial.** Dr. Lubit hopes to testify that:

> The anti-semitic comments and ageist comments were very painful to Mr. Tsur. Most of Mr. Tsur's father's family died in the Holocaust. His father was the only family member who survived. Mr. Tsur grew up in Israel in a community filled with Holocaust survivors, people who had lost many family members in the Holocaust. Their education included details of what happened and the knowledge that people sat by as others engaged in slaughter and torture. As a result, antisemitic comments serve as traumatic triggers.

Lubit Report at 17.

Plaintiff's hostile work environment claim was dismissed. ECF No. 22. Therefore, how Plaintiff felt about alleged comments in 2011 is not relevant to the alleged impact of his termination in 2015. *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (expert testimony relevant if it has valid connection to pertinent inquiry). Similarly, Dr. Lubit offers no basis—much less a scientific basis[3]—to connect the

[3] Dr. Lubit testified that he has no specialized training with respect to Holocaust survivors, or with respect to people who have family members who are Holocaust survivors, and he said he was not aware of any available training relating to these specific areas. He also testified he has no recollection of treating patients that have had family members who survived the Holocaust. Baldwin Decl., Exh. 2, Lubit Dep. at 18:23-25;19:1-25.



SEYFARTH SHAW LLP
999 Third Avenue, Ste. 4700
Seattle, WA 98104-4041
Tel: (206) 946-4910
Fax: (206) 299-9974

assertion that "[m]ost of Mr. Tsur's father's family died in the Holocaust," with the nature or extent of harm allegedly suffered as a result of the termination of his employment. Any testimony, much less expert testimony, regarding the Holocaust should be excluded as not relevant and highly prejudicial. Fed. R. Evid. 403.

**Dr. Lubit Should Not Be Permitted To Invade The Province Of The Court Or Jury.** Dr. Lubit hopes to offer testimony regarding legal and factual determinations which are the sole province of the Court and the jury:

> In summary, Mr. Tsur had a very successful career prior to giving up his position as an independent contractor accepting multiple assignments from Intel. Relatively soon after giving up his business to join Intel full-time after Intel repeatedly asked him to do so, he suffered ageist comments and antisemitic remarks and the company failed to reasonably protect him. Then, apparently as a result of the ageist and antisemitic sentiments of Mr. Jones he received an unfair evaluation. Then the company, using a policy that appears to be ageist, he was fired and then blacklisted even from being a contractor or working on projects other businesses were working on for Intel. He tried to go through channels at the company to fix things, only to find that the company was not interested. Statements and notations indicating he was a poor performer and that he had stolen were further attacks.

Lubit Report at 21.

Dr. Lubit should not be permitted to testify that Plaintiff suffered discriminatory comments, or that his review was based on discriminatory beliefs, or that the Company failed to protect him. Moreover, Dr. Lubit should not be permitted to testify that the reduction in force criteria or process was discriminatory. These issues are exclusively the province of the Court and/or the jury—Dr. Lubit cannot testify that discrimination occurred. *Arjangrad v. JPMorgan Chase Bank, N.A.*, 3:10–cv–01157–PK, 2012 WL 1890372, 2012 U.S. Dist. LEXIS 71745 (D. Or. May 23, 2012) (relying on *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp. 2d 173, 179 (S.D.N.Y. 2008)). Dr. Lubit should not be able to offer his opinion on the intent and motivation of Mr. Jones or any


SEYFARTH SHAW LLP
999 Third Avenue, Ste. 4700
Seattle, WA 98104-4041
Tel: (206) 946-4910
Fax: (206) 299-9974

other witness in the case. *Hill v. Novartis Pharms. Corp.,* No. 1:06–cv–00939–AWI–DLB, 2012 WL 5451816, at *2 (E.D. Cal. November 7, 2012) ("The Court finds this and other testimony regarding Defendant's intent, motives or state of mind to be impermissible and outside the scope of expert testimony.").

Highlighting the fact that Dr. Lubit should not be permitted to opine on intent and/or motivation, he offers no facts, no analysis, no scientific methods—nothing—to support such conclusions. He simply parrots back Plaintiff's belief. This is not expert testimony, it is simply saying what Plaintiff has asked him to say. Indeed, these are core decisional issues in this case and Dr. Lubit cannot be permitted to simply state that certain things are so. *Hernandez v. City of Vancouver,* No. C04-5539 FDB, 2009 WL 279038, at *2 (W.D. Wash. Feb. 5, 2009) (opinions that are nothing more than vouchers or attacks on credibility do not assist the trier of fact) (*citing United States v. Barnard*, 490 F. 2d 907, 912-913 (9th Cir. 1973) and *United States v. Awkard*, 597 F.2d 667, 671 (9th Cir. 1979)).

Dr. Lubit also hopes to testify:

> As time went on, however, his situation looked far more dire as thousands more were laid off flooding the market for engineers, and he was blacklisted and could never be hired as an employee or contractor. Moreover, information became available to him that agism (sic) was an important factor in lay off decisions. As his chances of regaining his position faded he became increasingly filed (sic) with despair and depression.

Lubit Report at 17.

Dr. Lubit has no basis, factual or scientific, to offer this testimony. Dr. Lubit has no personal knowledge about the facts or circumstances of any subsequent Intel lay-off—and


SEYFARTH SHAW LLP
999 Third Avenue, Ste. 4700
Seattle, WA 98104-4041
Tel: (206) 946-4910
Fax: (206) 299-9974

relying on an *Oregonian* newspaper article, if that is what he did[4], does not provide him with the required knowledge. Fed. R. Evid. 801. Similarly, Dr. Lubit's speculation that subsequent Intel lay-offs prevented Plaintiff from finding a job is unsupported by any facts or scientific analysis, and should not be converted into a fact simply because it is cloaked as expert testimony. Indeed, Plaintiff testified that he stopped looking for work shortly after he was laid off, and this proffered testimony is obviously intended to attempt to explain that decision and offset Intel's argument that Plaintiff failed to mitigate his damages. Plaintiff has identified a damages expert, and if there is any support for an alleged inability to mitigate, such testimony should come from that expert, not Dr. Lubit, who is supposed to testify about the alleged emotional harmed suffered as a result of the 2015 lay-off. Dr. Lubit should not be permitted to testify about mitigation.

## CONCLUSION

Plaintiff's expert report offers a story he hopes Dr. Lubit can tell for him at trial. The fact that a purported expert would attempt to testify to so many issues so far outside his lane, simply because he was asked to do so, so severely undermines his report and any actual scientific basis for his findings, that it should be excluded in its entirety and Dr. Lubit should be precluded from testifying.

Alternatively, and recognizing the flexibility of the *Daubert* standard, under which the Court is not tasked with deciding whether the expert is right or wrong, Intel submits that the actual conclusion, to the extent there is one, of Dr. Lubit's report is that Plaintiff felt betrayed by losing his job at Intel. Further, that "betrayal trauma" as Dr. Lubit calls it, carries with it certain symptoms. Dr. Lubit's testimony should be limited to such findings and opinions.

---

[4] Dr. Lubit's report offers a section captioned "Oregonian," which paraphrases a newspaper article. Lubit Report at 16.



SEYFARTH SHAW LLP
999 Third Avenue, Ste. 4700
Seattle, WA 98104-4041
Tel: (206) 946-4910
Fax: (206) 299-9974

Dr. Lubit does not need to and should not be permitted to testify about such things as: his opinions about Mr. Jones' management abilities; his view of Plaintiff's performance; that Mr. Jones set Plaintiff up for failure; the Holocaust; the impact allegedly discriminatory comments had on Plaintiff; the impact or circumstances of subsequent lay-offs at Intel—including that 16,000 people were laid off which prevented Plaintiff from finding a job; Plaintiff's opinion he was "blacklisted"; that ageism was a factor in lay-off decisions; Plaintiff's poor performance was attributable to discriminatory remarks; that Mr. Jones set Plaintiff up for failure; or that Intel failed to protect him.

DATED this 9th day of January, 2023.

SEYFARTH SHAW LLP

By: /s/ Helen M. McFarland

Helen M. McFarland (Bar No. 013176)
hmcfarland@seyfarth.com
999 Third Avenue, Suite 4700
Seattle, WA 98104-3100
Tel: (206) 946-4910

Christopher J. DeGroff (*Admitted Pro Hac Vice*)
cdegroff@seyfarth.com
Andrew Scroggins (*Admitted Pro Hac Vice*)
ascroggins@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, IL 60606-6448
Tel: (312) 460-5000

Raymond C. Baldwin (*Admitted Pro Hac Vice*)
rbaldwin@seyfarth.com
975 F Street, NW
Washington, DC 20004
Tel: (202) 463-2400

*Attorneys for Intel Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2023, I presented ***Intel Corporation's Daubert Motion To Exclude Plaintiff's Expert Roy Lubit, MD, From Offering Certain Testimony*** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following counsel of record:

Shanti Lewallen
LEWALLEN LAW, LLC
65 SW Yamhill
Suite 300
Portland, OR 97204
shantilewallen@gmail.com
lcdlex@gmail.com

Andrew J. Horowitz
Bruce C. Fox
Obermayer Rebmann Maxwell & Hippel LLP
525 William Penn Place, Ste. 1710
Pittsburgh, PA 15219-2502
F: (412) 566-1500
Andrew.horowitz@obermayer.com
bruce.fox@obermayer.com

DATED this 9th day of January, 2023.

*s/ Helen McFarland*
Helen McFarland



SEYFARTH SHAW LLP
999 Third Avenue, Ste. 4700
Seattle, WA 98104-4041
Tel: (206) 946-4910
Fax: (206) 299-9974